## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | **Oral Argument Requested** |
| *Plaintiffs*, | |
| v. | 13 Civ. 7347 (GHW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| *Defendant*. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Arthur N. Eisenberg (AE-2012)
New York Civil Liberties Union
   Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Patrick Toomey (PT-1452)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 2

    A.  The FISA Amendments Act .................................................................................. 2

    B.  DOJ's Notice Policy and Practice ........................................................................ 2

    C.  Plaintiffs' FOIA Request and DOJ's Response ..................................................... 3

    D.  Requested Relief ................................................................................................... 5

Statutory Framework and Legal Standards ........................................................................... 5

Argument .............................................................................................................................. 6

  I.    DOJ May Not Lawfully Withhold Records Interpreting Or Describing Its Notice
       Policies Because Those Records Are The Agency's "Working Law." ........................... 6

    A.  FOIA requires DOJ to disclose its working law. ................................................. 6

    B.  DOJ must disclose the NSD Documents that contain its working law. ....................... 8

  II.   DOJ Has Not Met Its Burden Of Showing That Any Privilege Applies To The NSD
      Documents. ........................................................................................................... 11

    A.  DOJ has failed to establish facts necessary to justify the privileges it asserts ............ 11

    B.  The available facts confirm that the NSD Documents are not protected by any
       privilege. ........................................................................................................... 13

       1.  Deliberative process privilege ........................................................................ 13

       2.  Attorney-client privilege ................................................................................ 14

       3.  Work-product doctrine .................................................................................. 15

       4.  DOJ has failed to segregate unprotected portions of the documents. ................... 18

  III.  The Court Should Permit Plaintiffs Limited Discovery To Establish Additional
      Facts As Necessary, Or Should Order The Government To Supplement Its Inadequate
      Declarations And Vaughn Index ............................................................................. 19

  IV.  DOJ's Searches Were Inadequate. ......................................................................... 22

Conclusion ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*[Redacted]*, 2011 WL 10945618,
   (FISA Ct. Oct. 3, 2011).................................................................................................... 2

*Am. Immigration Council v. Dep't of Homeland Sec.*,
   905 F. Supp. 2d 206 (D.D.C. 2012) ................................................................................. 7

*Associated Press v. DOD*,
   554 F.3d 274 (2d Cir. 2009)............................................................................................. 5

*Associated Press v. DOJ*,
   549 F.3d 62 (2d Cir. 2008)............................................................................................. 19

*Automobile Club of N.Y. v. Port of N.Y. and N.J.*,
   297 F.R.D. 55 (S.D.N.Y. May 8, 2013) ......................................................................... 12

*Bloomberg v. Bd. of Governors of the Fed. Reserve System*,
   601 F.3d 143 (2d Cir. 2010)............................................................................................. 6

*Brennan Ctr. for Justice v. DOJ*,
   697 F.3d 184 (2d Cir. 2012)....................................................................................*passim*

*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994)............................................................................... 19, 20, 21

*Carter v. U.S. Dep't of Commerce*,
   830 F.2d 388 (D.C. Cir. 1987) ....................................................................................... 19

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)............................................................................................... 2, 21

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................*passim*

*Corbett v. City of N.Y.*,
   2013 WL 5366397 (E.D.N.Y. Sept. 24, 2013) ............................................................. 24

*Ethyl Corp. v. EPA*,
   25 F.3d (4th Cir. 1994) .................................................................................................. 16

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
   2013 WL 1700923 (S.D.N.Y Apr. 16, 2013)................................................................. 19

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)........................................................................................................ 24

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) ....................................................................................... 17

*In re Sealed Case*,
   676 F.2d 793 (D.C. Cir. 1982) ....................................................................................... 14

*Jones v. FBI*,
   41 F.3d 238 (6th Cir. 1994) ........................................................................................... 21

*Jordan v. DOJ*,
    591 F.2d 753 (D.C. Cir. 1978) ............................................................................... 16, 17

*Loving v. Dep't of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) ....................................................................................... 18

*Milner v. Dep't of Navy*,
    131 S. Ct. 1259 (2011) .................................................................................................. 6

*N.Y. Times Co. v. DOJ*,
    2014 WL 2838861 (2d Cir. June 23, 2014) ...................................................... 15, 23

*Nat'l Council of La Raza v. DOJ*,
    411 F.3d 350, 356 (2d Cir. 2005).......................................................................... 13, 14

*Nat'l Day Laborer Org. Network v. ICE*,
    811 F. Supp. 2d 713 (S.D.N.Y. 2011)................................................................... 15, 23

*Nat'l Immigration Project v. DHS*,
    842 F. Supp. 2d 720 (S.D.N.Y. 2012)................................................................... 14, 18

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978)........................................................................................................ 5

*NLRB v. Sears, Roebuck, & Co.*,
    421 U.S. 132 (1975)......................................................................................... 6, 8, 12, 13

*Porter v. DOJ*,
    717 F.2d 787 (3d Cir. 1983)......................................................................................... 20

*Pub. Citizen, Inc. v. OMB*,
    598 F.3d 865 (D.C. Cir. 2010) ........................................................................... *passim*

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*,
    533 F.3d 810 (D.C. Cir. 2008) ...................................................................................... 5

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975)...................................................................................................... 12

*Resolution Trust Corp. v. Diamond*,
    137 F.R.D. 634 (S.D.N.Y. 1991) ................................................................................. 16

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................. 16, 17

*Schaffer v. Kissinger*,
    505 F.2d 389 (D.C. Cir. 1974) .................................................................................... 20

*Senate of the Com. of P.R. v. DOJ*,
    823 F.2d 574 (D.C. Cir. 1987) .................................................................................... 15

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ................................................................................ 6, 14

*Tax Analysts v. IRS*,
    294 F.3d 71(D.C. Cir. 2002) ....................................................................................... 10

*Tigue v. DOJ*,
    312 F.3d 70 (2d Cir. 2002).................................................................................... 16

*United States v. Nixon*,
    418 U.S. 683 (1974)........................................................................................... 14

*Wash. Post Co. v. U.S. Dep't of State*,
    840 F.2d 26 (D.C. Cir. 1988).............................................................................. 20

**Statutes**

5 U.S.C. § 552......................................................................................................... 8, 21

50 U.S.C. § 1806...................................................................................................... 2, 4

50 U.S.C. § 1881a......................................................................................................... 2

50 U.S.C. § 1881e..................................................................................................... 2, 4

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................... 19

**Other Authorities**

Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*,
    N.Y. Times, July 15, 2013 ...................................................................................... 3

Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*,
    N.Y. Times, Oct. 16, 2013 .............................................................................. passim

Charlie Savage, *Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps
    as Evidence*, N.Y. Times, Oct. 26, 2013............................................................ 4, 12

Devlin Barrett, *U.S. Spy Program Lifts Veil in Court*,
    Wall St. J., July 31, 2013 .................................................................................. 3, 10

*PCLOB Report on the Surveillance Program Operated Pursuant to Section 702 of
    the Foreign Intelligence Surveillance Act* (July 2, 2014) ......................................... 2

Robert Barnes & Ellen Nakashima, *U.S. Tells Terror Suspect It Will Use Surveillance
    Evidence*, Wash. Post, Oct. 25, 2013 ...................................................... 12, 17, 24

Sari Horwitz, *Justice is Reviewing Criminal Cases that Used Surveillance Evidence
    Gathered Under FISA*, Wash. Post, Nov. 15, 2013 ...................................... 3, 10, 12

## INTRODUCTION

In March 2013, Plaintiffs filed a FOIA request to learn how the Department of Justice ("DOJ") interprets and applies its obligation to provide notice of surveillance conducted under the FISA Amendments Act ("FAA") in criminal cases. Until July 2013, DOJ interpreted its notice obligation very narrowly—so narrowly, in fact, that no criminal defendant received the notice contemplated by the statute. In the summer of 2013, however, after the Solicitor General concluded that DOJ's policy was unlawful, DOJ adopted a broader interpretation of its notice obligation and, soon after, began to provide notice to criminal defendants for the first time. DOJ has never disclosed its notice policy—not the original policy or the current one. Plaintiffs filed their FOIA request because they want to understand what the government's notice policy is, what it used to be, and how the government reconciles its policy with the statute.

But DOJ has not complied with FOIA. It has identified only five documents from this key period as responsive to the request, all of them from July 2013, and it has withheld all of those documents on the theory that none of them reflect a final policy or legal interpretation. Its contention appears to be that the government did not have a notice policy before 2013 and that it does not have one now. This contention is not remotely credible. DOJ acknowledges, and the public record makes clear, that the government began providing defendants notice in 2013 because it reconsidered its prior interpretation of the statute. Thus, the government had a final policy before the summer of 2013 and it has a final policy now. The government cannot escape its FOIA obligations by mislabeling these policies "non-binding" or "drafts."

The records the government has withheld under various privileges comprise or describe the government's working law, which FOIA obliges the government to disclose. Plaintiffs respectfully request that the Court order DOJ to release the five memoranda insofar as it has relied on them as its working law; that, in the alternative, it permit Plaintiffs to conduct limited

1

discovery to establish the extent to which the five memoranda are working law; and, finally, that it order DOJ to undertake a broader search for records responsive to Plaintiffs' request—the search that DOJ should have conducted in the first instance.

## BACKGROUND

A.     The FISA Amendments Act

Enacted in 2008, the FAA authorizes the dragnet surveillance of Americans' international emails and phone calls. 50 U.S.C. § 1881a. In 2011 alone, the NSA collected 250 million internet communications under this authority. *See [Redacted]*, 2011 WL 10945618, at *9 (FISA Ct. Oct. 3, 2011). Information gathered under the FAA is regularly used in criminal investigations. Whenever the FBI opens a national security investigation, and in many ordinary criminal cases as well, it searches its repository of FAA communications.[1]

The FAA expressly incorporates the notice provision that has applied since FISA's passage in 1978. *See* 50 U.S.C. §§ 1881e(a), 1806(c). That provision requires the government to provide notice to criminal defendants when it intends to use evidence "obtained or derived" from surveillance of the defendant's communications. *Id.*

B.     DOJ's Notice Policy and Practice

Despite the FAA's express notice requirement, between 2008 and 2013 DOJ did not give notice of this surveillance to a single criminal defendant. In 2012, the Supreme Court heard *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), a civil challenge to the FAA. In his briefs and at oral argument, the Solicitor General assured the Court that dismissing the challenge would not insulate the FAA from judicial review, because the statute could be challenged by criminal defendants who were being prosecuted with the help of evidence "obtained or derived" from

---

[1] *See PCLOB Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* at 59 (July 2, 2014), http://bit.ly/1pJz0EA.

FAA surveillance. Pet. Br. 8, *Clapper*, 133 S. Ct. 1138 (July 26, 2012); *see* Tr. 2-4, *id.* Only after the Supreme Court's decision did the Solicitor General learn that DOJ's National Security Division ("NSD") had not, in fact, been complying with the FAA's notice requirement.[2] Instead, NSD had "long used a narrow understanding" of the statute to deny notice to defendants who were entitled to it.[3] The Solicitor General reportedly concluded that NSD's interpretation was legally indefensible and insisted that DOJ change its policy. *See* Savage Article I. DOJ did so in the summer of 2013, signaling an "about-face" in court filings as early as July 30, 2013.[4] At the same time, DOJ undertook a review of criminal cases to identify those in which notice should have been given, based on its new policy.[5] In October 2013, DOJ provided notice of FAA surveillance to a criminal defendant for the first time.[6] It has since given notices to four other defendants.

C.    Plaintiffs' FOIA Request and DOJ's Response

On March 29, 2013, the ACLU filed this FOIA request in order to learn how DOJ interprets and applies its notice obligation in legal proceedings. Toomey Decl., Ex. F ("Request"). Plaintiffs submitted the Request to several DOJ components, including NSD and the Executive Office of U.S. Attorneys ("EOUSA"). The Request sought in relevant part:

(2) Policies, procedures, and practices governing the provision of notice to "aggrieved persons," as set forth in 50 U.S.C. § 1881e (a) and § 1806(c), of the government's intent

---

[2] Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times, July 15, 2013, http://nyti.ms/1lMs0zW (Toomey Decl., Ex. A).

[3] Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, http://nyti.ms/1sBRGDr (Toomey Decl., Ex. B) ("Savage Article I").

[4] Devlin Barrett, *U.S. Spy Program Lifts Veil in Court*, Wall St. J., July 31, 2013, http://on.wsj.com/V9H3N2 (Toomey Decl., Ex. C) ("Barrett Article").

[5] Sari Horwitz, *Justice is Reviewing Criminal Cases that Used Surveillance Evidence Gathered Under FISA*, Wash. Post, Nov. 15, 2013, http://wapo.st/TaTcAg (Toomey Decl., Ex. D) ("Horwitz Article").

[6] Charlie Savage, *Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence*, N.Y. Times, Oct. 26, 2013, http://nyti.ms/VcZEqY (Toomey Decl., Ex. E) ("Savage Article II").

to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding information obtained or derived from electronic surveillance pursuant to the authority of the FAA.

(3) Legal memoranda or opinions addressing or interpreting the FAA's notice provision or requirements, as set forth in 50 U.S.C. § 1881e (a) and § 1806(c).

Although NSD and EOUSA acknowledged Plaintiffs' Request in April and July 2013, respectively, they took no steps to act on the Request at that time. After more than six months with no response, Plaintiffs filed this action to enforce their rights under FOIA.

According to the government, NSD began its search on November 8, 2013, and EOUSA initiated searches in Oregon and Colorado in February and April 2014, respectively.[7]

In their searches, NSD and EOUSA unjustifiably limited the Request in several ways, despite Plaintiffs' repeated objections. These limitations, described more fully below, *see* Section IV, resulted in a predictably small set of documents. Ultimately, NSD identified only five responsive records (the "NSD Documents"), all from a ten-day period in July 2013. They include four memoranda analyzing the government's notice obligations, and one memorandum describing the results and "conclusions" of a meeting of senior officials on July 17, 2013. Bradley Decl. ¶ 13 (attaching Vaughn Index). Plaintiffs refer to the NSD Documents as follows:

(1) The **OSG Memo**: Memo by the Office of the Solicitor General on or about July 15, 2013

(2) The **NSD 7/16 Memo**: Memo by NSD on or about July 16, 2013

(3) The **Post-Meeting Memo**: Memo describing the July 17, 2013 high-level meeting

(4) The **AGAC Memo**: Memo by the Att'y General's Advisory Committee on July 17, 2013

(5) The **NSD 7/8 Memo**: Memo by NSD on or about July 8, 2013

NSD calls all of these documents predecisional, and it has withheld each of them in full.[8]

---

[7] *See* Bradley Decl. ¶ 4; Gorder Decl. ¶ 6; Wu Decl. ¶ 7. In order to reduce the initial burden on DOJ, Plaintiffs agreed to defer searches in other Districts until a later stage of the case.

[8] Significantly, two of these same documents were located by EOUSA in the District of Oregon and withheld. Bradley Decl. ¶ 26. DOJ has informed Plaintiffs that the two documents are the OSG Memo and the AGAC Memo. Toomey Decl. ¶ 14.

Separately, DOJ produced three documents in connection with EOUSA's searches. None of these are agency policy documents; instead, they are publicly filed briefs submitted in two cases. They include two briefs in *United States v. Mohamud*, from February and May 2014; and a brief in *United States v. Muhtorov*, from May 2014. Bradley Decl. ¶¶ 27-28.

Thus, according to DOJ, the *only* information responsive to Plaintiffs' request for "policies, procedures, and practices," is contained in four pages of a brief filed in February 2014. *See* Gov't Br. 4-5; Torrance Decl., Ex. 1 ("*Mohamud* Disc. Br." at 6-9). And NSD's position is that *no* information responsive to Plaintiffs' request for policies and practices existed in NSD's files as of its search in November 2013—even though DOJ began implementing its new notice decision months earlier.

D.    Requested Relief

For the reasons set out below, Plaintiffs respectfully request that the Court deny DOJ's motion for partial summary judgment and:

(1)   Order DOJ to disclose those documents listed on NSD's Vaughn Index that have served as DOJ's working law.

(2)   In the alternative, permit Plaintiffs to conduct limited discovery to establish how DOJ created, used, and distributed the documents.

(3)   Find DOJ's search inadequate because it improperly narrowed Plaintiffs' FOIA request to exclude responsive documents, and failed to search within plainly relevant repositories.

**STATUTORY FRAMEWORK AND LEGAL STANDARDS**

Congress enacted FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed . . . to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). To that end, the courts enforce a "strong presumption in favor of disclosure." *Associated Press v. DOD*, 554 F.3d 274, 283 (2d Cir. 2009); *see Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008). As the Supreme Court has emphasized, FOIA exemptions should be given "a narrow compass." *Milner*

*v. Dep't of Navy*, 131 S. Ct. 1259, 1265 (2011).

As a result, at summary judgment the burden is on the agency to show that its search was reasonable and to justify its withholding of any requested records. *Bloomberg v. Bd. of Governors of the Fed. Reserve System*, 601 F.3d 143, 147 (2d Cir. 2010). Although courts accord agency affidavits a presumption of good faith, they need not defer to those affidavits. *See id*. Rather, courts review the claimed withholdings *de novo*, and "[a]ll doubts [are] resolved in favor of disclosure." *Id.*

**ARGUMENT**

I.   **DOJ May Not Lawfully Withhold Records Interpreting Or Describing Its Notice Policies Because Those Records Are The Agency's "Working Law."**

In July 2013, after a series of high-level exchanges and meetings, DOJ changed its policy concerning when it would notify criminal defendants of the government's intent to use evidence derived from FAA surveillance. DOJ subsequently undertook a review of criminal cases to determine those cases in which it *should* have provided notice but did not. The policy that the government began to implement in July 2013 constitutes "working law" under FOIA and must be disclosed in any record in which it appears.

A.   FOIA requires DOJ to disclose its working law.

Under the working law doctrine, agencies must disclose the rules and interpretations that constitute their formal or informal policy. *See Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 195-96, 199-202 (2d Cir. 2012). This includes an agency's opinion about "what the law is" and "what is not the law and why it is not the law." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997). An agency document constitutes working law, and thus must be disclosed, if it "has become" an agency's "*effective* law and policy." *Brennan*, 697 F.3d at 199 (quoting *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 153 (1975)) (emphasis added); *see Coastal States Gas*

6

*Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("[T]o prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it."). Crucially, the working-law doctrine does not require that a position expressed in a document be "absolutely binding" on an agency; it need only reflect a "settled and established policy." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010). Similarly, legal interpretations "routinely used" and "relied on" fall within the definition of working law. *Coastal States*, 617 F.2d at 869.

The working-law doctrine is grounded in the text of FOIA itself. As the Second Circuit has emphasized, "the 'working law' analysis is animated by the affirmative provisions of FOIA," which require agencies to disclose their operative rules and interpretations to the public. *Brennan*, 697 F.3d at 200, 202; *see* 5 U.S.C. § 552 (a)(1)–(2). In this scheme, the working-law doctrine serves a crucial function: it ensures that an agency does not thwart FOIA's express requirements by "develop[ing] a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Am. Immigration Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 218 (D.D.C. 2012) (quoting *Coastal States,* 617 F.2d at 867). Importantly, it is not Plaintiffs' burden to show that the materials are working law or have been adopted as a final agency position; rather, as under FOIA generally, it is DOJ's burden to show that an exemption properly applies. *See Brennan*, 697 F.3d at 201-02.

The working law doctrine requires disclosure under FOIA even where documents might otherwise have been privileged. Here, DOJ points to Exemption 5, 5 U.S.C. § 552 (b)(5), as a basis for withholding in full all five of the NSD Documents. But the Supreme Court has made clear that when legal analysis and policy conclusions become an agency's working law, they lose

any privileged status they might have had. *See Sears*, 421 U.S. at 153 ("Exemption 5, properly construed, calls for 'disclosure of *all* opinions and interpretations which embody the agency's effective law and policy'") (emphasis added; internal quotation marks omitted); *see also Brennan*, 697 F.3d at 194-95, 208 ("[W]hen what would otherwise be an exempt memorandum becomes non-exempt because of its status as 'working law,'. . . for all practical purposes it falls outside of Exemption 5."). Thus, even if a document was predecisional or otherwise privileged at the time it was created, subsequent reliance on it by an agency pierces its privilege and requires its disclosure under FOIA. *See id.* at 199-200 & n.12.[9]

> B.   DOJ must disclose the NSD Documents that contain its working law.

Although DOJ has provided little information to Plaintiffs and the Court, it is clear that the NSD Documents collectively contain DOJ's working law. Certain of these documents served as the basis for DOJ's policy reversal and, further, operated as the agency's guiding legal interpretation as it set about reviewing criminal cases and providing notice after July 2013. Crucially, these five documents are the *only* responsive records that DOJ claims existed as of November 2013, when NSD initiated its search. Yet DOJ's position is that all five are "predecisional." Gov't Br. 12. DOJ's position, in other words, is that prosecutors began giving notice of FAA surveillance in October 2013—for the first time in five years, after a high-level debate—in the absence of any formal or informal DOJ policy. Again, this is simply not credible, nor is it supported by DOJ's declarations in this case. Insofar as DOJ has relied on the NSD Documents as its working law, they must be disclosed.

First, there is no question that DOJ *had* working law during this period. DOJ has

---

[9] The adoption doctrine is often discussed in tandem with the working law doctrine, and may provide a different path to the same result. When legal analysis has been adopted as an agency's conclusive interpretation, either expressly or by incorporation in non-exempt documents, it is no longer privileged under FOIA. *Brennan*, 697 F.3d at 194-95, 201. Adoption requires only that a record be "expressly" adopted within the agency, not that the adoption be public, formal, or repeated. *Sears*, 421 U.S. at 161.

repeatedly acknowledged that it reached an "ultimate decision" and "determination" concerning the provision of notice in FAA cases. Bradley Decl. ¶ 17; *Mohamud* Disc. Br. 6-7. While the government has avoided telling this Court—or any other—when exactly that decision was made, it appears to have occurred on July 17, 2013, at a high-level meeting of senior DOJ and intelligence officials, including the Deputy Attorney General. The Post-Meeting Memo describes the results of that meeting and the "conclusions" of its participants. Thirteen days later, on July 30, 2013, the government disclosed its policy change for the first time in a filing in *United States v. Qazi*.[10] *See* Barrett Article. Based on the new policy, NSD attorneys undertook a review of open and closed criminal cases to identify those where notice of FAA surveillance should have been given. *See* Savage Article I. That review has been publicly described by the Attorney General. *See* Horwitz Article. On October 26, 2013, DOJ provided notice of FAA surveillance to a criminal defendant for the first time, based on this same policy determination. Four other notices have since followed. *See* Gov't Br. 5 n.1.

The question that remains, then, is whether any of the NSD Documents describe DOJ's working law. It is clear that at least some of them do.

For example, the Post-Meeting Memo appears to be *post*-decisional, not predecisional as DOJ claims. As NSD's Vaughn Index makes clear, this memo summarizes the "conclusions" of the participants at the July 17, 2013 high-level meeting and sets forth a plan of action. Those conclusions constitute working law—they served as the key source of DOJ's effective law and policy going forward. *See Pub. Citizen*, 598 F.3d at 875 ("Documents reflecting OMB's formal or informal policy on how it carries out its responsibilities fit comfortably within the working

---

[10] Gov't Resp. Br. 3 & n.2, No. 12-cr-60298 (S.D. Fla. July 30, 2013) (ECF No. 131) (disavowing previous DOJ position). About a week later, DOJ filed an almost-identical brief that clarified its position in *United States v. Daoud*. Gov't Surreply, No. 12-cr-00723 (N.D. Ill. Aug. 8, 2013) (ECF No. 49).

law framework."). NSD's Vaughn Index suggests that these conclusions prompted certain follow-up issues calling for consultation, but that does not make the Post-Meeting Memo withholdable. It would be surprising if a major policy change like this one did *not* prompt follow-up activities and discussion, especially in terms of implementation. But to qualify as working law, it is "not necessary" for a document to "reflect the final *programmatic* decisions" of agency personnel; it is enough that they represent the agency's "final *legal* position" concerning the relevant law or regulations at issue. *Brennan*, 697 F.3d at 201 (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 81 (D.C. Cir. 2002)) (emphasis in original); *see Pub. Citizen*, 598 F.3d at 875-76 (rejecting argument that document was predecisional simply because it would "guide further decision-making"). DOJ cannot withhold its basic policy or legal conclusions simply because some details had yet to be worked out, or by artfully drafting its Vaughn Index to downplay the core "conclusions" adopted at the July 17 meeting.

The OSG Memo, likewise, appears to contain working law. Every public report of these events indicates that the Solicitor General's interpretation was ultimately adopted as DOJ's position. *See, e.g.*, Savage Article I ("Mr. Verrilli argued that withholding disclosure from defendants could not be justified legally"; after lawyers from other agencies agreed, NSD "changed the practice going forward.").[11] Thus, even if the OSG Memo was deliberative when it was drafted, it has since become DOJ's working law and must now be disclosed. *See Brennan*, 697 F.3d at 199; *Am. Soc. of Pension Actuaries v. IRS*, 746 F. Supp. 188, 191 (D.D.C. 1990).

There is other evidence that the OSG Memo represents DOJ's working law. For one, a copy of the OSG Memo was apparently sent to the U.S. Attorney's Office in Oregon. Toomey

---

[11] *See also* Robert Barnes & Ellen Nakashima, *U.S. Tells Terror Suspect It Will Use Surveillance Evidence*, Wash. Post, Oct. 25, 2013, http://wapo.st/1qdl8g2 (Toomey Decl., Ex. G) ("Barnes & Nakashima Article"); Horwitz Article.

Decl. ¶ 14. The government did not explain this detail to the Court, but it is significant because it suggests reliance upon the memo as working law. That district has two of the five cases where FAA notices have been given to date, and prosecutors there were the first to publicly describe DOJ's long-running failure to give notice as well as its new notice policy. *See Mohamud* Disc. Br. 6-9. It is logical that they would have a copy of the document reflecting DOJ's working law.[12] More generally, DOJ's description of its new policy in filings around the country matches the position reportedly taken by the Solicitor General during DOJ's decision-making.[13]

## II.    DOJ Has Not Met Its Burden Of Showing That Any Privilege Applies To The NSD Documents.

A.    DOJ has failed to establish facts necessary to justify the privileges it asserts.

Even if the NSD records did not contain working law, those records would still have to be disclosed because the government has not carried its burden of demonstrating that any privilege applies to them.

DOJ's Vaughn Index and declarations are inadequate to support its claims of privilege. Indeed, because the applicability of Exemption 5 is so fact-specific—turning on, among other things, how the document was ultimately used, who it was shared with, whether it was directed at a particular case, and whether it has portions that are factual and therefore disclosable—courts have required the government to introduce specific facts into the record justifying claims of privilege. The D.C. Circuit's decision in *Coastal States* is particularly instructive:

> At several points in the course of this opinion, we will rely on a conclusion not that the documents are not exempt as a matter of law, but that the agency has

---

[12] DOJ has informed Plaintiffs that EOUSA also located a copy of the AGAC Memo in Oregon. None of DOJ's declarations explain why or when this document was transmitted to Oregon.

[13] *Compare, e.g.*, Gov't Opp. Memo. 25-27, *United States v. Hasbajrami*, No. 13-cv-06852 (E.D.N.Y. Aug. 8, 2014) (ECF No. 25) (acknowledging duty to give notice of evidence "derived" from FAA surveillance), *with* Savage Article II ("Mr. Verrilli was said to have argued that there was no legal basis to conceal from defendants that the evidence derived from legally untested surveillance.").

> failed to supply us with even the minimal information necessary to make the
> determination. We remind the agencies, once again, that the burden is on them to
> establish their right to withhold information from the public . . . .

617 F.2d at 861; *id.* at 868 n.16 ("It is also clear that the agency has the burden of establishing . .

. the role played by the documents in issue."). In *Brennan*, similarly, the Second Circuit gave a

detailed analysis of the government's factual proffer, a factual analysis that must be undertaken

any time an agency invokes Exemption 5: "We begin our analysis of the status of this document,

as we must with respect to all three memoranda at issue, by examining the process by which the

memorandum was created." 697 F.3d at 202. Unlike the record in this case, the record in

*Brennan* supplied extensive detail about the process by which the documents at issue came into

being and were used: who made the request for the memoranda and why, who received copies of

the memoranda, how the agency relied on the memoranda, and details of the decision-making

process. *See id.* at 190-92, 202, 205-06. The same kind of detailed factual analysis is found in the

Supreme Court precedents relied upon in *Brennan*. *See id.* at 195-98 (discussing *Sears*, 421 U.S.

132, and *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975)).

       Here, both DOJ's factual submissions and its Vaughn Index provide a shadow of what is

required. The government's factual predicate for invoking Exemption 5 is contained in four

conclusory paragraphs of one declaration. Bradley Decl. ¶¶ 17-18, 20, 22. NSD's Vaughn Index,

too, provides little of the information courts require to support these invocations of privilege:

> [A] log of documents withheld on the basis of the deliberative process privilege should
> provide various pieces of information, including, but not limited to, a description of the
> decision to which the documents relate, the date of the decision, the subject-matter of the
> documents in issue, the nature of the opinions and analyses offered, the date that
> documents were generated, the roles of the agency employees who authored or received
> the withheld documents and the number of employees among whom the documents were
> circulated. These sort of details, while not exhaustive, would provide the receiving party
> with sufficient facts to assess whether the documents were "related to the process by
> which policies are formulated."

*Automobile Club of N.Y. v. Port of N.Y. and N.J.*, 297 F.R.D. 55, 60 (S.D.N.Y. May 8, 2013)

(quoting and applying *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350 (2d Cir. 2005)).

DOJ has provided none of those details here—about the origins, use, circulation, or current status of the NSD Documents. It is impossible to tell, for instance, whether some portions of the documents do "nothing more than explain an existing policy [and therefore] cannot be considered deliberative." *Pub. Citizen*, 598 F.3d at 876. By the same token, it is entirely unknown how the documents have been shared or used since the July meeting—for instance, whether they were provided to the attorneys who conducted DOJ's review of criminal cases, to additional U.S. Attorney's Offices, or to others. DOJ has failed to provide the facts necessary to justify its withholding of the NSD Documents under Exemption 5, as required by *Brennan*, *Coastal States*, and *Public Citizen*. This failure is fatal to its claims.

> B.   The available facts confirm that the NSD Documents are not protected by any privilege.

The record in this case is sparse, but the available facts confirm that the NSD Documents are not protected by the deliberative process privilege, the attorney-client privilege, or the work-product doctrine.

> 1.   *Deliberative process privilege*

Under the deliberative process privilege, a document may be withheld only if it is both predecisional and deliberative. *La Raza*, 411 F.3d at 356. The privilege is designed to encourage candor, by protecting from disclosure predecisional advice that has not been accepted as policy, or shared outside the executive branch. *See Sears*, 421 U.S. at 150. The privilege applies, however, only to portions of documents that remain part of "the give and take of the deliberative process." *Pub. Citizen*, 598 F.3d at 876; *Brennan*, 697 F.3d at 196-97 (observing that disclosing *adopted* policy would not discourage candor); *id.* at 198-202. Thus, it does not protect advice that has been accepted by decision-makers, descriptions of past or present policy, or factual

information. *See id.*; *Pub. Citizen*, 598 F.3d at 876. That information must be disclosed.

Plaintiffs have shown that the documents are not predecisional. *See* Section I.B. The record makes clear that officials met, deliberated, and reached a decision in July 2013. Even if the documents were once protected by the privilege, insofar as DOJ has relied on any of them for its guiding legal interpretation, they may no longer be withheld.

### 2. *Attorney-client privilege*

The NSD Documents are also improperly withheld under the attorney-client privilege. The privilege protects "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts*, 117 F.3d at 618. However, the attorney-client privilege is "not lightly created nor expansively construed." *United States v. Nixon*, 418 U.S. 683, 710 (1974). The privilege does not attach when the allegedly privileged material has been disclosed to non-client third parties. *See In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982). Similarly, once an attorney's opinion "becomes agency law, the agency is then responsible for defending that policy," and cannot withhold it under FOIA. *La Raza*, 411 F.3d at 360; *Nat'l Immigration Project v. DHS*, 842 F. Supp. 2d 720, 729 n.10 (S.D.N.Y. 2012) ("[A]ttorney-client privilege simply does not apply to statements of policy").

First, DOJ provides no evidence that the NSD Documents are, in fact, "communications" between attorneys and their "clients"—let alone that they contain confidential client information. Only one of the documents has any recipient listed at all. *See* NSD Vaughn Index. This problem is compounded by the fact that DOJ does not specify who, supposedly, stood in the role of a client. Instead, it generically claims that the memoranda were prepared for "other government personnel who formulate and implement policy for the client, the United States." Bradley Decl. ¶ 22. Yet it is not the case that DOJ was providing legal advice to other agencies, because DOJ itself decides whether notice will be provided. DOJ's claim takes the privilege too far. DOJ

14

cannot pass off its unavailing work-product arguments as attorney-client privilege by claiming that every document prepared by one DOJ lawyer for another is a "client" communication with the United States. *Cf. Senate of the Com. of P.R. v. DOJ*, 823 F.2d 574, 586-87 (D.C. Cir. 1987).

Second, even if the privilege once attached, it has been waived. The NSD Documents have not been kept in confidence, because they have been extensively described to reporters by multiple administration officials familiar with the deliberations. *See, e.g.*, Savage Article I; Barnes & Nakashima Article. The articles make explicit reference to—and describe the contents of—the "dueling memorandums" authored by the very DOJ components identified on NSD's Vaughn Index. Savage Article I. Because the reasoning and recommendations in these memos have been voluntarily disclosed, the privilege has been waived. *See N.Y. Times Co. v. DOJ*, 2014 WL 2838861, at *10 (2d Cir. June 23, 2014); *Brennan*, 697 F.3d at 207 (privilege may be waived when client testifies concerning portions of the attorney-client communication).[14]

Finally, DOJ broadly states that the memoranda provided legal *and* "policy advice," Bradley Decl. ¶ 22, but only legal advice is protected by the privilege. For each document, the government must show that the "predominant purpose" of the communication was to render or solicit legal advice, *Nat'l Day Laborer Org. Network v. ICE*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011), yet DOJ offers no facts that support such a finding. *See* Section II.A. To the extent the NSD Documents are primarily (or equally) concerned with policy, they are not protected. *See* Savage Article I (describing memoranda in which "[n]ational security lawyers and a policy advisory committee of senior United States attorneys focused on operational worries.").

      3.  *Work-product doctrine*

The NSD Documents may not be withheld as work-product because that doctrine applies

---

[14] This argument applies equally to DOJ's claims of deliberative process privilege, as the Second Circuit has held. *See N.Y. Times Co.*, 2014 WL 2838861, at *10.

only to documents that are directed at a specific case or claim, not to policy-level documents. That is especially true in the criminal context, where a contrary rule would "preclude almost all disclosure from an agency with substantial responsibilities for law enforcement." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202-03 (D.C. Cir. 1991). Memoranda broadly addressing the government's interpretation of its notice obligations under FISA and the Constitution— removed from a particular case—are not attorney work product.[15]

"The work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does. Its purpose is more narrow, its reach more modest." *Jordan v. DOJ*, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc), *abrogated on other grounds by Crooker v. ATF*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc). The doctrine is limited to "materials prepared in anticipation of litigation or trial." *Id.* "Whether a document was prepared in 'anticipation of litigation' depends upon such factors as proximity to the date of trial, the purpose for the document's preparation and whether the document was prepared as a regular business practice." *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 644 n.3 (S.D.N.Y. 1991).

Policy-level analysis of the government's notice obligations does not qualify for work-product protection, even if the legal issues analyzed therein might arise in agency litigation. *Coastal States*, 617 F.2d at 864, is directly on point. There, the Department of Energy ("DOE") invoked work-product protection to withhold memoranda prepared by DOE attorneys in response to questions raised by agency auditors investigating firms for compliance with pricing

---

[15] DOJ's invocation of the work-product doctrine is incompatible with its principal claim that the deliberative process privilege should apply. It is the deliberative process privilege, not the work-product doctrine, that is implicated where the record "bear[s] on the formulation or exercise of *policy*-oriented judgment." *Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002) (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994)). On the other hand, if it is DOJ's position that these records were directed at specific litigation, *see* Bradley Decl. ¶ 18, they are not protected by the deliberative process privilege.

regulations. *Id.* at 858-60. Although a few of the withheld documents advised DOE auditors how to proceed with specific investigations, most were "neutral, objective analyses of agency regulations." *Id.* at 863. The D.C. Circuit rejected DOE's blanket assertion of the work-product doctrine, holding that the agency could assert the protection only where it had established that "a specific claim had arisen, was disputed . . . and was being discussed in the memorandum." *Id.* at 866; *see also Jordan*, 591 F.2d at 775-76 (holding that work-product doctrine did not protect DOJ's policy-level guidance). As the D.C. Circuit has recognized, these limitations are especially crucial in the criminal context, as here, where the work-product doctrine protects only documents prepared with a particular case in mind. *See In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998); *SafeCard*, 926 F.2d at 1202-03. Were it otherwise, the government could claim work-product protection for almost any guidance, interpretation, or memorandum authored by one of its attorneys. In effect, FOIA would cease to apply to DOJ. *See id.*

Like the advisory memoranda denied work-product protection in *Coastal States*, the NSD Documents provide general analysis of applicable law on an issue of DOJ "policy," as DOJ concedes. Bradley Decl. ¶ 22. The question that DOJ considered was whether the government had an overarching obligation to provide notice of FAA surveillance to criminal defendants, not how to proceed in light of the facts or claims raised in any given case. DOJ's vague declaration is telling: nothing there establishes that any of the memoranda were directed at a specific case.[16] *See id.* ¶ 20. Rather, DOJ asserts that the memoranda touch on legal questions that could "possibly" arise in litigation, *id.*, but that is not sufficient to bring the documents within the scope of the work-product doctrine. *See Coastal States*, 617 F.2d at 865. DOJ's declarant does not provide *any* details about the creation of these documents, nor does he claim to have

---

[16] Indeed, DOJ states that it did not consider case-specific analysis of the FAA's notice requirement responsive to Plaintiffs' Request at all. Bradley Decl. ¶ 9; *see* Section IV, *infra*.

consulted with those who actually prepared them. *See* Bradley Decl. ¶ 20. Instead, the

government's brief attempts to supply the missing facts—by pointing out generally that DOJ was

prosecuting cases involving FAA surveillance at the time. Gov't Br. 25. But that is not evidence

about *these* documents or their creation. The work-product doctrine requires that the documents

show a far clearer nexus to a specific case or claim, especially in the criminal context.

In reality, the NSD Documents were created "because of" a pressing credibility problem:

the Solicitor General had told the Supreme Court that DOJ would provide notice in

circumstances where, in fact, it was not providing notice. *See* Savage Article I. None of the

defendants who later received FAA notices ever litigated whether they were entitled to notice,

precisely because none of them *knew* the government had a secret notice policy.[17] Moreover, the

type of overarching policy reassessment undertaken by DOJ as a result of these events is not

protectable as work product. In other words, documents purporting to interpret governing law

outside the context of a particular case, like those at issue here and in *Coastal States*, are not

shielded by the privilege.[18]

> ### 4. *DOJ has failed to segregate unprotected portions of the documents.*

Finally, DOJ must segregate and disclose those portions of any document that contain

unprotected information. *See Loving v. Dep't of Defense*. 550 F.3d 32, 38 (D.C. Cir. 2008);

---

[17] DOJ argues that its notice policy was, in fact, later challenged in *Mohamud* and *Muhtorov*, Gov't Br. 25 n.4—but that is incorrect and misleading. The question of whether the government was required to provide notice was never litigated by either defendant. While the government has had to address its belated provision of notice in those cases, and the appropriate remedy for its failure, it *agrees* that the defendants were entitled to notice. *See* Gov't Br. 4-5.

[18] Finally, even if the work-product or attorney-client privileges attached, DOJ may have waived some or all of that protection by relying on the factual contents of the NSD Documents in litigation. *See Nat'l Immigration Project*, 842 F. Supp. 2d at 725-26 (finding waiver under the "unilateral testimonial use" rule and the "fairness doctrine," and requiring disclosure of materials that "describe (or refute) the alleged policy or practice"). For example, if prosecutors—such as those in Oregon, where the OSG Memo and AGAC Memo were found—relied on the NSD Documents in their court filings, that would waive the privileges in whole or in part. *See, e.g.*, *Mohamud* Disc. Br. 6-9.

*Brennan*, 697 F.3d at 189 (relying on segregated documents). FOIA requires agencies to segregate non-exempt material, 5 U.S.C. § 552(b), yet DOJ has made no effort to do so here. *See* Bradley Decl. That by itself is a basis to deny DOJ's motion for summary judgment. Segregation is crucial because the NSD Documents may contain, among other things, factual information or descriptions of NSD's *prior* notice policies or practices. *See Pub. Citizen*, 598 F.3d at 876; *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 2013 WL 1700923, at *1-2 (S.D.N.Y Apr. 16, 2013).

### III.    The Court Should Permit Plaintiffs Limited Discovery To Establish Additional Facts As Necessary, Or Should Order The Government To Supplement Its Inadequate Declarations And Vaughn Index.

As explained above, DOJ has failed to put sufficient facts into the record to carry its burden under FOIA. *See* Section II.A. That alone is sufficient to grant summary judgment in favor of Plaintiffs. *See Coastal States*, 617 F.2d at 861. It is possible, however, that the Court finds it needs additional information to resolve the status of some or all of the NSD Documents. If so, Plaintiffs respectfully request that the Court review the five NSD Documents *in camera* after ordering DOJ to provide further information: either (1) by permitting Plaintiffs to conduct the limited discovery described below, *see* Fed. R. Civ. P. 56(d), or (2) by directing DOJ to supplement its inadequate declarations and Vaughn Index with the specific facts necessary to determine whether the documents contain working law or any privilege attaches.[19]

In particular, while *in camera* review may aid the Court's assessment of DOJ's withholding decisions, certain key facts lie outside the four corners of the NSD Documents. Because the working law doctrine and the privileges invoked by the government depend on how

---

[19] A court may, at its own discretion, review withheld documents *in camera* under FOIA. Courts often do so where (1) the number of documents is small; (2) the government seeks to exempt entire documents but provides only vague justifications; or (3) the record contains conflicting evidence that suggests the agency may be misusing FOIA exemptions to conceal information that should be disclosed. *See Associated Press v. DOJ*, 549 F.3d 62, 67 (2d Cir. 2008); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). All three conditions are present here.

the documents were actually created, used, and shared, and because the government has not supplied that information, limited discovery would be appropriate in these circumstances. For instance, the Court should know which of the documents NSD relied upon when it reviewed criminal cases and legal proceedings, including which documents were transmitted to the attorneys or supervisors tasked with that review. *See, e.g.*, *Coastal States*, 617 F.2d at 858 ("[A]n understanding of the function the documents serve within the agency is crucial.").

Discovery in FOIA cases is rare, but it is appropriate where a party has provided "some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812-13 (citing *Wash. Post Co. v. U.S. Dep't of State*, 840 F.2d 26, 28 (D.C. Cir. 1988) (party produced evidence including press accounts suggesting exemption did not apply); *Porter v. DOJ*, 717 F.2d 787, 791-93 (3d Cir. 1983) (agency affidavits included conflicting information)).[20]

Plaintiffs have provided such evidence. They have pointed to a wealth of public information showing that these documents collectively contain DOJ's working law. *See, e.g.*, Section I.B. At the same time, Plaintiffs can point to contradictory and inaccurate information in DOJ's submissions, especially when it comes to the history of DOJ's notice policy. For five years, NSD attorneys failed to provide notice to criminal defendants—despite an express statutory requirement—based on a narrow and undisclosed interpretation of the law. *See* Savage Article I. When the Solicitor General discovered NSD's secret interpretation, he reportedly found it legally indefensible. *See id.* In its effort to explain away this past failure, DOJ has since made statements that are misleading. For instance, DOJ has told multiple courts—including this one— that it had not "considered" the FAA notice issue until 2013. *See* Gov't Br. 4 (quoting *Mohamud*

---

[20] *See also Schaffer v. Kissinger*, 505 F.2d 389, 391 (D.C. Cir. 1974) (granting discovery); *Families for Freedom v. U.S. Customs and Border Prot.*, 837 F. Supp. 2d. 331, 335-37 (S.D.N.Y. 2011) (same).

Disc. Br.). But that is demonstrably false. The issue was brought to DOJ's attention at least as early as 2011, when a defendant in *United States v. Khan* filed a motion devoted to this precise question. Mot. to Clarify, No. 11-cr-20331 (S.D. Fla. Dec. 14, 2011) (ECF No. 219) (Toomey Decl., Ex. J). Attorneys from NSD participated in that case, as DOJ's filings show. The issue was raised again in 2012, this time in the Supreme Court by the plaintiffs in *Clapper. See* Resp. Br. 58 n.22, 133 S. Ct. 1138 (Sept. 17, 2012).

Moreover, multiple reports indicate that NSD attorneys *had* considered the issue long before 2013, had decided that notice of evidence derived from FAA surveillance was not required, and had taken active steps to avoid ever giving notice of FAA surveillance in criminal cases. *See* Savage Article I (explaining that NSD had "long used a narrow understanding of what 'derived from' means" to avoid providing notice); Barnes & Nakashima Article ("[T]he solicitor general found out later that Justice Department lawyers did not believe they were required to make such notifications."). The fact that the Attorney General or Deputy Attorney General had not personally "considered" the issue until 2013—if that is really what DOJ means—is no basis for hiding what was, in reality, the controlling view within NSD for years.

This history colors DOJ's refusal to disclose any of the NSD Documents, as well as its unduly narrow reading of Plaintiffs' Request, discussed below. *See* Section IV. The events and policies at the heart of this case are sensitive ones for the government, especially NSD. But FOIA does not permit DOJ to withhold documents out of embarrassment or a desire to obscure its past failures. Limited discovery is warranted in precisely these circumstances. *Carney*, 19 F.3d at 812-13; *cf. Jones v. FBI*, 41 F.3d 238, 243 (6th Cir. 1994) (greater scrutiny appropriate "where it becomes apparent that the subject matter of a request involves activities which, if disclosed, would publicly embarrass the agency").

DOJ has failed to provide the factual information that would allow Plaintiffs to test its invocations of privilege. Toomey Decl. ¶¶ 3-15. Accordingly, Plaintiffs request leave to serve interrogatories and take a small number of depositions (three or fewer) on the following topics:

- The timing and chronology of DOJ's decision-making process.
- The ways in which DOJ has used or relied upon the NSD Documents.
- When copies of the NSD Documents were distributed, and to whom.
- The circumstances related to the creation of the NSD Documents.

In the alternative, if the Court declines to grant discovery, Plaintiffs respectfully request that it direct the government to supplement its inadequate declarations and Vaughn Index.

## IV.    DOJ's Searches Were Inadequate.

It is very likely that DOJ has responsive records, beyond the NSD Documents, that it has failed to identify altogether—and that it did so by construing Plaintiffs' Request in a way that is confusing and contradictory. As DOJ acknowledges, agencies must "construe a FOIA request liberally," Gov't Br. 14—yet DOJ has done precisely the opposite here. Plaintiffs believe that DOJ has avoided identifying key documents by labeling them "non-binding" or "draft," when in fact those records should have been processed as responsive. In particular, DOJ has grafted certain limiting terms onto Plaintiffs' Request, while effectively excising other terms, in order to exclude at least three key categories of records:

(1) DOJ's "FISA-Derived Guidance," which is mentioned on NSD's Vaughn Index but was not even identified as responsive to Plaintiffs' Request.

(2) NSD Documents describing its notice policy or practice from 2008 to 2013, when NSD reportedly used a "narrow understanding" of the law to avoid giving notice.

(3) NSD Documents that discuss or apply the FAA's notice provisions in practice, including in NSD's recent review of individual criminal cases and legal proceedings.

First, DOJ limited each portion of the Request to documents it labeled "binding" or "final"—even though these terms appear nowhere in Plaintiffs' Request—and on that basis DOJ excluded any record it deemed non-binding or non-final. Bradley Decl. ¶ 8. DOJ has never

explained to Plaintiffs what makes a document "final" or "binding," and it does not do so here. Yet it justifies imposing this limitation by placing inordinate weight on the fact that Part 2 of the Request seeks policies, procedures, and practices "governing" the provision of notice. Gov't Br. 15. DOJ glosses over the fact that Part 3 of the Request—for legal memoranda—did not even use the word "governing" at all. But DOJ has applied the very same limitation anyway. *Id.* The Request is plainly broader than DOJ allows, encompassing even "non-binding" records related to the provision of notice. Indeed, as Plaintiffs have shown, an agency may have working law— *informal* law or policy—even in the absence of "binding" or "final" opinions. *See Pub. Citizen*, 598 F.3d at 875. That working law is "governing" within any reasonable meaning of the term. DOJ's own cases make this point. *See* Gov't Br. 15 (quoting *Coastal States*, 617 F.2d at 866).

DOJ is correct about one thing: Plaintiffs do not seek genuine "drafts"—*i.e.*, those that preceded another document identified as responsive. But DOJ cannot tack on limiting terms and then use the "draft" or "non-final" label to avoid disclosing records that are plainly responsive. Unfortunately, this fear is not hypothetical: the Second Circuit has recently criticized DOJ for misusing the "draft" label to avoid identifying responsive documents. *See N.Y. Times Co.*, 2014 WL 2838861, at *7 n.9; *see also Coastal States*, 617 F.2d at 869 (criticizing agency for creating "a body of secret law . . . which it is attempting to protect behind a label"); *Nat'l Day Laborer*, 811 F. Supp. 2d at 741.[21] The Court should require DOJ to identify any FISA-Derived Guidance, or any pre-July 2013 interpretation it has labeled "non-binding," so that Plaintiffs can litigate whether those documents may properly be withheld.

---

[21] DOJ also justifies these limitations based on the fact that Plaintiffs did not object to a letter sent by the Office of Information Policy (OIP). Gov't Br. 15-16. But that has no bearing here, because OIP's search does not control those of other DOJ components like NSD and EOUSA. As DOJ well knows, Plaintiffs regularly reach separate scope agreements with separate DOJ components. Here, because NSD is principally responsible for national-security matters and coordinates individual prosecutions—unlike OIP—Plaintiffs refused to accept the same limitations, as they repeatedly informed DOJ.

Second, although the Request expressly seeks all legal memoranda "addressing" the FAA's notice provision and records describing "practices" related to the provision of notice, DOJ excluded documents analyzing whether notice is triggered in specific cases. It did so by construing the Request to encompass only records stating "a general rule or guideline." Bradley Decl. ¶ 9. As an initial matter, if it is DOJ's understanding that Plaintiffs' request for legal memoranda "addressing or interpreting the FAA's notice provision" does not apply to specific cases, Gov't Br. 16 n.3, that is mistaken. Legal memoranda analyzing whether the facts of a particular case trigger the FAA's notice requirement plainly "address" or "interpret" that provision.[22] Furthermore, DOJ has read the word "practices" entirely out of the other part of the Request by limiting it to general rules or guidelines. It arrived at this reading by taking "policies," "procedures," and "practices" to mean exactly the same thing. Gov't Br. 16. But "practices" are different from both policies and procedures—that is why they were separately specified in the Request. See Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading which renders some words altogether redundant."); Corbett v. City of N.Y., 2013 WL 5366397, at *19 (E.D.N.Y. Sept. 24, 2013) (contrasting "written or other formal" policies with "informal practice"). Practices do not necessarily conform to a general rule; rather, they reflect the actual interpretation of a rule in specific cases. There is an obvious reason Plaintiffs asked for DOJ's practices: in case DOJ claimed not to have responsive policies or procedures, which is the very position it has taken here. Indeed, Plaintiffs' request for "practices" shows, again, that they sought records beyond simply formal or binding policies.

---

[22] The briefs that EOUSA did produce to Plaintiffs show just how far DOJ has taken its limitation. See Toomey Decl., Exs. H & I. DOJ has acknowledged that the redacted portions of these legal memoranda contain discussion of how the FAA's notice provision applies to the particular facts of each case. See Toomey Decl. ¶ 29. Yet it has refused to process or disclose even that discussion as responsive to the Request. The redacted discussion is crucial precisely because one of the key notice issues is how DOJ analyzes when evidence is "derived" from FAA surveillance. DOJ should be required to search for, process, and disclose this type of case-specific legal analysis, including within the two redacted briefs.

Finally, even on DOJ's cramped reading, the search it actually conducted was inadequate. NSD concedes that records in particular cases may contain "general" rules responsive to the Request, Bradley Decl. ¶ 9, yet it neither searched for records within *any* FAA-related cases nor nor consulted with the NSD attorneys handling those cases.[23] *See id.* ¶¶ 5-6, 10-12. Similarly, it did not conduct an electronic search in any NSD database, including its Litigation Records System—a database that indexes documents from FISA- and FAA-related criminal prosecutions.[24] It is easy to illustrate the inadequacy of this search because NSD failed to identify numerous documents that, by its own terms, contain the kind of "general" rules it deemed responsive.[25] Defendants did not find these documents because they did not even look for them. DOJ's failure to search within categories of records plainly containing responsive material was unreasonable; it should be required to conduct an adequate search.

## CONCLUSION

For these reasons, DOJ's motion should be denied and Plaintiffs' motion granted.

---

[23] Based on the public record, there appear to be more than a dozen prosecutions involving FAA surveillance. They include, at a minimum, the cases listed in Toomey Decl. ¶ 16.

[24] *See* NSD, Office of Intelligence Litigation Records System, http://1.usa.gov/1szwjpF.

[25] *See, e.g.*, Gov't Resp., *United States v. Qazi*, No. 12-cr-60298 (S.D. Fla. July 30, 2013) (ECF No. 131); Gov't Surreply, *United States v. Daoud*, No. 12-cr-00723 (N.D. Ill. Aug. 8, 2013) (ECF No. 49); Gov't Resp. at 20, *United States v. Moalin*, No. 10-cr-04246 (S.D. Cal. Sept. 30, 2013) (ECF No. 354); Gov't Opp., *United States v. Hussein*, No. 13-cr-01514 (S.D. Cal. Oct. 11, 2013) (ECF No. 30).

Dated: August 22, 2014
      New York, New York

Respectfully submitted,

*/s/ Patrick Toomey*

Patrick Toomey (PT-1452)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

Arthur N. Eisenberg (AE-2012)
New York Civil Liberties Union
   Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

*Counsel for Plaintiffs*