UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────── x

AMERICAN CIVIL LIBERTIES UNION et al.,

               Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF JUSTICE,

               Defendant.

─────────────────────────────── x

13 Civ. 7347 (GHW)


**Memorandum of Law in Opposition to Plaintiffs'
Cross-Motion for Partial Summary Judgment, and
Reply Memorandum in Support of the Government's Motion
for Partial Summary Judgment**


PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Telephone: 212.637.2703
Fax: 212.637.2702
E-mail: benjamin.torrance@usdoj.gov


BENJAMIN H. TORRANCE
Assistant United States Attorney

    – Of Counsel –

**Table of Contents**

ARGUMENT ...................................................................................................................... 1

   A.   The Withheld Documents Are Privileged, and Are Not "Working Law" ........................ 1

     1.   The "Working Law" Doctrine .......................................................................... 1

     2.   The Withheld Records Here Are Not "Working Law" ..................................... 3

     3.   The Withheld Records Are Privileged ............................................................ 8

       a.   Deliberative Process Privilege ............................................................ 9

       b.   Attorney-Client Privilege ................................................................... 11

       c.   Work Product Privilege ....................................................................... 13

       d.   There Is No Information That Can Be Segregated and Disclosed ........................ 14

   B.   Discovery Is Not Warranted, Nor Is *In Camera* Review, as the Appropriate Remedy if Any Is Remand for Further Explanation ..................................................................... 15

   C.   The Searches Were Adequate ............................................................................ 19

Conclusion ...................................................................................................................... 22

## Table of Authorities

*Cases*:

*Afshar v. Department of State*,
  702 F.2d 1125 (D.C. Cir. 1983) ................................................................ 1

*Ancient Coin Collectors Guild v. Department of State*,
  641 F.3d 504 (D.C. Cir. 2011) ........................................................... 5, 19

*Associated Press v. DOJ*,
  549 F.3d 62 (2d Cir. 2008) .................................................................... 18

*Brennan Center v. DOJ*,
  697 F.3d 184 (2012) ................................................................... passim

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .................................................................. 16

*Campbell v. DOJ*,
  164 F.3d 20 (D.C. Cir. 1998) ................................................................ 18

*Carney v. DOJ*,
  19 F.3d 807 (2d Cir. 1994) .............................................................. 15, 19

*Coastal States Gas Corp. v. Department of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ............................................. 1, 3, 13, 21

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985) .............................................................................. 7

*In re County of Erie*,
  473 F.3d 413 (2d Cir. 2007) .............................................................. 11, 12

*In re Crude Oil Commodity Litigation*,
  No. 06 Civ. 6677, 2007 WL 2589482 (S.D.N.Y. 2007) .......................... 3

*Delaney, Migdail & Young, Chartered v. IRS*,
  826 F.2d 124 (D.C. Cir. 1987) .......................................................... 13, 14

*DiViaio v. Kelley*,
  571 F.2d 538 (10th Cir. 1978) ............................................................... 5

*Federal Housing Finance Agency v. Merrill Lynch & Co.*,
  903 F. Supp. 2d 274 (S.D.N.Y. 2012) .................................................... 3

*Federal Open Market Committee v. Merrill*,
  443 U.S. 340 (1979) .............................................................................. 2

*Gilliam v. Nevada Power Co.*,
  488 F.3d 1189 (9th Cir. 2007) .............................................................. 8

*Grand Central Partnership, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) .......................................................... 4, 19, 21

*In re Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000) ................................................................. 7

*Hudson River Sloop Clearwater, Inc. v. Department of the Navy*,
    891 F.2d 414 (2d Cir. 1989)...................................................................................... 4

*Judicial Watch, Inc. v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006)................................................................................. 18

*Larson v. Department of State*,
    565 F.3d 857 (D.C. Cir. 2009)................................................................................. 18

*Leeds v. Commissioner of Patents & Trademarks*,
    955 F.2d 757 (D.C. Cir. 1992).................................................................................. 1

*Local 3, International Bhd. of Elec. Workers v. NLRB*,
    845 F.2d 1177 (2d Cir. 1988)................................................................................... 18

*Long v. Office of Personnel Management*,
    692 F.3d 185 (2d Cir. 2012)..................................................................................... 15

*Milner v. Department of the Navy*,
    131 S. Ct. 1259 (2011)............................................................................................ 14

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2008)............................................................................... 18

*National Council of La Raza v. DOJ*,
    411 F.3d at 356...................................................................................................... 2, 3

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)........................................................................................... passim

*Oglesby v. Department of the Army*,
    920 F.2d 57 (D.C. Cir. 1990)................................................................................... 22

*Oglesby v. Department of the Army*,
    79 F.3d 1172 (D.C. Cir. 1996)................................................................................. 18

*PHE, Inc. v. DOJ*,
    983 F.2d 248 (D.C. Cir. 1993)................................................................................... 1

*Public Citizen v. OMB,*,
    598 F.3d 865 (D.C. Cir. 2010)........................................................................... 3, 6, 21

*Renegotiation Board v. Grumman Aircraft Engineering Corp.*,
    421 U.S. 168 (1975)............................................................................................ 3, 4, 6

*SafeCard Services, Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991)......................................................................... 14, 19, 21

*Schiller v. NLRB*,
    964 F.2d 1205 (D.C. Cir. 1992)............................................................................... 14

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998)................................................................................. 14

*Senate of Puerto Rico v. DOJ*,
    823 F.2d 574 (D.C. Cir. 1987)................................................................................. 11

*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .................................................................................. 3

*Tigue v. DOJ*,
   312 F.3d 70 (2d Cir. 2002) ............................................................................... 9, 21

*United States v. Adlman*,
   68 F.3d 1495 (2d Cir. 1995) .............................................................................. 14

*United States v. Botti*,
   711 F.3d 299 (2d Cir. 2013) ............................................................................... 3

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) .......................................................................................... 11

*Washington Post Co. v. Department of State*,
   840 F.2d 26 (D.C. Cir. 1988), *vacated*, 898 F.2d 793 (D.C. Cir. 1990) ................................. 16

*Weisberg v. EPA*,
   745 F.2d 1476 (D.C. Cir. 1984) ........................................................................ 21

*Wilner v. NSA,*,
   592 F.3d 60 (2d Cir. 2009) ........................................................................ 4, 17, 18

*Zemansky v. EPA*,
   767 F.2d 569 (9th Cir. 1985) .............................................................................. 4

*Statutes*:

5 U.S.C. § 552(a)(2)(A) ............................................................................................ 21

5 U.S.C. § 552(a)(3)(A) .............................................................................................. 4

5 U.S.C. § 552(a)(4)(B) ............................................................................................ 18

50 U.S.C. § 1806(f) ................................................................................................. 17

*Rules*:

Fed. R. Evid. 408(a) .............................................................................................. 20

Fed. R. Evid. 801 ................................................................................................ 7, 15

Defendant the Department of Justice ("DOJ" or the "Department") respectfully submits this memorandum in opposition to plaintiff American Civil Liberties Union's ("ACLU's") cross-motion for partial summary judgment, and in support of the government's motion for summary judgment.

## ARGUMENT

### A.   The Withheld Documents Are Privileged, and Are Not "Working Law"

#### 1.   The "Working Law" Doctrine

The ACLU's primary argument is that the withholding of five documents in this case—as described in the *Vaughn* index attached to the Bradley Declaration—must be disclosed as "working law." That contention depends on speculation and an incomplete understanding of the "working law" doctrine. Disclosure is not required in this case.

Because FOIA "represents a strong congressional aversion to secret agency law," it requires disclosure of "documents which have 'the force and effect of law.' " *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (quoting H.R. Rep. No. 89-1497, reprinted at 1966 U.S.C.C.A.N. 2418, 2424; other quotation marks and alterations omitted). The D.C. Circuit explained in *Afshar v. Department of State* that "working law" within the meaning of *Sears* means "those policies or rules, and the interpretations thereof, that either create or determine the extent of the substantive rights and liabilities of a person," *i.e.*, that a private party may have cause to rely on. 702 F.2d 1125, 1141 (D.C. Cir. 1983); *see also, e.g.*, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980) ("working law" or "secret law" required to be disclosed consists of agency guidance or precedent applied by agency staff in their dealings with the public); *PHE, Inc. v. DOJ*, 983 F.2d 248, 251-52 (D.C. Cir. 1993) (secret law is "materials that define standards for determining whether the law has been violated"); *Leeds v.*

*Commissioner of Patents & Trademarks*, 955 F.2d 757, 762 (D.C. Cir. 1992) (documents "used to develop 'uniform policies' . . . and relied upon as separate documents by agency personnel to make decisions . . . in similar cases"); *see Federal Open Market Committee v. Merrill*, 443 U.S. 340, 352-53 (1979) (distinguishing "rules that govern the adjudication of individual rights, [or] require particular conduct or forbearance by any member of the public" from material covered by exemption five).

The Second Circuit has recently elaborated on the "working law" doctrine. Documents that fall within the deliberative process privilege (described in detail in the government's opening brief) may be unprotected by FOIA's exemption five for two related reasons: if they have been " 'adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealing with the public,' " or if they are "properly characterized as an 'opinion or interpretation which embodies the agency's effective law and policy, in other words, its 'working law.' " *Brennan Center v. DOJ*, 697 F.3d 184, 195 (2012) (quoting *National Council of La Raza v. DOJ*, 411 F.3d at 356-57, & *Sears*, 421 U.S. at 153). As the Supreme Court explained in *Sears*, both exceptions similarly hold that a document is not covered by exemption five "if it closely resembles that which FOIA affirmatively requires to be disclosed: 'final opinions . . . made in the adjudication of cases,' 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,' and 'administrative staff manuals and instructions to staff that affect a member of the public.' " *Id.* (quoting 5 U.S.C. § 552(a)(2)(A)-(C)).

But essential to the "working law" doctrine is that the record reflect a final and binding position of the agency itself. To be "working law," a record must have " 'operative effect' " and its " 'reasoning [must be] adopted by the [agency] as *its* reasoning.' " *Brennan Center*, 697 F.3d

2

at 197 (quoting *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975)). If the agency is not " 'bound' " by the document, and may either reject its conclusion or " 'accept it for reasons other than those set forth,' " it does not fall within the "working law" exception to exemption five. *Id.* (quoting *Grumman*, 421 U.S. at 177).[1] Thus, examples of "working law" include " 'opinions [that are] routinely used by agency staff as guidance . . . and were retained and referred to as precedent,' " *id.* at 200 (quoting *Coastal States*, 617 F.2d at 869), " 'formal or informal policy on how [an agency] carries out its responsibilities' [that are] referred to as precedent, and not part of an ongoing deliberative process," *id.* at 201 (quoting *Public Citizen v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010)), or records that " 'explain and apply established policy' " in terms that reflect the agency's adopted positions and represent " '[the agency's] final *legal* position,' " *id.* (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 81 (D.C. Cir. 2002); emphasis in *Tax Analysts*).

## 2.   The Withheld Records Here Are Not "Working Law"

As made clear in a declaration submitted with this response, the five documents indexed and withheld in this case are not "working law," and thus have not lost the protection of exemption five.[2] Declaration of John B. Wiegmann dated Sept. 5, 2014 ("Wiegmann Decl.") ¶ 7.

---

[1] As this quotation makes clear, it is incorrect as a matter of law to say, as the ACLU does, that the deliberative process privilege "does not protect advice that has been accepted by decision-makers." (Pls.' Mem. 13). An agency may accept the bottom line of advice it has received without adopting its reasoning, which is required for the agency to have adopted it in the sense of the "working law" doctrine. *Grumman*, 421 U.S. at 177, 184-86; *La Raza*, 411 F.3d at 358-59.

[2] The ACLU distinguishes the "adoption doctrine" from the "working law" doctrine, as did *Brennan Center*. (Pls.' Mem. 8 n.9). Its argument relies entirely on "working law," and by mentioning the "adoption doctrine" only in passing and in a footnote, it has forfeited any contention based on that theory. *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013); *Federal Housing Finance Agency v. Merrill Lynch & Co.*, 903 F. Supp. 2d 274, 277 n.3 (S.D.N.Y. 2012); *In re Crude Oil Commodity Litigation*, No. 06 Civ. 6677, 2007 WL 2589482, at *3 (S.D.N.Y. 2007). Even so, the doctrine provides no help to the ACLU: as *Sears* and *Brennan Center* held, the protection of exemption five is lost only " 'if an agency chooses *expressly* to adopt or

The ACLU offers nothing but speculation to support its claim that these five documents were "working law." Although it states that "it is clear" that the documents are working law, and that "[c]ertain of these documents served as the basis for DOJ's policy reversal and . . . operated as the agency's guiding legal interpretation" (Pls.' Mem. 8), it provides no support for these incorrect statements. There is no evidence whatsoever that any of the withheld documents were used or distributed as guidance, instructions, or precedent; were binding on DOJ or adopted as DOJ's position or policy; were DOJ's final legal position; were used by DOJ in its dealings with the public; had any force or effect of law within DOJ; or met any of the formulations courts have used to described "working law" that cannot be protected under exemption five. To the contrary, DOJ has now submitted a declaration specifically stating these documents were not, and do not meet the criteria for, "working law." Wiegmann Decl. ¶ 7. The ACLU's conjectures to the contrary are not enough to overcome this assertion. *Wilner v. NSA*, 592 F.3d 60, 75 (2d Cir. 2009); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989).

The ACLU offers its opinion that it is "simply not credible" that DOJ lacked a "formal or informal" policy concerning FAA notices. (Pls.' Mem. 1, 8). The argument is flawed in multiple respects. First of all, a FOIA request is limited to a "request for *records*," 5 U.S.C. § 552(a)(3)(A) (emphasis added)—it cannot properly seek unwritten or inchoate "policies," and the statute does not require an agency to create documents to describe its policies or for any other reason. *Grumman*, 421 U.S. at 191 (FOIA "imposes no independent obligation on agencies to write opinions. It simply requires them to disclose the opinions which they do write."); *Zemansky*

---

incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.' " *Brennan Center*, 697 F.3d at 197 (quoting *Sears*, 421 U.S. at 161; emphasis in *Sears*). There is no evidence whatsoever in this case of any express adoption.

*v. EPA*, 767 F.2d 569, 574 (9th Cir. 1985) ("the EPA has no duty either to answer questions unrelated to document requests or to create documents"); *DiViaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) (denying FOIA disclosure where, "[r]ather than seeking documents, as contemplated by the Act, DiViaio seeks answers to interrogatories relating thereto"). The ACLU infers that because the government, pursuant to its recent review as described previously (Gov't Mem. 3-5), "determined" a particular course of action and acted in accordance with it, there must have been "working law." (Pls.' Mem. 8-9).[3] But the right question under FOIA is not whether a policy or practice existed, but whether there is a *record* of that policy or practice that meets the criteria for disclosable "working law." There is not: NSD's search was reasonably calculated to find any such records (as further explained below), and did not. That may be counterintuitive to the ACLU (which, of course, is not expert in the inner workings of DOJ or the ways in which the government promulgates policies or handles criminal counterterrorism prosecutions), but the fact that a "slim yield may be intuitively unlikely" does not show that the agency's search is inadequate, much less that responsive records exist. *Ancient Coin Collectors Guild v. Department of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).

Furthermore, the ACLU simply assumes that the withheld documents must be DOJ's "policy," an assumption that rests only on conjecture. Its logic would collapse the distinction

---

[3] The memorandum attached to the prior Torrance Declaration as Exhibit A indeed stated that DOJ had "determined" a course of action regarding FAA notices. But contrary to the ACLU's characterization, DOJ has not "acknowledged that it reached an 'ultimate decision.' " (Pls.' Mem. 9). Paragraph 17 of the Bradley Declaration, which the ACLU quotes, says instead that the five withheld documents "preceded an ultimate decision," but that is not the same as saying that an ultimate decision had been reached at that time. *See Sears*, 421 U.S. at 152 n.18 (deliberative process privilege does not depend on "the ability of an agency to identify a specific decision in connection with which a memorandum is prepared," and "memoranda containing recommendations which do not ripen into agency decisions" may still be privileged). The government's deliberative process continues, for instance regarding the not-yet-final FISA-Derived Guidance, described below.

recognized by the Supreme Court, between " 'effective law and policy' " (which cannot be

shielded by exemption five) and " 'the agency's group thinking in the process of working out its

policy and determining what its law shall be' " (which may be withheld). *Brennan Center*, 697

F.3d at 196 (quoting *Sears*, 421 U.S. at 153 (quotation marks omitted)). Unless and until an

agency actually adopts a document as its policy, the fact that the document may propose a course

of action that is later followed, or is consistent with that later course of action, is irrelevant. *Id.* at

197-98. If the agency is not " 'bound' " by the prior recommendation, or even if it accepts the

recommendation's conclusions without adopting its reasoning, the recommendation remains

shielded by the deliberative process privilege. *Id.* (quoting *Grumman*, 421 U.S. at 177, 184, 186-

87). The end result of that may be that an agency takes action without a public record of its

reasoning—but, contrary to the ACLU's apparent logic, that result does not dispel the privilege.

*Id.* (citing *Grumman*, 421 U.S. at 191).

The ACLU also relies on a misreading of the *Vaughn* index, claiming that withheld

document number 3 appears to be "post-decisional" because it summarizes the "conclusions of

participants." Bradley Decl. Ex. A; (Pls.' Mem. 9). But the conclusions of individual meeting

participants, i.e., individual government officials, is not the same as the "final legal opinion" of

the government itself, or a conclusion "adopted" by the government itself. The ACLU cites

*Public Citizen*, 598 F.3d at 875, to contend that the agency's "formal or informal policy on how

it carries out its responsibilities" must be disclosed—but the *Public Citizen* court required

disclosure of documents that "neither make recommendations for policy change nor reflect

internal deliberations on the advisability of any particular course of action," and have been

"sufficiently adopted to qualify as 'working law.' " *Id.* The document here, in sharp contrast,

does reflect such deliberations, and has not been adopted by the agency. Bradley Decl. ¶ 17 &

Ex. A. The ACLU calls the meeting summary a "key source of DOJ's effective law and policy going forward," but again it simply has no basis or support for that conclusory assertion.

Regarding document number 1 on the index, the ACLU again submits only raw speculation. It relies entirely on newspaper reports—which are not "evidence," but only inadmissible hearsay. Fed. R. Evid. 801. The newspaper articles cited themselves rely only on unnamed sources for their supposed facts regarding the government's policies. (Pls.' Mem. 10, citing Toomey Decl. Exs. A, D, G[4]). It would be improper and unfair to treat purported statements by an unidentified and unauthorized putative government official as an effective waiver of the government's privileges. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."); *In re Grand Jury Proceedings*, 219 F.3d 175, 182-86 (2d Cir. 2000) ("fairness principles" govern in determining implied waiver of privilege; unauthorized officer cannot waive privilege without further examination of context). In any event, nowhere do the articles say what the ACLU says they say, that "the Solicitor General's interpretation was ultimately adopted as DOJ's position"; all they say is, as the ACLU quotes the article, that the Solicitor General "argued" that a particular practice was unjustified, and the practice was then changed. That cannot be read to say that the memorandum prepared by the Office of the Solicitor General was ever adopted by the Department or met the other criteria for "working law."

---

[4] The sole government official named in these articles is the Attorney General in Ex. D, who is quoted as saying that DOJ would undertake a review of affected cases and provide notifications going forward. But nothing attributed to the Attorney General in this article discusses DOJ's view of the law regarding the notices, much less adopts the conclusions or reasoning of the records withheld in this case or indicates that they meet the criteria for "working law."

The ACLU also contends that the fact that the USAO/Oregon possessed the Solicitor General's memorandum "suggests reliance upon the memo as working law." (Pls.' Mem. 10-11). "It is logical," the ACLU asserts, "that [USAO/Oregon] would have a copy of the document reflecting DOJ's working law." (Pls.' Mem. 11). That may be true, but it is entirely illogical to suggest that the converse must therefore be true: just because the USAO/Oregon might be likely to possess any binding guidance from DOJ does not mean that any DOJ document that office possesses is therefore binding guidance.[5] Indeed, under the ACLU's reasoning, if the Solicitor General's memorandum was working law, it should have been in the possession of the USAO/ Colorado (which also handled a case in which an FAA notice was provided)—but that office's search did not locate that memorandum, or any of the other withheld records. Bradley Decl. ¶ 26.

In short, as in *Brennan Center*, "there is no evidence that [the agency] based its change in policy on [the deliberative documents] plaintiff seeks," even though the agency's course of action may have been consistent with the recommendations in those documents. 697 F.3d at 206. Absent such evidence, this Court cannot conclude that the records were either adopted or became agency working law, and ordering their release would jeopardize the government's deliberative processes. *Id.*

### 3.   The Withheld Records Are Privileged

NSD's index and declaration, taken together, are sufficient to support the asserted privileges. The ACLU argues that because other cases described more detail about the records at issue, the government has failed to meet its burden here. (Pls.' Mem. 11-13). But they ignore the

---

[5] *See Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1196 n.7 (9th Cir. 2007) (explaining "logical fallacy of affirming the consequent"). It is easy to imagine reasons that this memorandum, even though it was not working law, would be in the possession of a United States Attorney's Office handling counterterrorism prosecutions, the most obvious being that people in that office may have been interested in participating in or monitoring the progress of the ongoing deliberation.

context of the government's deliberations, and exaggerate the legal requirements for establishing FOIA exemption five.

   a.   **Deliberative Process Privilege**

The ACLU criticizes the government for not specifying the "origins, use, circulation, or current status" of the withheld documents. (Pls.' Mem. 13). That is incorrect. The NSD declaration describes the "origins and use" of the documents: they "were written as part of a process to assist [DOJ's] decisionmaking regarding provision of notice under FISA and the FAA," and consistent with those origins, they were used to "describe[e] the views and recommendations of various components of [DOJ]" "as part of the exchange of ideas and suggestions that accompanies careful and reasoned decisionmaking." Bradley Decl. ¶ 17.

The ACLU contrasts this case with *Brennan Center*, where the court of appeals described the backdrop of requests and exchanges that led to the generation of the three documents at issue there. (Pls.' Mem. 12-13). But that case involved a more formal process, by which the general counsel of an agency transmitted a request for legal advice to Office of Legal Counsel, the DOJ component charged with providing such advice. 697 F.3d at 190. Later, OLC began the process of drafting a formal opinion memorandum, though the memorandum was never finalized. *Id.* at 191-92. In determining that all three of the documents involved were not "working law," the court "beg[a]n . . . by examining the process by which the memorandum was created." *Id.* at 202. In doing so, the court cited *Tigue v. DOJ*, which held that " 'whether a particular document is exempt depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process.' " *Id.* (citing 312 F.3d 70, 78 (2d Cir. 2002); alterations omitted). The pertinent analysis, the court noted, is whether an agency has "m[e]t its burden of proof under the 'predecisional document' test by demonstrating that the preparer was not the

final decisionmaker and that the contents confirm that the document was originated to facilitate an identifiable agency decision," and has shown the document's deliberative nature in that it "formed an essential link in a specified consultative process, reflects the personal opinions of the writer rather than the policy of the agency, and if released would inaccurately reflect or prematurely disclose the views of the agency." *Id.* (quotation marks and alterations omitted).

That is all that is required under the law. Though the ACLU emphasizes the details of the documents and of their circumstances, as long as an agency has demonstrated that a document is predecisional and deliberative, it is privileged. And DOJ has done so here, as elaborated in the government's opening papers and the Bradley Declaration, which specifies that all five documents were prepared as views and recommendations rather than as final decisions, that they were prepared as part of a consultative process regarding DOJ's practice concerning FAA notices, that they preceded an ultimate decision, and that their release would harm the decisionmaking process. Bradley Decl. ¶¶ 17-18, 20; Gov't Mem. 20-23. While some details are not indicated on the NSD index, such as the date, author, or distribution list, that is only because—consistent with the less formal decisionmaking process as compared to *Brennan Center*—the memos themselves do not contain headers with that information. Bradley Decl. Ex. A. But the declaration and index, taken together, contain sufficient information to establish the applicability of the privilege. For instance, concerning the distribution of the memorandums, the Bradley Declaration states they were "between NSD attorneys and/or other DOJ components," and were kept confidential within the Executive Branch, "accessed only by government officials and staff working on the issues addressed by the memorandums." *Id.* ¶¶ 20, 22. DOJ was able to approximate the dates of the memorandums. *Id.* Ex. A. And while

individual authors were not named, DOJ identified the authoring component for four of the five records. *Id.*

        **b.**      **Attorney-Client Privilege**

     As for the attorney-client privilege, the ACLU contends DOJ has failed to establish " 'communications' between attorneys and their 'clients'—let alone that they contain confidential client information," and complains that the government "does not specify who, supposedly, stood in the role of a client." (Pls.' Mem. 14). The argument is misconceived for several reasons. The Bradley Declaration establishes that these memorandums were communications between the attorney-authors of the memos and the client, which, ultimately, is the United States.[6] To the extent the ACLU is suggesting that to prevail on its assertion of attorney-client privilege, the government must specify the ultimate decisionmaker, that is legally wrong: in *Upjohn Co. v. United States*, the Supreme Court rejected the view that the privilege only extends to the "control group" of corporate decisionmakers, and instead held that "client" may include other, non-decisionmaking employees as well. 449 U.S. 383, 389-97 (1981). If the ACLU's view is that a record must "contain confidential client information" to be privileged, that too misstates the law: the three-part test for the attorney-client privilege stated in *In re County of Erie* requires the communication itself to be confidential, but does not inquire as to what the communication contains other than to determine whether it was for the purpose of legal advice. 473 F.3d 413, 419 (2d Cir. 2007); (Gov't Mem. 24).[7]

---

[6] The ACLU suggests, without support, that DOJ acts alone in the decision as to the government's final legal position regarding FAA notice. But many components of the government may have a stake in that decision.

[7] It is not the case that the government has contended that "every document prepared by one DOJ lawyer for another is a 'client' communication with the United States." (Pls.' Mem. 14-15). The sole case cited in that portion of the ACLU's argument, *Senate of Puerto Rico v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987), did not concern the attorney-client privilege. In any event, the reason the

The ACLU next asserts that the privilege has been waived because they were described in the press based on the accounts of unidentified government officials. As explained above, *supra* at 7, a waiver cannot be implied based on the unverified statements of unnamed supposedly knowledgeable "officials"—such an unauthorized discussion, assuming it occurred, is not a disclosure by the agency itself such that the privilege has been waived.

Finally, the ACLU insists that the memorandums are not privileged as they concern "policy advice." (Pls.' Mem. 15). It is true that the "predominant purpose" of a document must be "to render or solicit legal advice" for it to be privileged. *County of Erie*, 473 F.3d at 420. But in that case, the Second Circuit made clear that related policy advice—"how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances"—satisfies that test. *Id.* ("these considerations and caveats are not other than legal advice or severable from it"). The Bradley Declaration shows that the memos at issue meet this test. Bradley Decl. ¶ 22 ("all of the withheld materials consist of legal advice, including policy advice regarding the government's best practices for implementation of its obligations"). "When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice." *County of Erie*, 473 F.3d at 422.

---

memos here are privileged is because they meet the *County of Erie* test, not simply because they were prepared by DOJ lawyers.

c.     **Work Product Privilege**

The ACLU disputes the government's assertion of work-product privilege, on the ground that it applies "only to documents that are directed at a specific case or claim, not to policy-level documents." (Pls.' Mem. 15-16). But the law is to the contrary. The ACLU notes that the D.C. Circuit, in *Coastal States*, stated that an agency can only assert work-product protection when "a specific claim had arisen, was disputed . . . and was being discussed in the memorandum." 617 F.2d at 866. But the same court later clarified that that holding depended on the context of that case, and did not state a "blanket rule." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126-27 (D.C. Cir. 1987). The "critical issue" is the "function of the documents," and in *Coastal States* the documents were " 'neutral, objective analyses of agency regulations resembling question and answer guidelines which might be found in an agency manual' " and that had precedential effect within the agency. *Id.* at 127 (quoting 617 F.2d at 863; alterations omitted). Those were not work product. *Id.* But "memos [that] advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" are protected work product. *Id.*

The examination of a "specific claim" in *Coastal States* thus served to "isolate those documents worthy of protection as attorney work product" in the particular context of that case, where the court had to distinguish the analyses of agency regulations from "more pointed documents." *Id.* But that language cannot serve to exclude the types of advice documents, prepared in anticipation of litigation but not geared to a specific case, that were held to be work product in *Delaney*. Similarly, the D.C. Circuit reaffirmed that documents that "contain[ ] tips for handling [a class of] cases that could affect subsequent . . . litigation," that "contain[ ] advice on how to build a[ ] . . . defense and how to litigate [a class of] cases," and that "provide instructions on preparing and filing pleadings in [a class of] cases, including arguments and authorities," are

the "sort of information—prepared in anticipation of litigation—[that] falls within the attorney work-product privilege and, therefore, within exemption 5." *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds*, *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011).

Additionally, in *In re Sealed Case*, 146 F.3d 881, 885-87 (D.C. Cir. 1998), the court questioned the "continued vitality" of the "specific claim" requirement of *Coastal States* and *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1202-03 (D.C. Cir. 1991), and at the least confined that rule to situations where government lawyers acted as "prosecutors or investigators of suspected wrongdoers." And in *United States v. Adlman*, the Second Circuit cited *Delaney* approvingly to hold that work-product protection does not "require that actionable facts have occurred," but only that they are "immediately contemplated." 68 F.3d 1495, 1501-02 (2d Cir. 1995).

Accordingly, the work-product doctrine applies here. The authors of the withheld memorandums were not acting as "prosecutors or investigators" in the course of an "active investigation" of wrongdoing. *Sealed Case*, 146 F.3d at 885. Instead, like the lawyers in *Delaney* and *Schiller*, they were issuing advice in contemplation of litigation, albeit not tied to a specific claim or case, to advise the agency in connection with anticipated legal challenges. *Delaney*, 826 F.2d at 127. The records are therefore protected as work product.

### d.    There Is No Information That Can Be Segregated and Disclosed

The ACLU asserts that DOJ "has made no effort" to segregate and produce non-exempt information. (Pls. Mem. 18-19). Although it was omitted from the initial set of declarations, DOJ has filed with this responsive memorandum a supplemental declaration, expressly stating that

14

NSD did in fact conclude that no non-exempt information can be segregated and produced.

Declaration of Mark A. Bradley dated Sept. 5, 2014, ¶ 4.

**B.   Discovery Is Not Warranted, Nor Is *In Camera* Review, as the Appropriate Remedy if Any Is Remand for Further Explanation**

The ACLU asks for discovery, which is strongly disfavored in FOIA cases. An agency's declarations are generally " 'sufficient to sustain the agency's burden' " and are " 'accorded a presumption of good faith' "; for that reason, " 'discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.' " *Long v. Office of Personnel Management*, 692 F.3d 185, 190-91 (2d Cir. 2012) (quoting *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994)). To justify discovery in a FOIA case where the agency has submitted sufficient declarations, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812 (citation omitted).

As discussed above and in the government's opening brief, the declarations here were sufficient to sustain the government's burden that its search was thorough and adequate, and that the exemptions applied to the withheld documents. The ACLU has made no showing of bad faith or that summary judgment is not appropriate.

Although the legal standard requires "tangible evidence," the ACLU has none. Instead, it mostly relies on press accounts for its purported showing that the claimed FOIA exemption does not apply. (Pls.' Mem. 20, 21). Press accounts, however, are not "evidence," much less tangible evidence, as they are inadmissible hearsay. Fed. R. Evid. 801. Moreover, as discussed above, those press accounts themselves rely entirely on anonymous supposed "officials," making them

15

impossible to evaluate or challenge; they should bear no weight for that additional reason. And in any event, they do not demonstrate, as the ACLU would have it, that any DOJ document was "working law." *See supra* at 7.

The ACLU cites *Washington Post Co. v. Department of State*, 840 F.2d 26, 28 (D.C. Cir. 1988), to suggest that "press accounts suggesting [an] exemption did not apply" might overcome the exemption. First, though not noted in the ACLU's papers, *Washington Post* was vacated, and accordingly carries no weight. 898 F.2d 793 (D.C. Cir. 1990) (vacatur); *see Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010) ("A decision may be *reversed* on other grounds, but a decision that has been *vacated* has no precedential authority whatsoever." (quotation marks and citation omitted)). Second, the *Washington Post* court considered FOIA's exemption 6, which requires a court to weigh an individual's privacy interest, an inquiry that is affected by how much relevant information about that individual has already been made public—and it was for that purpose that the court cited press accounts about the affected person. 840 F.2d at 28. Third, the court considered not anonymous statements in newspapers, but also published accounts by former government officials whose names were on the record. *Id.*

The ACLU also contends that DOJ has made "misleading" statements. (Pls.' Mem. 20). It has not. The ACLU first challenges DOJ's public, court-filed statement in *United States v. Mohamud* that prior to 2013 it had "not considered the particular question of whether and under what circumstances information obtained through electronic surveillance under Title I or physical search under Title III could also be considered to be derived from prior collection under Title VII." Torrance Decl. Ex. A at 7.[8] The ACLU asserts that "[t]he issue was brought to DOJ's attention" in 2011, when the defendant in *United States v. Khan* filed a motion "devoted to this

---

[8] Quoted at greater length at Gov't Mem. 3-5.

precise question." (Pls.' Mem. 20-21). But that is not correct, and the government's statement was and is accurate. The motion in *Khan* sought to discover "whether the affidavit and other evidence offered in support of the FISA warrant relied on any evidence derived from an FAA surveillance order." Toomey Decl. Ex. J. at 1. The government thus understood that motion as a request for disclosure of the contents of the FISA applications, and in its response accordingly treated it as a motion under 50 U.S.C. § 1806(f), rather than a request for notice under § 1806(c). *See United States v. Khan*, No. 11 Cr. 20331, ECF No. 284, at 2-3 ("Because Hafiz Khan requests disclosure of the factual basis for the FISA applications, his motion triggers Sections 1806(f) and 1825(g) of FISA").[9] The government ultimately took the position that the motion was foreclosed because, largely based on the court's prior orders, it was not necessary to determine the legality of the surveillance. *Id.* at 3-4. The district court ruled in the government's favor and denied the defense request. As for the brief in *Clapper v. Amnesty Int'l* cited by the ACLU, that simply includes a footnote stating, "It is not at all clear what must be disclosed under the FAA's notice provision." Br. for Resps. at 58 n.22. None of this comes close to calling into question the government's statements to this Court and the *Mohamud* court.

The ACLU finally insinuates—based on nothing but its own assumptions—that DOJ has withheld documents "out of embarrassment or a desire to obscure its past failures." (Pls.' Mem. 21). The Second Circuit has held that precisely that kind of speculation about agency motives carries no weight. *Wilner*, 592 F.3d at 75. In any event, DOJ has candidly set forth the history of its consideration of the FAA's notification provision. (Gov't Mem. 3-5). But the fact remains that DOJ is entitled to protect its privileged and confidential material from disclosure, in order to

---

[9] § 1806(f) addresses motions "to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance" under FISA.

advance the important purposes of effective government and adherence to the rule of law that lie behind those privileges. (Gov't Mem. 20-25).

Although the threshold is lower than for discovery, *in camera* review, while contemplated in the statute itself, 5 U.S.C. § 552(a)(4)(B), is also disfavored. " 'If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.' " *Wilner*, 592 F.3d at 76 (quoting *Larson v. Department of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)). Under that principle, *in camera* review—which contradicts the legal system's preference for open proceedings—"is considered the exception, not the rule." *Local 3, International Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1179-80 (2d Cir. 1988); *accord Associated Press v. DOJ*, 549 F.3d 62, 67 (2d Cir. 2008) ("Only if the government's affidavits make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions is *in camera* review necessary.").

As set forth above, in the government's view the declarations and index are sufficient to sustain the exemption. But if this Court disagrees, the proper remedy is to remand the matter to the agency for a more detailed explanation, which "is favored" over *in camera* review "where agency affidavits are facially inadequate." *Campbell v. DOJ*, 164 F.3d 20, 31 (D.C. Cir. 1998); *see Morley v. CIA*, 508 F.3d 1108, 1122, 1127 (D.C. Cir. 2008); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 144 (D.C. Cir. 2006); *Oglesby v. Department of the Army*, 79 F.3d 1172, 1175, 1180-81 (D.C. Cir. 1996).

## C.   The Searches Were Adequate

The ACLU challenges DOJ's search based on its assumption that "[i]t is very likely that DOJ has [more] responsive records . . . that it has failed to identify altogether." (Pls.' Mem. 22). That premise is based on nothing more than speculation, which is inadequate to require a new search or a better explanation of the search that was conducted. *Grand Central*, 166 F.3d at 489 ("purely speculative claims about the existence and discoverability of other documents" do not suffice to defeat agency affidavits (quotation marks omitted)); *Carney*, 19 F.3d at 813; *Ancient Coin Collectors*, 641 F.3d at 514 (that a "slim yield may be intuitively unlikely" does not show agency's search is inadequate); *SafeCard*, 926 F.2d at 1200.

The ACLU states that it "believe[s] that DOJ has avoided identifying key documents by labeling them 'non-binding' or 'draft.' " (Pls.' Mem. 22). But a belief based on no facts is irrelevant. As fully explained in the government's opening memorandum, DOJ reasonably read the request as encompassing only "governing," i.e., non-draft, documents, informed the ACLU of that interpretation well in advance,[10] and searched accordingly. That is why the "FISA-derived guidance" was not identified as responsive: while such a guidance, if ever finalized, might qualify as a "polic[y], procedure[ ], [or] practice[ ]" depending on its form and content,

---

[10] Without disputing that the Office of Information Policy, a DOJ component, made this interpretation clear in a letter months before the lawsuit was filed (Gov't Mem. 15-16), the ACLU now says that has "no bearing" because neither NSD nor EOUSA wrote that letter (Pls.' Mem. 23 n.21). But whether or not OIP's letter "control[s]" NSD's or EOUSA's interpretation is not the issue. It was reasonable for NSD and EOUSA to construe the request in light of the facts that OIP had informed the ACLU of this interpretation, invited it to object if it disagreed, and received no response. NSD and EOUSA then conducted their search accordingly. The ACLU now says it "repeatedly informed DOJ" that it objected to this construction, but it did not do so until after the NSD search had been completed, and it never articulated the ground it now states, that it considered a different scope appropriate for different DOJ components—a view that could hardly be inferred from the face of the FOIA request.

there is no final "FISA-derived guidance," but only drafts that remain non-final and are not "governing" in any sense of the word (including as "working law"). Wiegmann Decl. ¶¶ 6-7.

The ACLU also complains that "NSD Documents describing its notice policy or practice from 2008 to 2013" should have been located. But to the extent a record described a governing policy or practice, it was within the scope of the search. Similarly, the ACLU seeks "NSD Documents that discuss or apply the FAA's notice provisions in practice." But as the government set out before, even case-specific documents that "stated governing policies, procedures, and practices were deemed responsive." Bradley Decl. ¶ 9; (Gov't Mem. 7). Moreover, the ACLU asserts that the government "excluded documents analyzing whether notice is triggered in specific cases," including "[l]egal memoranda analyzing whether the facts of a particular case trigger the FAA's notice requirement." (Pls.' Mem. 24). But that is a misunderstanding: if a case-specific document analyzed the question, it would have been within the scope of the search that was conducted. The ACLU persists in believing it is incredible that NSD did not locate such records, but that merely reflects their disappointment with the search results, not any flaw in the search itself.[11]

---

[11] It is quite surprising that the ACLU would criticize the government for "refus[ing] to process or disclose" certain classified memorandums of law, and demand that "DOJ should be required to" process and disclose them, because before the government's summary judgment motion was filed the ACLU expressly agreed in writing to defer that review. It is also surprising that it would characterize the portions at issue—which consist of two sentences—as "crucial," given that the reason it agreed to defer that review is because those two sentences are duplicative of other information that has been made available. It is improper for the ACLU to attempt to go back on its agreement in this manner. As an aside, its characterization of the portions at issue, describing them as "discussion of how the FAA's notice provision applies to the particular facts of each case" (Pls.' Mem. 24 n.22), is inaccurate, though the government cannot specifically disclose the actual content in these papers.

Because the government does not wish to involve the Court in the exchanges between counsel, and because (with the exception of the ACLU's agreement to defer processing) these discussions occurred in the course of efforts to compromise and therefore should not be considered as evidence of the validity *vel non* of the FOIA claims, Fed. R. Evid. 408(a), the

The ACLU faults the government for interpreting "governing" to mean "binding" or "final" (Pls.' Mem. 22-23), but it is hard to discern what "governing" might mean otherwise. And while it is true that DOJ did not further define "binding" or "final" (Pls.' Mem. 22-23), those words have apparent meaning, and are used in both the statute and the case law without further elaboration. *See* 5 U.S.C. § 552(a)(2)(A); *Sears*, 421 U.S. at 161; *Tigue*, 312 F.3d at 74, 76, 79; *Brennan Center*, 697 F.3d at 203, 204 n.15; *Coastal States*, 617 F.2d at 859-60. To the extent the ACLU attempts to suggest that "working law" is "governing" without being "binding," that contradicts the case law. *See Brennan Center*, 697 F.3d at 203 (rejecting contention that document was "working law" because there was no evidence it was "effectively binding").[12]

Lastly, the ACLU faults the government's search methods, contending that NSD should have consulted with certain litigating attorneys or conducted an electronic search. (Pls.' Mem. 25). But "an agency's search need not be perfect"; it need only be "reasonably calculated to discover the requested documents." *Grand Central*, 166 F.3d at 489. The test of adequacy is "'not whether it actually uncovered every document extant.'" *Id.* (quoting *SafeCard*, 926 F.2d at 1201); *accord Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." (emphases in original)). Additionally, "[t]here is no requirement that an agency search every record system"; only places

---

government has not included the agreements and correspondence in these papers. Nevertheless, if the Court wishes to review them, the government will provide them.

[12] The ACLU cites *Public Citizen*, but nothing there suggests otherwise. Whether it is "formal or informal policy," to be "working law" the record must still be "law," i.e., it must have some governing force within the agency. 598 F.3d at 875 (inquiring if documents are "settled and established policy," "the agency's legal position," or show "finality of the existing policy" (quotation marks omitted)). Consistent with this, as the *Brennan Center* court put it, the records in *Public Citizen* were used as precedent within the agency. 697 F.3d at 201.

"reasonably believed likely to contain responsive documents" need be searched. *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

As set forth in the government's opening memorandum, the searches conducted in this case met these standards. No case requires a particular search method (such as electronic searches, or querying specific people) when the search method that was chosen was reasonable and adequate. DOJ's searches were reasonably crafted to locate responsive records in the places they may reside, and should be upheld.

## Conclusion

Summary judgment should be granted to the government.

Dated:    New York, New York                    Respectfully submitted,
          September 5, 2014

                                                PREET BHARARA
                                                United States Attorney for the
                                                Southern District of New York
                                                Attorney for Defendant

                                      By:    */s/ Benjamin H. Torrance*
                                             BENJAMIN H. TORRANCE
                                             Assistant United States Attorney
                                             86 Chambers Street
                                             New York, New York 10007
                                             Telephone: 212.637.2703
                                             Fax: 212.637.2702
                                             E-mail: benjamin.torrance@usdoj.gov