UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | 13 Civ. 7347 (GHW) |

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Arthur N. Eisenberg (AE-2012)
New York Civil Liberties Union
  Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Patrick Toomey (PT-1452)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... ii

Introduction .................................................................................................................................. 1

I.     The NSD Documents and the FISA-Derived Guidance Contain DOJ's Working Law ..................................................................................................................... 1

II.    The Documents Are Not Privileged ................................................................................. 6

III.   Alternatively, the Court Should Permit Plaintiffs Limited Discovery and Should Review the Documents *In Camera* ..................................................................... 7

IV.   DOJ's Search Was Inadequate ......................................................................................... 9

Conclusion .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Brennan Ctr. for Justice v. DOJ*,
  697 F.3d 184 (2d Cir. 2012) .................................................................................................. 3, 5

*Brown v. City of Detroit*,
  259 F. Supp. 2d 611 (E.D. Mich. 2003) ..................................................................................... 7

*Carney v. DOJ*,
  19 F.3d 807 (2d Cir. 1994) ......................................................................................................... 8

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................................... 4

*Delaney, Migdail & Young, Chartered v. IRS*,
  826 F.2d 124 (D.C. Cir. 1987) ................................................................................................... 7

*Elec. Privacy Info. Ctr. v. DOJ*,
  584 F. Supp. 2d 65 (D.D.C. 2008) ............................................................................................. 6

*Fox News Network v. Dep't of Treasury*,
  678 F. Supp. 2d 162 (S.D.N.Y. 2009) .................................................................................... 4, 5

*Go v. Rockefeller Univ.*,
  280 F.R.D. 165 (S.D.N.Y. 2012) ................................................................................................ 6

*In re Cnty. of Erie*,
  473 F.3d 413 (2d Cir. 2007) ....................................................................................................... 7

*N.Y. Times Co. v. DOJ*,
  756 F.3d 100 (2d Cir. 2014) ................................................................................................... 4, 5

*Nat'l Day Laborer Org. Network v. ICE*,
  811 F. Supp. 2d 713 (S.D.N.Y. 2011) .................................................................................... 2, 4

*Nat'l Day Laborer Org. Network v. ICE*,
  877 F. Supp. 2d 87 (S.D.N.Y. 2012) ........................................................................................ 10

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) .................................................................................................................... 3

*Pub. Citizen, Inc. v. OMB*,
  598 F.3d 865 (D.C. Cir. 2010) ............................................................................................... 2, 3

*Schiller v. NLRB*,
 964 F.2d 1205 (D.C. Cir. 1992) .................................................................................................. 7

*Tax Analysts v. IRS*,
 117 F.3d 607 (D.C. Cir. 1997) .............................................................................................. 3, 4

*Wash. Post Co. v. U.S. Dep't of State*,
 840 F.2d 26 (D.C. Cir. 1988) ..................................................................................................... 8

**Statutes**

50 U.S.C. § 1806(c) .............................................................................................................. 7

# INTRODUCTION

Beginning in July 2013, DOJ put into place a new policy of providing notice of FAA surveillance to criminal defendants. The records the government has withheld in this case describe that policy and constitute DOJ's working law. FOIA thus obliges the government to disclose them. Plaintiffs respectfully request that the Court order DOJ to release the documents that contain its working law; that, in the alternative, the Court permit limited discovery and conduct its own *in camera* review; and, finally, that the Court order DOJ to undertake an adequate search for records responsive to Plaintiffs' request.

## I.  The NSD Documents and the FISA-Derived Guidance Contain DOJ's Working Law

The withheld documents are working law because they contain the reasoning and conclusions that have guided DOJ's provision of notice of FAA surveillance in criminal cases since July 2013. The public record establishes that:

- **Prior to July 2013, DOJ had a policy and practice of withholding notice from criminal defendants**. Beginning with the FAA's passage in 2008, DOJ failed to provide notice of FAA surveillance to any defendant for five years. During this time, NSD lawyers reportedly concluded that they had no duty to provide notice of evidence "derived from" FAA surveillance and they took other steps to avoid giving notice.[1]

- **In the summer of 2013, DOJ reassessed its notice policy**. In May, June, and July 2013, criminal defendants and news reports questioned DOJ's refusal to provide notice in light of the Solicitor General's representations to the Supreme Court in *Clapper v. Amnesty International USA*.[2] Various offices within DOJ prepared "dueling memorandums" addressing the notice issue.[3] On July 17, 2013, DOJ convened a high-level meeting to address DOJ's notice obligations, and the participants there reached certain "conclusions." NSD Vaughn Index. Multiple news outlets later reported that the Solicitor General argued that notice was legally required, and that his arguments eventually "won out."[4]

- **In July 2013, DOJ began acting on its new policy of providing notice of FAA surveillance to criminal defendants**. On July 30, 2013, DOJ informed a district court that it did, in fact, have a duty to provide notice of evidence "derived from" FAA surveillance, and

---

[1] *See* Savage Article I (Toomey Decl., Ex. B); Barnes & Nakashima Article (Toomey Decl., Ex. G).

[2] *See, e.g.*, Liptak Article (Toomey Decl., Ex. A) (describing defendants' efforts to obtain notice).

[3] Savage Article I; *see* Savage Article II (Toomey Decl., Ex. E).

[4] Barnes & Nakashima Article; *see also* Savage Article II; Horwitz Article (Toomey Decl., Ex. D).

it disavowed its earlier position in that case.[5] On October 26, 2013, DOJ notified a defendant for the first time that it intended to use evidence derived from FAA surveillance. *See* Savage Article II. In November 2013, Attorney General Holder stated that a review of criminal cases was underway to identify those in which notice should have been given. *See* Horwitz Article. DOJ subsequently provided notice to four other defendants.

Based on this record, there is no question that DOJ reached a pivotal decision about its notice obligation in July 2013 or soon after. Using almost identical language, DOJ has now told four courts, including this one, that it recently "determined" that notice is required when evidence is "derived from" FAA surveillance.[6] It has told Congress the same thing.[7] This policy decision is obvious, too, in DOJ's actions: its belated delivery of FAA notices to five defendants, as required by law, on the heels of its comprehensive review of criminal cases after July 2013.

DOJ's claim to the contrary—that its decision was not an "ultimate decision," Gov't Opp. 5 n.3—is simply untenable. *See Nat'l Day Laborer Org. Network v. ICE*, 811 F. Supp. 2d 713, 742 (S.D.N.Y. 2011) (criticizing agency for refusing "to acknowledge a shift in policy when it is patently obvious—from public documents and statements—that there has been one").

The reasoning and conclusions that inform this change in policy are set out in the NSD Documents and in DOJ's "FISA-Derived Guidance."[8] These documents contain DOJ's working law. Their status does not depend on how DOJ labels them, but on how they have been used since they were created and whether they reflect the agency's operative view of its legal duties. *See Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874-75 (D.C. Cir. 2010). If DOJ has accepted the conclusions or reasoning offered in these documents, they are working law.

---

[5] *See* Gov't Resp. 3, *United States v. Qazi*, No. 12-cr-60298 (S.D. Fla. July 30, 2013) (ECF No. 131).

[6] *See, e.g.*, Gov't Br. 3-5; *Mohamud* Disc. Br. 6-9; Gov't Mem. 25-27, *United States v. Hasbajrami*, No. 13-cv-06852 (E.D.N.Y. Aug. 8, 2014) (ECF No. 25); Gov't Unclassified Mem. 9 n.2, *United States v. Muhtorov*, No. 12-cr-00033 (D. Colo. May 9, 2014) (Toomey Decl., Ex. I).

[7] *See, e.g.*, Additional Prehearing Questions for John Carlin Upon His Nomination to be Ass't Att'y Gen. for Nat'l Sec., Dep't of Justice at 9-10, http://1.usa.gov/1mSQqdj.

[8] DOJ has refused to identify its FISA-Derived Guidance as responsive to the Request. The document is mentioned in NSD's Vaughn Index and is acknowledged in the new Wiegmann Declaration. It plainly falls within the scope of the Request. *See* Pl. Br. 22-23.

DOJ misstates the requirements of the working law doctrine in order to avoid disclosure. It tries to whittle down working law to only two kinds of documents: those that have been publicly and expressly adopted by the agency, and those that the agency chooses to label "binding." *See* Gov't Opp. 6. Though formal adoption is sufficient to establish the existence of an operative policy, it is by no means necessary to find working law.[9] Nor does the doctrine require that a document be officially characterized as "binding" policy. *See Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (rejecting agency's claim that documents must be "formally binding" to be working law); *Pub. Citizen*, 598 F.3d at 875. DOJ's own cases show that documents containing "effective" or "informal" policy qualify as working law. Gov't Opp. 2-3, 6. If DOJ were correct that its label simply controlled, there would be no need for the type of fact-specific inquiry the courts undertook in *Brennan* or *Coastal States*. *See* Pl. Br. 11-13, 19-22.

In fact, courts have given the working law doctrine broad scope when determining whether documents reflect an agency's "effective" law or policy. For example, contrary to DOJ's claim, a once-deliberative document can "become" working law if it contains *either* "[t]he reasons for a decision made by an agency, or a policy actually adopted.'" *See Brennan*, 697 F.3d at 196 (quoting *Sears*, 421 U.S. at 153); *Pub. Citizen*, 598 F.3d at 874-75 (observing that a document can lose its deliberative status "if it is adopted, formally or *informally*, as the agency position on an issue" (emphasis added)). Similarly, a document becomes working law if it reflects the rules an agency uses in determining the rights of individuals—here, the rights of criminal defendants to notice. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854,

---

[9] Plaintiffs have not waived any claim to adoption. As *Brennan* makes clear, working law and adoption are simply "two paths" to the same result. *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 201 (2d Cir. 2012). If DOJ has expressly "adopted" any of the NSD Documents behind closed doors, that plainly requires their disclosure as DOJ's working law. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975) (adoption need not be public); *Brennan*, 697 F.3d at 200 n.12. For instance, DOJ has said that one of the NSD Documents expressly references another, and that may reflect adoption. Toomey Decl. ¶ 12. Plaintiffs' further adoption arguments depend on the discovery they have requested. Pl. Br. 19-22.

868 (D.C. Cir. 1980). Further, a document contains working law if agency personnel rely on it for guidance in carrying out their functions. *See Tax Analysts*, 117 F.3d at 617. And a "draft" or "non-binding" document contains working law—rather than deliberative material—when it reflects existing, operative policies despite its label. *See, e.g.*, *Fox News Network v. Dep't of Treasury*, 678 F. Supp. 2d 162, 168 (S.D.N.Y. 2009); *cf. N.Y. Times Co. v. DOJ*, 756 F.3d 100, 110 n.9 (2d Cir. 2014).[10]

In short, the question is not about a given document's *label*, but whether its reasoning or conclusions have become the agency's operative view of its legal duties. *See Sears*, 421 U.S at 152-53 ("These reasons, if expressed within the agency, constitute the 'working law' of the agency"); *id.* at 153 (calling "for disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy"). Properly understood, the working law doctrine ensures that the public has access to records containing the policies and standards an agency applies to the cases before it, whatever labels the agency would use. It keeps an agency from developing a body of "'secret law,' . . . hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States,* 617 F.2d at 867.

Here, there is no question that DOJ's new notice policy is a final and controlling one. *See supra*, 1-2; Pl. Br. 2-3, 8-11. DOJ cannot avoid disclosure of its working law simply by characterizing its deliberative process as a never-ending one, even while the agency implements a change in policy. The question, then, is whether DOJ's current policy—the one it has applied since July 2013—appears in any existing record, such as the OSG Memo, the Post-Meeting Memo, or the FISA-Derived Guidance. Plaintiffs have shown that it does. Every available report indicates that the Solicitor General argued that defendants were entitled to notice, and that DOJ

---

[10] For instance, courts have repeatedly held that emails must be disclosed when they describe existing policies, even though few agencies would call emails "formal" or "binding" documents. *See, e.g.*, *Nat'l Day Laborer*, 811 F. Supp. 2d at 741-43.

ultimately embraced his reasoning and conclusions. *See, e.g.*, Savage Article II ("Ultimately, [the Solicitor General's] view prevailed and the National Security Division changed its practice going forward.").[11] Thus, the OSG Memo must be disclosed as working law. *See* Pl. Br. 10-11. Likewise, if certain "conclusions" are endorsed in the Post-Meeting Memo, as NSD's Vaughn Index suggests, that too must be disclosed as part of DOJ's working law. *See id.* at 9-10.

Although it is not listed on NSD's Vaughn Index, DOJ's FISA-Derived Guidance also contains its working law and should be disclosed. DOJ set out to finalize this guidance 13 months ago, in July 2013. *See* NSD Vaughn Index. Since then, it has engaged in a comprehensive review of criminal cases, has provided FAA notices to five defendants, and has announced its policy change in multiple court filings. If the FISA-Derived Guidance reflects the reasoning or conclusions in the OSG Memo or in DOJ's public statements—*i.e.*, its existing policy—then it too must be released as working law. By the same token, if this guidance reflects the standards that DOJ attorneys applied when they conducted the agency's review of criminal cases, it must be disclosed. DOJ would have the Court believe that it conducted an entirely standardless review, while it continues to assess its legal obligations to this day, but that is not remotely plausible. Under these circumstances, the fact that DOJ persists in calling this document a "draft," yet provides no other details, does not support withholding. *See Fox News*, 678 F. Supp. 2d at 168 ("Treasury also appears to take it as an article of faith that a document labeled 'Draft' is automatically protected by the deliberative process privilege. That is not so.").

DOJ has failed to show that the documents are exempt. Whether they are working law depends on how DOJ used the documents, or relied on their reasoning and conclusions, after July 2013. DOJ *still* does not offer any information, new or old, that goes to these questions. It does

---

[11] Courts regularly rely on news reports as evidence when assessing working law, adoption, and waiver in the FOIA context. *See, e.g.*, *N.Y. Times Co.*, 756 F.3d at 118; *Brennan*, 697 F.3d at 192 n.6.

not explain, for instance, how a memo prepared by the Office of the Solicitor General—which DOJ calls "predecisional" and "deliberative"—ended up in a prosecutor's office in Oregon. Of course, DOJ could readily describe for the Court exactly how this came to pass; instead, it offers only unsworn hypotheticals.[12] Similarly, the assertions in the Wiegmann Declaration are conclusions of law, not statements of fact. *See id.* ¶ 7. The public record establishes that these documents contain working law. DOJ has not met its burden of showing that they are exempt.

## II. The Documents Are Not Privileged

If the documents contain DOJ's working law, they must be disclosed regardless of any asserted privilege. *See* Pl. Br. 7-8. But even working law aside, the documents are not privileged. Despite two chances, DOJ has failed to provide anything approaching the detailed, factual showing required to carry its burden under FOIA. *See id.* at 11-13.

The documents are not protected by the attorney-client privilege because they are internal DOJ memos addressing a question of agency policy—not client communications rendering legal advice. On DOJ's theory, virtually every document prepared by one DOJ lawyer for another would be a "client communication" with the United States. DOJ disavows this consequence, and yet it offers no limiting principle. *See* Gov't Opp. 11 n.7. Here, DOJ has failed to "indicate what agency or executive branch entity is the client." *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 79-80 (D.D.C. 2008) (the privilege "does not exempt a document from disclosure simply because the communication involves the government's counsel"). In addition, DOJ has failed to show that the documents contain "confidential client information," rather than pure policy or legal analysis. *See Go v. Rockefeller Univ.*, 280 F.R.D. 165, 173 (S.D.N.Y. 2012). Finally, DOJ

---

[12] DOJ hypothesizes that if the OSG Memo were working law, it would have been found in Colorado as well. Gov't Opp. 8. But there are obvious reasons that would not have been the case. For one, the U.S. Attorney's Office in Oregon was the first to have to defend DOJ's failure to provide notice. Other offices have simply copied the account put forward in Oregon, almost verbatim. *See* note 6, *supra*. That uniformity is unsurprising because it is NSD that coordinates these prosecutions.

argues that it has met *County of Erie*'s "predominant purpose" requirement because policy considerations are not severable from legal advice, but that is only true "*[s]o long as* the predominant purpose of the communication is legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) (emphasis added). DOJ has not made that initial showing. *See* Pl. Br. 15.

The documents are not work product because, as DOJ admits, they "are not tied to a specific case or claim." Gov't Opp. 14; *see* Pl. Br. 15-18. They are, as DOJ makes clear, documents intended to resolve an overarching question of DOJ policy in criminal cases—its duty to give notice to defendants. That duty exists independent of any claim by a defendant. 50 U.S.C. § 1806(c). For this reason, the NSD Documents do not qualify for work-product protection: they are not documents prepared for adversarial litigation. DOJ relies on the standard applied in *Schiller* and *Delaney*; but even those cases dealt with specific litigation strategies, such as how to prepare pleadings and build defenses. *See Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992); *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987).

Finally, any privilege has been waived through disclosure to the press. *See Brown v. City of Detroit*, 259 F. Supp. 2d 611, 623-24 (E.D. Mich. 2003). The contents of the NSD Documents have been described in detail to multiple reporters by multiple administration officials. *See* Pl. Br. 15. The agency cannot leak material to the press to defend its credibility, while officially averring that the documents remain confidential. *See* Bradley Decl. ¶ 22. DOJ's cases make clear that, at a minimum, the question of waiver is one of "fairness" and specific facts, *see* Gov't Opp. 7, yet DOJ's position lacks both. Its bare assertion that the documents have been held in strict confidence is directly contradicted by the public's ability to read about them in the newspaper.

### III.  Alternatively, the Court Should Permit Plaintiffs Limited Discovery and Should Review the Documents *In Camera*

If the Court concludes that summary judgment is not warranted, Plaintiffs are entitled to

discovery because they have put forward compelling evidence—and far more than a *prima facie* case—that the documents contain DOJ's working law. The Court should permit Plaintiffs the limited discovery they have requested and, with the benefit of that information, should review the documents *in camera*. *See* Pl. Br. 19-22.

Plaintiffs have put specific facts into the record concerning the status of the disputed documents, as well as evidence that plainly contradicts DOJ's assertions. *See* Section I; Pl. Br. 2-3, 8-11, 20-21. Among other things, DOJ's claim that it had not "considered" the issue of FAA notice prior to 2013 remains inconsistent with the evidence. *See id*. Its suggestion that the issue raised in *United States v. Khan* in 2011 was different than the FAA notice issue is simply wrong. *See* Gov't Br. 17. Even the district court in *Khan* understood the defendant's motion to seek notice of DOJ's reliance on FAA surveillance, and it said as much in its initial order.[13] Media reports and court filings show that NSD had simply concluded that notice was not required.[14]

DOJ criticizes the record that Plaintiffs have placed before the Court, yet it has refused to provide any of the additional facts in its sole possession. Gov't Opp. 18. In doing so, DOJ seeks to avoid the two obvious ways of resolving the status of these documents: (1) through discovery into how they were created, used, and distributed; and (2) through *in camera* review of the

---

[13] Order at 5, *United States v. Khan*, No. 11-cr-20331 (S.D. Fla. Feb. 28, 2012) (ECF No. 278) (stating that Khan seeks to know "whether the electronic surveillance described in the government's notice was conducted pursuant to a traditional FISA warrant or an FAA surveillance order," and whether the government's FISA application was based on information "derived from" FAA surveillance). That is the same issue DOJ now says it "considered" for the first time in 2013.

[14] *See, e.g.*, Savage Article I. DOJ suggests that Plaintiffs improperly cited to *Wash. Post Co. v. U.S. Dep't of State*, 840 F.2d 26, 28 (D.C. Cir. 1988), to show that news reports will support a request for discovery. Gov't Opp. 16. But it was the Second Circuit itself that relied on that decision, observing in *Carney* that press accounts are "tangible evidence." *Carney v. DOJ*, 19 F.3d 807, 812-13 (2d Cir. 1994). *Carney* remains the law of this Circuit—for good reason. News reports provide a crucial measure of the government's candor and completeness. Here, those accounts—which show that NSD attorneys had for years concluded that notice was not required—are confirmed by DOJ's filings in multiple criminal cases. *See, e.g.*, Gov't Mot., *United States v. Qazi*, No. 12-cr-60298 (S.D. Fla. May 9, 2013) (ECF No. 80); Gov't Resp., *United States v. Daoud*, No. 12-cr-00723 (N.D. Ill. June 12, 2013) (ECF No. 46).

documents to determine whether they reflect the effective law of the agency, especially by comparing them against DOJ's public statements about its notice obligations. *See* Pl. Br. 19; *Mohamud* Disc. Br. 6-9. As it is, DOJ's paltry submissions do not carry its burden.[15]

Finally, the Court should not grant DOJ's request for a general remand to supplement the record. Gov't Opp. 18. Having had two opportunities to submit only the facts of its choosing, DOJ is not entitled to a third bite at the apple.

## IV.   DOJ's Search Was Inadequate

Plaintiffs challenge the adequacy of DOJ's search because DOJ has artificially limited the Request in multiple ways to avoid disclosing plainly responsive documents—including documents that contain DOJ's working law for the first five years of the FAA's existence. In doing so, DOJ has failed to construe Plaintiffs' request liberally, as FOIA requires.

In particular, DOJ has used the labels "binding" and "final" to carve out documents that contain NSD's interpretation of its notice obligations from 2008 to 2013.[16] The five documents listed on NSD's Vaughn Index all date to a ten-day period in July 2013. They are the only documents DOJ identified in response to the Request. Yet multiple newspapers have reported, based on statements by officials, that prior to July 2013, NSD attorneys had concluded that notice was not required when evidence was derived from FAA surveillance. *See* Savage Article I; Barnes & Nakashima Article. These news accounts are corroborated by DOJ's filings in *Khan*,

---

[15] Among other things, the Court should not accept DOJ's belated, conclusory statement that nothing in the withheld documents is segregable. Gov't Opp. 14-15. After reviewing the documents, the Court should require DOJ to segregate and release any non-exempt material. Pl. Br. 18-19.

[16] DOJ implies that it transparently informed Plaintiffs how NSD intended to process the Request, *see* Gov't Opp. 19 n.10, but the opposite is true. NSD did not tell Plaintiffs about the narrow limitations it applied until February 4, 2014, after it had finished its search. Toomey Decl. ¶ 17. Plaintiffs objected that same day, and on numerous subsequent occasions. *Id*. ¶ 18. NSD did not point to the OIP letter as a purported justification until April 2014, two months after its search was complete. Suppl. Toomey Decl. ¶ 5. In any event, NSD cannot use another component's response to retroactively justify its own; to do so would require FOIA requesters to object to *every* narrowing proposal by one component, for fear that another would treat it as the kind of waiver NSD asserts here.

*Qazi*, and *Daoud*, where it denied any obligation to give notice of FAA-derived evidence.[17] DOJ apparently believes that NSD's interpretation was not "binding" during this period—even though this interpretation controlled the provision of notice for five years. As a result, DOJ has excluded these documents from the Request altogether. But DOJ's labels are not determinative. By its terms, the Request encompasses all legal memoranda "addressing or interpreting the FAA's notice provision" and all records reflecting "practices" related to the provision of notice. *See* Pl. Br. 22-24. DOJ should be required to search for any document—case-specific or otherwise—that contains NSD's "narrow understanding" of the FAA's notice provision from 2008 to 2013.[18]

Finally, DOJ's search methods were plainly flawed. Plaintiffs were able to identify more documents than DOJ produced *in total* (three). *See* Pl. Br. 25. That is not mere imperfection. NSD failed to conduct a search reasonably designed to identify responsive documents. *See Nat'l Day Laborer Org. Network v. ICE*, 877 F. Supp. 2d 87, 102 (S.D.N.Y. 2012). It did not search the files of NSD attorneys who have handled FAA cases; nor did it search the database that NSD maintains to track these very types of records. In short, DOJ's search was not reasonable.

## CONCLUSION

For these reasons, Plaintiffs' motion should be granted and DOJ's motion denied.

---

[17] *See* Gov't Resp., *United States v. Khan*, No. 11-cr-20331 (S.D. Fla. Mar. 14, 2012) (ECF No. 284); *see also* note 14, *supra* (identifying filings in *Qazi* and *Daoud*).

[18] For the first time, DOJ claims that its search encompassed "case-specific document[s]" analyzing whether the facts of a particular case trigger the FAA's notice requirement. Gov't Opp. 20. But that is contradicted by the Bradley Declaration—and by the results of NSD's search, which include no such records. *See* Bradley Decl. ¶ 9; Pl. Br. 24-25. DOJ deemed responsive *only* those portions of records stating "a general rule or guideline"—not the application of law to facts. The two legal memoranda disclosed by EOUSA illustrate this artificial limitation. *See id.* at 24 n.22; Toomey Decl. ¶ 29; EOUSA Letter dated May 30, 2014 (Suppl. Toomey Decl., Ex A). Plaintiffs expressly reserved their right to seek fact-specific analysis in these two documents, while agreeing to defer processing of the duplicative sentences DOJ references. *See* Gov't Opp. 22 n.11. DOJ either misunderstands Plaintiffs' opening brief or mischaracterizes the parties' agreement.

| | |
|---|---|
| Dated:  September 19, 2014<br>        New York, New York | Respectfully submitted,<br><br> /s/ Patrick Toomey<br><br>Patrick Toomey (PT-1452)<br>Jameel Jaffer (JJ-4653)<br>Alex Abdo (AA-0527)<br>American Civil Liberties Union<br>   Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Phone: (212) 549-2500<br>Fax: (212) 549-2654<br>ptoomey@aclu.org<br><br>Arthur N. Eisenberg (AE-2012)<br>New York Civil Liberties Union<br>   Foundation<br>125 Broad Street, 19th Floor<br>New York, NY 10004<br>Phone: (212) 607-3300<br>Fax: (212) 607-3318<br>aeisenberg@nyclu.org<br><br>*Counsel for Plaintiffs* |