

October 8, 2014

<u>By ECF</u>
Honorable Gregory H. Woods
United States District Court for the
   Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

      Re:   *American Civil Liberties Union v. DOJ*
           Case No. 13 Civ. 7347 (GHW)

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

**OFFICERS AND DIRECTORS**
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

RICHARD ZACKS
*TREASURER*

Dear Judge Woods:

    Plaintiffs write to advise the Court of two decisions issued in the past week that bear on this FOIA case. On October 2, 2014, Judge Gleeson in the Eastern District of New York released an opinion in *United States v. Hasbajrami*, No. 11-cr-00623 (E.D.N.Y.), which addresses the government's now-discontinued policy of withholding notice of FISA Amendments Act ("FAA") surveillance from criminal defendants. *See Hasbajrami* slip op. at 2, 6–8. On October 6, 2014, Judge Pauley in the Southern District of New York released an opinion in *ACLU v. FBI*, No. 11-cv-07562 (S.D.N.Y.), which found, in another FOIA case related to NSA surveillance, that the government was not entitled to deference because it put forward "incorrect and inconsistent" assertions in order to avoid its statutory disclosure obligations. *See ACLU* slip op. at 7–11. Copies of the two opinions are attached to this letter.

    First, Judge Gleeson's decision in *Hasbajrami* finds—consistent with what Plaintiffs have contended in this case—that DOJ initially had a policy that denied criminal defendants notice of FAA surveillance, but that the agency reversed its policy when it began providing notice to Hasbajrami and other defendants beginning in 2013. In particular, the district court permitted Hasbajrami to withdraw his guilty plea "because of a DOJ policy that transcended [his] case"—the now-discontinued 'no notice' policy. *Hasbajrami* slip op. at 6; *see id.* at 7 (observing that DOJ's "since-revised nondisclosure policy" prevented courts from considering the legality of the NSA's warrantless wiretapping program). Rejecting the notion that DOJ's failure to provide notice was inadvertent or "idiosyncratic," the district court granted Hasbajrami's motion to withdraw his guilty plea precisely because DOJ's failure to give notice spanned a number of criminal cases over five years following the FAA's

enactment, despite an express statutory notice requirement, and thereby prevented any meaningful judicial review of the FAA. *Id.* at 7; *see also* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, http://goo.gl/P5A4cO (reporting that attorneys in the National Security Division long held a "narrow understanding" of DOJ's notice obligations and for five years took steps to avoid disclosure).

Second, Judge Pauley's opinion in *ACLU v. FBI* reinforces the view that the government is not entitled to deference when it has put forward inaccurate or inconsistent assertions in defending its withholding decisions. Although the opinion addresses a FOIA request for documents related to a different NSA surveillance authority, it bears on the degree of deference the government's assertions should be accorded in this case. After recounting in detail a series of "incorrect and inconsistent arguments" advanced by the government concerning its failure to disclose records relating to its surveillance practices, the district court found that "the Government acted without the candor this Court expects from it." *ACLU* slip op. at 10; *see id.* at 7–11 (describing inaccuracies). Those inconsistencies shook the district court's "confidence in the Government's submissions," made judicial deference to the agencies' affidavits inappropriate, and ultimately prompted the court to undertake its own review of a number of the documents at issue. *Id.* at 11 ("The deference the Government ordinarily receives in FOIA cases is rooted largely in the courts' trust that the Government will comply with its statutory obligations. That compliance is not apparent here.").

As explained in Plaintiffs' briefs at length, the government makes the same type of factually inconsistent and implausible claims in this case. *See* Pl. Br. 8–11, 20–21; Pl. Reply 1–2, 7–8, 9–10. For these reasons, the government's assertions cannot be credited, and DOJ should be required to disclose the disputed documents and to conduct an adequate search. At the very least, Plaintiffs should be permitted to conduct limited discovery into the status of the documents being withheld, and DOJ should be required to submit those documents to the Court for *in camera* review.

Respectfully submitted,

/s/ Patrick Toomey
_____

Arthur Eisenberg

New York Civil Liberties Union
   Foundation

125 Broad Street, 19th Floor

New York, NY 10004

Phone: 212.607.3300

Fax: 212.607.3318

Patrick Toomey

Alex Abdo

Jameel Jaffer

American Civil Liberties Union
   Foundation

125 Broad Street, 18th Floor

New York, NY 10004

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

aeisenberg@nyclu.org                          Phone: 212.549.2500
                                              Fax: 212.549.2654
                                              ptoomey@aclu.org

                                              *Counsel for Plaintiffs*

Encls.

cc:    Benjamin H. Torrance (by ECF)
       *Counsel for Defendant*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

AGRON HASBAJRAMI,

                              Petitioner,

                    - versus -                          13-CV-6852

UNITED STATES OF AMERICA,

                                   Respondent.

---

UNITED STATES OF AMERICA                         ORDER

                    - versus -                          11-CR-623

AGRON HASBAJRAMI,

                                    Defendant.

---

JOHN GLEESON, United States District Judge:

On April 12, 2012, Agron Hasbajrami pled guilty in his criminal case, No. 11-cr-623, to a single count of providing material support to terrorists.  *See* DE 32.  In January of 2013, I imposed a 15-year sentence, the statutory maximum.  *See* DE 45.  After sentence was imposed, I dismissed three other counts on the government's motion.  *See* DE 44.

In July of 2013, it appears that Hasbajrami first attempted to file a pro se collateral attack under 28 U.S.C. § 2255.  For reasons that are not clear, the paper filing never reached this Court; after some back and forth, Hasbajrami's § 2255 proceeding was instituted in December of 2013.  Hasbajrami's pro se filing argued only that the statute under which he was convicted is unconstitutionally vague.  Before that claim could be fully briefed and argued, however, the government disclosed new information that has changed the landscape of this case.

On September 13, 2011 – before Hasbajrami pled guilty – the government notified Hasbajrami that its evidence included "information obtained or derived from electronic surveillance and physical searches conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ('FISA'), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829." DE 9 ("Initial Notice"). Key to the issue before me now is the government's subsequent supplemental disclosure, via a February 24, 2014 letter, of additional information about the evidence it would have used in Hasbajrami's case had it proceeded to trial. *See* Supplemental Notice, DE 65 in No. 11-cr-623. The Supplemental Notice revealed for the first time that the government's evidence included "information derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. § 1881a."

Authority under § 1881a, also known as "Title VII" or "Section 702," was conferred on the government by the FISA Amendments Act of 2008 ("FAA"). In broad terms, those amendments permit the government to gather an array of information from electronic communications made by people located outside the United States who are neither citizens nor legal permanent residents of the United States. *See* 50 U.S.C. §§ 1881a (grant of authority), 1801(i) (definition of "United States person"). In public debate, FAA intelligence has been described as "warrantless wiretap" information, since, in contrast to traditional FISA authority, the FAA does not require an individual court authorization (that is, a warrant) for each data collection. *See, e.g.,* Charlie Savage, "Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence," N.Y. Times, October 26, 2013.

Following the Supplemental Notice (and before taking any action on Hasbajrami's pro se § 2255 petition), I reappointed counsel for Hasbajrami. *See* Unnumbered Order, March 13, 2014, in No. 13-cv-6852. Hasbajrami's attorneys sought additional

information from the government about the FAA wiretaps, but the parties could not mutually

agree on whether any specific material should be turned over.  After failing to obtain any

material on consent, Hasbajrami moved to compel.  I held argument on the motion on September

12, 2014, and denied Hasbajrami's motion on the record.

       In discussing Hasbajrami's discovery motion, however, it became clear that his

2012 guilty plea presents a significant barrier to many of the arguments he might present to

challenge his conviction.  Therefore I directed Hasbajrami to file a letter informing the Court

whether (as suggested by his counsel at argument) he wishes to withdraw his guilty plea in light

of the Supplemental Notice and any other developments in the case.  By letter from counsel

dated September 20, 2014, Hasbajrami confirmed that, contrary to his attorneys' advice, he

wishes to withdraw his plea.  *See* DE 84 in No. 11-cr-623.

       Hasbajrami's guilty plea presents a serious obstacle to his ability to collaterally

attack his conviction:

> A plea of guilty and the ensuing conviction comprehend all of the
> factual and legal elements necessary to sustain a binding, final
> judgment of guilt and a lawful sentence. Accordingly, when the
> judgment of conviction upon a guilty plea has become final and the
> offender seeks to reopen the proceeding, the inquiry is ordinarily
> confined to whether the underlying plea was both counseled and
> voluntary. If the answer is in the affirmative then the conviction
> and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  In *Broce* and other cases, the Supreme Court

has made clear that a guilty plea generally extinguishes claims of any "antecedent constitutional

violations."  *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

       There are two well-recognized exceptions to the general waiver principle.  First,

as outlined in the excerpt from *Broce*, the defendant may argue that the plea was not voluntary

(for example, obtained by threat) or that the defendant did not know the consequences of

pleading guilty (for example, the defendant was misled about the possible punishments he would face).  But the bar is high:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it."  *United States v. Ruiz*, 536 U.S. 622, 628-30 (2002) (emphasis in original).  Thus, courts will usually hold enforceable a criminal defendant's waiver of his right to additional disclosures by the government,[1] as long as the defendant understands prior to his waiver the sorts of material he would generally be entitled to if the case went to trial.  *See Ruiz*, 536 U.S. at 629-33 (government was not required to turn over potential impeachment material to defendant prior to guilty plea).

Second, in rare cases, a conviction may be collaterally attacked notwithstanding a guilty plea where "on the face of the record the court had no power to enter the conviction or impose the sentence."  *Broce*, 488 U.S. at 569.  The most notable recent examples include criminal defendants who pled guilty to a violation of 18 U.S.C. § 924(c) based on a reading of the law later held to be erroneous in *Bailey v. United States*, 516 U.S. 137, 144 (1995).  Later, some petitioners whose offense conduct appeared not to violate the statute (as construed by *Bailey*) were permitted to withdraw their pleas on the theory that they simply had not committed a criminal act.  *See generally Bousley v. United States*, 523 U.S. 614 (1998).  Perhaps Hasbajrami's pro se argument (that the statute under which he was convicted is unconstitutionally vague) could be thought to fall into this category, but here too he would face great difficulty.  *Cf. United States v. Yousef*, 750 F.3d 254, 260 (2d Cir. 2014) (holding that the defendant's plea agreement waived a challenge to extraterritorial application of the material support statute).

---

[1]        Hasbajrami waived additional disclosures in this case.  *See* Final Plea Agreement ¶ 4.

The parties also appear to agree on a third exception: "in extraordinary circumstances where the defendant has been induced to plead guilty by egregious misrepresentations or other serious misconduct, a court may find that the defendant was deprived of his ability to plead guilty voluntarily." Govt. Br. 21-22, DE 25 in No. 13-cv-6852 (citing *Bousley*). This theory derives from a reading of the Supreme Court's opinion in *Brady v. United States*, 397 U.S. 742 (1970), where the Court wrote that a knowing and voluntary guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (*en banc*), rev'd on confession of error on other grounds, 356 U.S. 26 (1958)). Recent applications of this exception include *United States v. Fisher*, 711 F.3d 460, 465-66 (4th Cir. 2013) and *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006). Both *Fisher* and *Ferrara* involved egregious governmental conduct: in *Fisher*, a DEA agent lied about the source of information used to obtain a warrant as part of a larger pattern of self-enriching criminal activity, *see* 711 F.3d at 463; and in *Ferrara*, members of the prosecution knowingly withheld and then manipulated evidence that the defendant had not ordered a murder he pled guilty to committing, *see* 456 F.3d at 281-86. In independently researching this question, I have not found any Second Circuit decisions citing either *Fisher* or *Ferrara* with approval, nor any other recent Second Circuit case with such an expansive interpretation of the relevant language from *Brady v. United States*. Indeed, I am not convinced that *Ferrara*, and especially *Fisher*, were correctly decided, or that the government is correct to concede that *Brady v. United States* should be read so broadly. But I defer to the able prosecutors arguing the government's case and decide the

motion on the terms on which it has been presented – which does not require me to address the legal merits of the third exception.

Rather, I will permit Hasbajrami to withdraw his plea of guilty because I conclude that he was not sufficiently informed about the facts.  Under the precise circumstances presented here, and because of a DOJ policy that transcended this case, Hasbajrami could not have made an intelligent decision about whether to plead guilty:  When the government provided FISA notice without FAA notice, Hasbajrami was misled about an important aspect of his case.

The government's Initial Notice informed Hasbajrami that the prosecution's evidence included material obtained through FISA-authorized wiretaps.  This notice was made pursuant to FISA's notice provision, which states in full as follows:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c).  Notably, it is not clear from this section exactly *when* the government must provide notice (though it must be "prior to" the proceeding or the use of the information).  That uncertainty matters a great deal in our current federal criminal environment, since the vast majority of defendants plead guilty, and § 1806(c) does not clearly state whether the government must provide FISA notice before a guilty plea.  But under the facts presented here, I need not decide when the government's legal obligation to provide notice (whether under § 1806(c) itself, or some other legal authority, such as due process) attaches – whether, for example, the

6

government must as a matter of law *always* provide FISA notice before a defendant pleads guilty. That is because, whatever the legal requirement, the government actually provided the FISA notice in this case before Hasbajrami pled guilty. And the FAA expressly incorporates the exact same FISA notice requirement: it states that "[i]nformation acquired from an acquisition conducted under section 1881a of this title shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I for purposes of section 1806 of this title . . . ." 50 U.S.C. § 1881e(a).

Since FISA and the FAA are governed by precisely the same notice requirement, the government's provision of FISA notice without FAA notice gave the overwhelming – and false – impression that no FAA-obtained information figured in the government's case.

The issue now is whether that misimpression forms a sufficient basis for Hasbajrami to withdraw his plea. Though it is a close question (as the government itself described it at oral argument), I conclude that Hasbajrami should be permitted to withdraw his plea.

First, at oral argument, Hasbajrami's counsel represented that, prior to his decision to plead guilty, Hasbajrami had specifically asked them about whether warrantless wiretaps had played a role in his case. After they informed him that such wiretaps were not part of the evidence, he was more willing to plead guilty. Thus, Hasbajrami seems to have been misled about a fact he considered important in deciding how to plead.

Second, his interest is not simply idiosyncratic. Warrantless wiretapping has been controversial, and due in part to the since-revised nondisclosure policy that operated in this very case, there have been few rulings on the practice's legality. I emphasize that I express no view whatsoever on the legal merits of a constitutional challenge to the FISA amendments. But at a

7

minimum, it is the kind of argument that a criminal defense attorney would want to make in this sort of case.

The government's misleading pre-plea notice in this case prevented Hasbajrami from knowing about the availability of this legal argument.  Hasbajrami could hardly have been expected to file a motion attacking the FAA without having any factual basis to support a claim that warrantless wiretapping had played a role in his case.  Indeed, the compelling inference from the notice he received was that surveillance pursuant to the FISA Amendments had *not* occurred.

This highlights a critical point:  Hasbajrami *could not* have challenged the FAA without government notice; the argument's availability depended on *facts* exclusively under the government's control.  In the course of pretrial proceedings, the government is not required to advise defendants about potential legal challenges they might make – the prosecutor need not ask a defendant prior to plea if he has considered whether the criminal statute under which he is charged exceeds Congress's authority under the Commerce Clause, for example.  But here, the legal argument Hasbajrami might have made was predicated on a fact that he could not have known without government disclosure.

Third, even if Hasbajrami cannot make a facial challenge to the FAA, it is also possible that the revelation of the role FAA material played in the government's investigation will lead to new fact-specific challenges to the evidence that the government would have used in this case.  Hasbajrami might seek to suppress the FISA-obtained evidence not because the FAA is unconstitutional in general, but because of some other infirmity in its application to this particular case.  I am in no position to articulate, let alone prejudge the merits of, such a challenge.  But this is another reason why the belated Supplemental Notice should result in an order permitting Hasbajrami to withdraw his plea.

For these reasons, Hasbajrami's § 2255 petition, as modified by his request for a vacatur of his sentence and guilty plea, is granted,[2] and No. 13-cv-6852 is closed.[3]  The criminal case, No. 11-cr-623, is reopened, and a status conference will be held on Wednesday, October 15, 2014 to discuss the next steps in that case.

So ordered.

John Gleeson, U.S.D.J.

Dated:  October 2, 2014
       Brooklyn, New York

---

[2]        As should be clear, I do not rule on the merits of Hasbajrami's pro se challenge to the constitutionality of the material support statute; that argument is mooted by the successful withdrawal of his guilty plea.

[3]        I ordered the parties to file their papers in both the criminal case and the collateral attack, but it is clear that at this stage, Hasbajrami may not withdraw his plea based on a motion within the criminal case.  *See* Fed. R. Crim. P 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/6/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                    :

AMERICAN CIVIL LIBERTIES                 11cv7562
UNION, *et ano.*,                   :

           Plaintiffs,      :      MEMORANDUM & ORDER

       -against-            :

FEDERAL BUREAU OF                :
INVESTIGATION, *et ano.*,            :

           Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs American Civil Liberties Union and American Civil Liberties Union

Foundation (together, "ACLU"), filed this Freedom of Information Act action seeking

documents relating to the Government's use of section 215 of the USA PATRIOT Act. After the

ACLU filed this case, an unprecedented national security leak led to widespread publication of

classified documents concerning section 215 and reshaped this litigation. Both parties move for

summary judgment on the documents the Government has withheld. For the following reasons,

the Government's motion is granted in part, and the ACLU's motion is denied in part. The

Government is directed to submit documents to this Court, and the remainder of the motions will

be decided following in camera inspection.

## BACKGROUND

        After the September 11th attacks, Congress amended the Foreign Intelligence

Surveillance Act to expand the Government's authority to investigate potential terror threats.

Specifically, section 215 of the USA PATRIOT Act authorized judges of the Foreign

Intelligence Surveillance Court (FISC) to order the "production of any tangible things (including books, records, papers, documents, and other items)" if certain statutory requirements are met. See Pub. L. No. 107-56, 115 Stat. 272 (2001) (codified at 50 U.S.C. § 1861).

In May 2011, the ACLU submitted a FOIA request to four agencies within the Department of Justice—the National Security Division, the Office of Information Policy, the Office of Legal Counsel, and the FBI—seeking "records concerning the Government's interpretation or use of Section 215." Compl. ¶¶ 22, 28. In August 2011, the Government responded to the ACLU's request, releasing three documents in full and withholding others. Decl. of Jennifer L. Hudson ¶ 11 (ECF No. 87).

In October 2011, the ACLU filed this action challenging the Government's response. The ACLU's FOIA request overlapped with a FOIA request by The New York Times that sought a report to Congress from the Attorney General and Director of National Intelligence concerning the use of section 215. See N.Y. Times Co. v. U.S. Dep't of Justice, 11 Civ. 6990 (WHP) (S.D.N.Y.). The ACLU, The New York Times, and the Government all moved for summary judgment with respect to that report. After reviewing the report in camera, this Court granted summary judgment for the Government. N.Y. Times Co. v. Dep't of Justice, 872 F. Supp. 2d 309 (S.D.N.Y. 2012).

Following that decision, the ACLU narrowed its FOIA request. Later in 2012, the Government supplemented its initial production, releasing additional documents but continuing to withhold many others. Early in 2013, the parties each moved for summary judgment with respect to the withheld documents.

The posture of this action then changed dramatically. On June 5, 2013, The Guardian published a classified FISC "Secondary Order" issued under section 215 directing

telecommunications provider Verizon to provide the National Security Agency "on an ongoing

daily basis . . . all call detail records or 'telephony metadata'" for all telephone calls on its

network from April 25, 2013 to July 19, 2013.  See In re Application of the FBI for an Order

Requiring the Prod. Of Tangible Things From Verizon Bus., Network Servs., Inc. ex rel. MCI

Commc'n Servs., Inc. d/b/a Verizon Bus. Servs., No. BR 13-80, slip op. at 24 (F.I.S.C. Apr. 25,

2013).  This document, leaked by former NSA contractor Edward Snowden, was the beginning

of an "unprecedented unauthorized disclosure of TOP SECRET documents," touching "on some

of the U.S. Government's most sensitive national security programs, including highly classified

and on-going signals intelligence collection programs."  Hudson Decl. ¶ 17 (emphasis in the

original).  The Government acknowledged the existence of an NSA program that had been

collecting bulk telephony metadata—but not call contents—under section 215 since 2006.  See

Administration White Paper: Bulk Collection of Telephony Metadata Under Section 215 of the

USA PATRIOT ACT (Aug. 9, 2013).[1]

      The Government asked this Court to defer decision on the pending summary

judgment motions while it assessed the impact of Snowden's leaks.  Letter from AUSA John D.

Clopper, June 7, 2013 (ECF No. 62).  The President instructed the Director of National

Intelligence to determine what information could be declassified in light of the unauthorized

disclosures.  Hudson Decl. ¶ 24; Executive Order 13526 § 3.1(c)–(d).  Thereafter, the

Government began "a large-scale, multi-agency review process" to determine what additional

information could be released.  Hudson Decl. ¶ 25.  In the course of that review, the Government

released a redacted copy of the report that was the subject of this Court's decision in New York

---

[1] Available at http://s3.documentcloud.org/documents/750223/obama-administrations-legal-rationale-for.pdf.

Times Co., 872 F. Supp. 2d 309.  See 2011 Report on the National Security Agency's Bulk Collection Programs for USA PATRIOT Act Reauthorization.[2]

As the declassification process unfolded, the parties withdrew their summary judgment motions.  And in August 2013, this Court directed the Government to continue its review process and make rolling productions to the ACLU.  ECF No. 71.  Ultimately, the Government released over 1,000 pages of material.

In February 2014, the ACLU narrowed its request again to "fully withheld opinions or orders of the Foreign Intelligence Surveillance Court that relate to the bulk collection of any information (i.e., not just telephony metadata)."  Email from Patrick Toomey, Esq., Feb. 7, 2014 (Ex. A to Decl. of John Clopper (ECF No. 86)).  The Government provided a Vaughn index containing eight entries purporting to list the documents responsive to the narrowed request that had been withheld in full.  Hudson Decl. Ex. A. (ECF No. 87-1).  That index essentially lists three categories of documents:

1. August 2008 FISC Opinion:  One six-page FISC opinion, dated August 20, 2008.  Non-identical duplicates of this document are #13A, 50, and 82A in the Government's Vaughn index.

2. October 2006 FISC Orders:  Four FISC orders, each dated October 31, 2006, ranging in length from 4 to 19 pages and which largely overlap with one another.  These documents are #77B, 77C, 79, and 81J in the Government's Vaughn index.

3. Unspecified Additional FISC Orders:  An unspecified number of other FISC orders issued between March 9, 2006 and June 30, 2011.  These documents are collectively listed as #125 et seq. in the Government's Vaughn index.

---

[2] Available at http://www.dni.gov/files/documents/2011_CoverLetters_Report_Collection.pdf.

Both sides move for summary judgment with respect to these documents.  In addition to its publicly filed submissions to this Court, the Government also filed a classified <u>ex parte</u> declaration in support of its motion.

DISCUSSION

I.    <u>FOIA</u>

Congress enacted FOIA to "ensure an informed citizenry" and to "hold the governors accountable to the governed." <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978).  FOIA requires "broad disclosure of Government records." <u>CIA v. Sims</u>, 471 U.S. 159, 166 (1985).  It strikes "a workable balance between the right of the public to know and the need of the Government to keep information in confidence." <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989).  On request, the Government must disclose any document that does not fall within one of FOIA's nine exemptions.  <u>See</u> <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 7 (2001).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." <u>Klamath</u>, 532 U.S. at 7–8 (alteration in original) (quoting <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 361 (1976)).  "[C]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." <u>Klamath</u>, 532 U.S. at 8 (quoting <u>U.S. Dep't of Justice v. Tax Analysts</u>, 492 U.S. 136, 151 (1989)); <u>see also</u> <u>FBI v. Abramson</u>, 456 U.S. 615, 630 (1982).

Even if portions of documents are exempt from disclosure, the statute requires the Government to disclose "[a]ny reasonably segregable portion." 5 U.S.C. § 552(b).  "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." <u>Sussman v. U.S. Marshals Serv.</u>, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting <u>Mead Data Central, Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir.

-5-

1977). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." Sussman, 494 F.3d at 1116.

"[T]o prevail on a motion for summary judgment in a FOIA case, the defendant agency has the burden of showing . . . that any withheld documents fall within an exemption to FOIA." Long v. Office of Personnel Mgmt., 692 F.3d 185, 190 (2d Cir. 2012) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)); see also Wilner v. NSA, 592 F.3d 60, 68 (2d Cir. 2009). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Wilner, 592 F.3d at 73 (quoting Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Wilner, 592 F.3d at 73 (quoting Larson, 565 F.3d at 865).

II.   *In Camera* Review

A district court may review documents in camera to determine whether they are exempt under FOIA, and if so, whether any reasonably segregable portions may be released. "In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). "[I]f there is evidence of agency bad faith—for example, if information contained in agency affidavits is contradicted by other evidence in the record—then, in camera inspection may be necessary to insure that agencies do not misuse the

FOIA exemptions to conceal non-exempt information." Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 393 (D.C. Cir. 1987).

In support of its initial summary judgment motion, before the declassification review, the Government argued the documents it withheld in full could not be released in redacted form because "the release of any non-exempt information would produce only incomplete, fragmented, unintelligible sentences and phrases that are devoid of any meaning." Decl. of Mark A. Bradley ¶ 14 (ECF No. 43).  But the plaintiff in another FOIA litigation seeking many of the same documents at issue here aptly demonstrated how a FISC order previously withheld but later released could have been redacted to remove classified material while still providing meaningful information.  Supplemental Decl. of Charles E. Sims Exs. 2-A, 2-B (ECF No. 99-2).  The withheld document concerned the Government's violations of an earlier FISC order.  The Government could have redacted it to conceal the existence of a bulk collection program, the NSA's involvement, and the type of information collected by the Government, but still reveal that the Government acted "in a manner that appears to the Court to be directly contrary" to a previous court order, that the FISC contemplated taking "action regarding persons responsible for any misrepresentations to the Court . . . either through its contempt powers or by referral to appropriate investigative offices," and that "[t]he Court is exceptionally concerned about what appears to be a flagrant violation of its Order in this matter." Supplemental Sims Decl. Ex. 2-A.  These are by no means "unintelligible sentences and phrases that are devoid of any meaning."  Bradley Decl. ¶ 14.

And in its initial summary judgment motion, the Government also defended its withholding of responsive documents by stating "the rules and procedures of the FISC restrict the Government from disclosing FISC records."  Second Supplemental Decl. of Mark A. Bradley

¶ 12 (ECF No. 55); see also Gov. Br. at 19 (ECF No. 95) ("[T]he government previously withheld in full all of the responsive FISC opinions and orders so as not to contravene the FISC's own rules and procedures."). In its present summary judgment motion, the Government acknowledges the FISC's rules do not prevent it from releasing FISC orders, but asserts its prior position was held in good faith.

At first, the Government argued its "mistaken" understanding of the FISC rules was corrected in September 2013, when the FISC "clarified" that its orders were subject to FOIA requests. See In re Orders of this Court Interpreting Section 215 of the Patriot Act, No. Misc. 13-02 (F.I.S.C. Sept. 13, 2013).[3] But the ACLU pointed out the fallacy in that argument, because the Government itself previously declassified and released a FISC order on July 31, 2013, six weeks before the September "clarifying" order. See Office of the Director of Nat'l Intelligence, "DNI Clapper Declassifies and Releases Telephone Metadata Collection Documents" (July 31, 2013)[4].

Then, the Government claimed it had erred and offered a new argument: it was a June 2013 FISC order, not the one in September, that "clarified" the issue. See In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights, No. Misc. 13-01 (F.I.S.C. June 12, 2013).[5] But that contradicts the position the Government took in an earlier proceeding before the FISC.

Back in 2007, the ACLU moved before the FISC for release of certain court orders and pleadings. In arguing that the motion was improper, the Government asserted that

---

[3] Available at http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-02%20Order-2.pdf.
[4] Available at http://1.usa.gov/1ud7vjq.
[5] Available at http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-01%20Opinion-1.pdf.

"[t]he ACLU can use FOIA [] to seek access to FISC orders and Government briefs in the Executive's possession.  The FOIA process . . . is the proper means for the ACLU to seek records of [the FISC's] proceedings from the Executive Branch.  Moreover, FOIA's judicial remedies must be sought only in district court, not in [the FISC]."  Gov.'s Opp. Br. at 5, <u>In re Motion for Release of Court Records</u>, No. Misc. 07-01 (F.I.S.C.).[6]  The FISC agreed with the Government.  In denying the ACLU's motion, in that court's first published opinion, the FISC held "nothing in this decision forecloses the ACLU from pursuing whatever remedies may be available to it in a district court through a FOIA request addressed to the Executive Branch."  <u>See In re Motion for Release of Court Records</u>, 526 F. Supp. 2d 484, 497 (F.I.S.C. 2007).

Having argued successfully in 2007 that FOIA was the proper vehicle to seek release of FISC documents, the Government appears to have been dissembling in 2012 when it argued "the rules and procedures of the FISC restrict the Government from disclosing FISC records."  Second Supplemental Decl. of Mark A. Bradley ¶ 12 (ECF No. 55).  The same inference could be drawn from the Government's current argument that it did not know until June 2013 that there was no such restriction on FOIA releases of FISC documents.  In short, the Government's arguments bear the hallmarks of opportunistic rummaging rather than a coherent strategy.

Nevertheless, the Government contends it was still appropriate to withhold the documents in full because they "included the identifier for communications intelligence or 'COMINT,' which is an identifier for Sensitive Compartmented Information ('SCI') that is associated with the NSA."  Gov. Op. Br at 17 (ECF No. 95).  The "COMINT" identifier would

---

[6] Available at http://bit.ly/1naXYtD.

have revealed the NSA's involvement with section 215, a classified fact at the time. And redacting classification markings would have been unusual for DOJ and permitted a sophisticated adversary to deduce the NSA's involvement. <u>See</u> Gov. Opp. Br. at 16-18. This obscure argument is particularly elusive. Fortunately, it need not be addressed.[7] It is enough that by advancing incorrect and inconsistent arguments, the Government acted without the candor this Court expects from it.

        And even after the declassification review, the Government continued to withhold documents from the ACLU. The Government's updated <u>Vaughn</u> index contains an entry described simply as "Multiple FISC Orders" from March 2006 to June 2011, with no information on the number of documents in the category, their specific dates, or the content of the orders. Hudson Decl. Ex. A. The Government withheld the Multiple FISC Orders in full, as well as the number and dates of those orders, claiming "no further information about the nature or substance [of the Multiple FISC Orders] can be provided without revealing classified information." Hudson Decl. ¶ 52. But as the ACLU pointed out, the Government had already publicly disclosed the docket numbers and dates of three orders not listed on the <u>Vaughn</u> index, as well as excerpted text from two of them. <u>See</u> Supplemental Sims Decl. Exs. 4, 5, & 7 (ECF Nos. 99-4, 99-5, & 99-7). The ACLU cited this as proof that the claimed need for secrecy concerning the "Multiple FISC Orders" could not be true. The Government acknowledged its mistake and released redacted copies of those three orders. The Government states it failed to locate these orders in its search for responsive documents, and had it done so they would have been

---

[7] However, the Northern District of California concluded in a parallel litigation that "[t]he evidence in the record shows that some documents, previously withheld in the course of this litigation and now declassified, had been withheld in their entirety when a disclosure of reasonably segregable portions of those documents would have been required." <u>Elec. Frontier Found. v. Dep't of Justice</u>, No. 4:11-cv-05221-YGR (N.D. Cal. June 13, 2014) (attached as Ex. 8 to Supplemental Sims Decl. (ECF No. 99-8)).

declassified and produced.  Therefore, it claims, this incident does not undermine the arguments in support of absolute secrecy for the "Multiple FISC Orders," because these orders were never included within that category.  Letter from AUSA Emily E. Daughtry, July 9, 2014 (ECF No. 101).

These developments give this Court pause.  The Government's argument that it believed until June 2013 that FISC orders could not be produced in response to FOIA requests strains credulity.  Its assertion on the initial summary judgment motion that segregating non-exempt information in FISC orders would leave only "unintelligible sentences and phrases" was incorrect.  And it then failed to produce or list on the Vaughn index three documents which the Government had disclosed elsewhere.  These inconsistencies shake this Court's confidence in the Government's submissions.  The deference the Government ordinarily receives in FOIA cases is rooted largely in the courts' trust that the Government will comply with its statutory obligations.  That compliance is not apparent here.

For the reasons below, the Government is entitled to summary judgment with respect to FISC orders, if any, relating solely to the bulk collection of information other than telephony metadata.  But because this Court has little faith in the Government's segregability determinations, the other documents in the Government's Vaughn index must be submitted for in camera review.[8]  See Carter, 830 F.2d at 393.

---

[8] The Northern District of California recently granted summary judgment for the Government with respect to many of the same documents at issue here.  See Elec. Frontier Foundation v. Dep't of Justice, No. 4:11-cv-05221-YGR, 2014 WL 3945646 (N.D. Cal. Aug. 11, 2014).  However, that court also required in camera review before granting the Government's motion.

III.    Deference to Government's National Security Determinations

Despite the searching inquiry this Court will give the Government's segregability determinations, the Government's affidavits are entitled to deference on whether disclosure of certain information would harm national security.  In the national security context, a court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." ACLU v. Dep't of Justice, 681 F.3d 61, 69 (2d Cir. 2012) (emphasis in original) (quoting Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007)).  "Minor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." Wilner, 592 F.3d at 73 (alteration in original) (quoting Larson, 565 F.3d at 864).  "Recognizing the relative competencies of the executive and judiciary, . . . it is bad law and bad policy to 'second-guess the predictive judgments made by the government's intelligence agencies' regarding questions such as whether disclosure of terrorist-related surveillance records would pose a threat to national security." Wilner, 592 F.3d at 76 (quoting Larson, 565 F.3d at 865 (D.C. Cir. 2009)).

A showing of bad faith on the part of the Government may negate the deference it is owed. See Carney, 19 F.3d at 812.  The reasons for this Court's skepticism about the Government's segregability determinations are not a basis to second guess its national security assessments.  Because the executive is better equipped to determine potential harms to national security than the judiciary, it deserves considerable deference on that issue.

IV.    Unspecified Additional FISC Orders

Turning at last to a subset of the documents at issue, the Government groups an unknown number of orders into a single entry in its Vaughn index, described only as "Multiple

-12-

FISC Orders" with dates ranging from March 9, 2006 to June 30, 2011.  Referred to as a "no

number, no list" response, the Government acknowledges that responsive documents exist, but

does not disclose further information about the documents in this category, including how many

there are or on what dates they issued.  See N.Y. Times Co. v. U.S. Dep't of Justice, 756 F.3d

100, 105 (2d Cir. 2014) ("N.Y. Times al-Awlaki").[9]  According to the Government, even this

seemingly innocuous information could reveal the identities of telecommunications carriers who

have provided bulk records and when they did so.  Hudson Decl. ¶¶ 54–56.

In its summary judgment motion, the ACLU treated the documents in the "no

number, no list" response as falling within two categories: those that relate to telephony metadata

collection and those that relate to the bulk collection of other information.  The Government's

response acknowledged some of the documents do relate to telephony metadata collection, but

refused to confirm or deny the existence of documents relating to the use of section 215 for the

bulk collection of other information.  This acknowledgment effectively continues the

Government's no number, no list response to documents relating to telephony metadata, but

makes a "Glomar" response with respect to documents pertaining to the bulk collection of other

information.  A Glomar response, unlike a no number, no list response, neither confirms nor

denies the existence of responsive records.  See N.Y. Times (al-Awlaki), 756 F.3d at 105;

Wilner, 592 F.3d at 68.

For reasons already given, this Court will examine many of the documents in this

case in camera to assess the Government's arguments for itself.  But it is clear from the affidavits

alone that the Government is entitled to provide a Glomar response with respect to documents

---

[9] This opinion will refer to this decision as the "N.Y. Times (al-Awlaki)" so as to avoid confusion with the New York Times FOIA action related to this case.

relating solely to the bulk collection of information other than telephony metadata, whether the Government intended to give such a response or not.  For the following reasons, summary judgment is granted to the Government for documents, if any, relating solely to information other than telephony metadata, and any such documents need not be submitted for in camera review.

"[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exception." Wilner, 592 F.3d at 68 (alterations in original) (quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  Therefore an agency may make a Glomar response when "the existence or nonexistence of a record is a fact exempt from disclosure under a FOIA exemption." Wilner, 592 F.2d at 70.  Here, the Government asserts that the fact of whether the Government is engaging in the bulk collection of information other than telephony metadata is itself exempt from disclosure under Exemptions 1 and 3.  Supplemental Hudson Decl. ¶ 8.

Exemption 1 applies to properly classified national security information.  See 5 U.S.C. § 552(b)(1).  To be properly classified, national security information must (1) be classified by an "original classification authority," (2) be "owned by, produced by or for, or [] under the control of the United States Government," (3) fall within one or more of eight protected categories of information, and (4) "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Exec. Order No. 13526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010).  The classification authority must be "able to identify or describe the damage" that would be caused by disclosure of the information.  Exec. Order No. 13526 § 1.1(a)(4).

The Government argues the existence or non-existence of other bulk collection programs falls within Exemption 1 because it falls into one of the eight categories of classifiable

information, "intelligence activities (including covert action), intelligence sources or methods or cryptology," Exec. Order 13526, § 1.4(c), and because "disclosure of the existence or nonexistence of such activities reasonably could be expected to result in damage to national security." Supplemental Hudson Decl. ¶ 13.

Exemption 3 applies to records exempted from disclosure by other federal statutes. See 5 U.S.C. § 552(b)(3).

> Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.

Wilner, 592 F.3d at 72 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)). "In evaluating whether Exemption 3 applies, a court should 'not closely scrutinize the contents of the withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute.'" N.Y. Times, 872 F. Supp. 2d at 316 (alteration in original) (quoting Krikorian v. Dep't of State, 984 F.2d 461, 465 (D.C. Cir. 1993)).

The Government argues the existence of other bulk collection programs, if any, falls within Exemption 3 because it is protected by § 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 3024(i)(1)). The National Security Act is a withholding statute for Exemption 3 purposes. ACLU v. Dep't of Justice, 681 F.3d 61, 72–73 (2d Cir. 2012). § 102A(i)(1) provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). For information which may disclose intelligence sources and methods, Exemption 3 and the National Security Act "provide[]

overlapping protection" with Exemption 1.  Military Audit Project v. Casey, 656 F.2d 724, 736 n.39 (D.C. Cir. 1981).

The ACLU argues that acknowledging the existence of records related to non-telephony metadata bulk collection programs would not reveal the particular "source or method" used by the Government, a requirement under both exemptions as asserted here.  But this takes too narrow a view of both what the Government may keep classified and of the capabilities of our adversaries.  Assuming for a moment that the Government is not engaging in the bulk collection of anything but telephone records, it is entitled to keep that fact—its lack of additional sources or methods—classified.  To acknowledge that would alert potential adversaries that they need not be concerned about bulk collection of other types of information, negating the deterrent effect of not knowing whether the Government is watching or listening.  But if the Government is collecting other information in bulk, knowing that could permit a sophisticated adversary, together with disparate other pieces of information, to make an educated guess as to what the Government is doing.  A sophisticated adversary could determine what types of information the intelligence community would likely be interested in collecting in bulk and what types of information could in fact be easily collected.  Admitting the existence of other bulk collection programs could permit these adversaries to predict the Government's activities and evade them.

In Wilner, the Second Circuit rejected the plaintiffs' argument that a Glomar response may be used "only to preserve the secrecy of a covert intelligence program or secret intelligence sources or methods."  Wilner, 592 F.3d at 69.  The court held that a Glomar response may be appropriate even with respect to "a program whose existence has been publicly revealed."  Wilner, 592 F.3d at 69.  Implicit is that it is appropriate to invoke Glomar here, to

preserve the secrecy of the existence or non-existence of a covert intelligence program. Accordingly, summary judgment is granted to the Government on this issue.

<u>CONCLUSION</u>

For the foregoing reasons, the Government's motion for summary judgment is granted and the ACLU's motion is denied with respect to the Government's <u>Glomar</u> response for responsive documents, if any, relating solely to the use of section 215 for bulk collection of information other than telephony metadata.  The Government is directed to submit the remaining documents for <u>in camera</u> review by October 17, 2014.  The Government is invited to make a further submission either reconsidering its determinations and proposing redactions or providing further support as to why these documents should be withheld in full.  Any ruling on the remainder of the summary judgment motions is deferred pending this Court's review.

Dated: October 6, 2014
    New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Patrick C. Toomey, Esq.
Alexander A. Abdo, Esq.
Jameel Jaffer, Esq.
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

-17-

Arthur N. Eisenberg, Esq.
Beth Haroules, Esq.
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Charles S. Sims, Esq.
Richard I. Haddad, Esq.
Proskauer Rose LLP
11 Times Square
New York, NY 10036
*Counsel for Plaintiffs*

Emily E. Daughtry, Esq.
John D. Clopper, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007
*Counsel for Defendants*