USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
                                                    :
AMERICAN CIVIL LIBERTIES UNION, *et*   :
*al.*,                                              :
                                                    :          1:13-cv-7347-GHW
                                    Plaintiffs,   :
                                                    :          MEMORANDUM OPINION
                -against-                          :          AND ORDER
                                                    :
UNITED STATES DEPARTMENT OF       :
JUSTICE,                                          :
                                    Defendant.   :
                                                    :
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

On March 29, 2013, the American Civil Liberties Union ("ACLU") requested records from

the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552.  The ACLU's request sought records regarding DOJ's policy on giving notice to

criminal defendants and others against whom it intends to use evidence derived from warrantless

surveillance.  *See* Complaint, Dkt. No. 1, at ¶ 18.  Faced with DOJ's failure to respond timely, the

ACLU filed this lawsuit on October 17, 2013, seeking an injunction requiring DOJ to process their

request.

After the commencement of this case, various DOJ components began processing the

ACLU's request.  The National Security Division ("NSD") identified five responsive documents, all

of which it withheld under FOIA's Exemption 5, which exempts from disclosure "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The ACLU challenged both the

adequacy of the search and the applicability of Exemption 5 to the withheld documents, and the parties filed cross-motions for summary judgment on these two issues.  *See* Dkt. Nos. 17, 23, 26, 29.

With regard to the adequacy of the search, for the reasons explained below, the Court grants the ACLU's motion in part.  The Court finds that DOJ improperly limited its search under Part 3 of the ACLU's request by reading the word "governing" into the request where it had not been written.  DOJ is ordered to conduct a new search without the improperly-added limiting term and to release any responsive records that do not fall under a FOIA exemption.  The ACLU's motion is denied in part to the extent that it seeks summary judgment on the inadequacy of the remaining aspects of the scope and conduct of DOJ's search.

On the issue of whether Exemption 5 applies to the withheld documents, for the reasons explained below, the Court grants the government's motion for summary judgment.  Because the Court could not make a *de novo* determination of Exemption 5's applicability to the withheld documents based on the government's *Vaughn* submissions, the Court ordered DOJ to produce the documents for *in camera* review.[1]  After reviewing the documents *in camera*, the Court agrees with DOJ that all five may be withheld under Exemption 5.

## II.   BACKGROUND

### a.   The FISA and the FAA

Congress enacted the Foreign Intelligence Surveillance Act ("FISA") in 1978, which "authorize[s] and "regulate[s] certain governmental electronic surveillance of communications for foreign intelligence purposes." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (citing 50 U.S.C. § 1801 *et seq.*).  FISA's "framework for foreign intelligence surveillance" includes a specialized court, the Foreign Intelligence Surveillance Court ("FISC"), which reviews the government's applications to conduct electronic surveillance.  *See id.*  A FISC judge may issue an order allowing

---

[1] The Court ordered that DOJ produce the documents during a February 5, 2015 telephone conference.

electronic surveillance, upon application by the government, if she finds that there is probable cause

to believe:  (a) "the target of the electronic surveillance is a foreign power or an agent of a foreign

power"; and (b) "each of the facilities or places at which the electronic surveillance is directed is

being used, or is about to be used, by a foreign power or an agent of a foreign power."  50 U.S.C. §

1805(a)(2).

Information the government collects under FISA may be used in criminal proceedings,

subject to compliance with minimization procedures and authorization by the Attorney General.  *See*

50 U.S.C. § 1806(a), (b).  When information collected under FISA is used in such a proceeding, the

government must notify the person against whom it will be used.  The statutory notice requirement

for information collected under FISA provides:

> Whenever the Government intends to enter into evidence or otherwise
> use or disclose in any trial, hearing, or other proceeding in or before
> any court, department, officer, agency, regulatory body, or other
> authority of the United States, against an aggrieved person, any
> information obtained or derived from an electronic surveillance of that
> aggrieved person pursuant to the authority of this subchapter, the
> Government shall, prior to the trial, hearing, or other proceeding or at
> a reasonable time prior to an effort to so disclose or so use that
> information or submit it in evidence, notify the aggrieved person and
> the court or other authority in which the information is to be disclosed
> or used that the Government intends to so disclose or so use such
> information.

50 U.S.C. § 1806(c).

In 2008, Congress enacted the FISA Amendments Act ("FAA"), which "left much of FISA

intact but . . . established a new and independent source of intelligence collection authority, beyond

that granted in traditional FISA."  *Clapper*, 133 S. Ct. at 1144.  At issue in this case is part of the FAA

known as Title VII—Section 702 of FISA, codified at 50 U.S.C. § 1881a—which "supplement[ed]

pre-existing FISA authority by creating a new framework under which the Government may seek

the FISC's authorization of certain foreign intelligence surveillance targeting the communications of

non-U.S. persons located abroad."  *Clapper*, 133 S. Ct. at 1144.  Unlike applications for surveillance

under "traditional" FISA, Title VII "does not require the Government to demonstrate probable cause that the target of the electronic surveillance is a foreign power or agent of a foreign power," nor does it "require the Government to specify the nature and location of each of the particular facilities or places at which the electronic surveillance will occur."  *Id.*

Rather than include a separate statutory provision governing the use of—including provisions of notice to criminal defendants and others—information collected under Title VII, Congress made reference to 50 U.S.C. § 1806, which governs the use of information collected under traditional FISA:

> Information acquired from an acquisition conducted under section 1881a of this title [*i.e.*, Title VII] shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I of this chapter for purposes of section 1806 of this title . . . .

50 U.S.C. § 1881e(a).  Thus, information collected under Title VII is subject to the same notice requirements, quoted above, as information collected under traditional FISA.  *See* 50 U.S.C. § 1806(c), *supra*.

### b.  DOJ's Provision of Title VII Notice

In late 2012 and early 2013, the Solicitor General submitted briefs for and argued *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) before the United States Supreme Court.  In his written and oral submissions, the Solicitor General argued that although the plaintiffs in that case did not have standing to challenge Title VII surveillance procedures, criminal defendants *would* be able to mount such a challenge, since they would be given notice of Title VII material if and when it were used against them.  *See* ACLU's Memorandum of Law ("ACLU's Memo"), Dkt. No. 24, at 2-3.  The ACLU claims that the Solicitor General later learned that NSD had in fact not been providing defendants with notice of evidence collected under Title VII.  *See id.* at 3.

In October 2013, the government provided Title VII notice to a criminal defendant for the first time since the FAA was enacted in 2008.  *See* Charlie Savage, "Federal Prosecutors, in a Policy

Shift, Cite Warrantless Wiretaps as Evidence," Toomey Decl., Dkt. No. 25, Exhibit E, at 1.  The

ACLU argues that this amounted to a formal change in DOJ's policy regarding Title VII notice, and

thus that DOJ must disclose written records describing both the prior and current policy.  In

support of this contention, the ACLU submitted to the Court a number of news articles chronicling

the internal deliberation process at DOJ in the summer of 2013, regarding the decision to provide

Title VII notice to criminal defendants starting in October 2013.  *See* Toomey Decl., Dkt. No. 25,

Exhibits A-G.

In February 2014, in response to a discovery request by a criminal defendant provided with

Title VII notice, DOJ said that it "had not considered the particular question" before sometime in

2013, but that "after conducting a review of the issue, the Department has determined that

information obtained or derived from [traditional FISA] collection, may, in particular cases, also be

derived from prior Title VII collection, such that notice concerning both [traditional FISA] and Title

VII collections should be given in appropriate cases with respect to the same information."

Mohamud Discovery Brief, Torrance Decl., Dkt. No. 20, Exhibit A, at 7.  Thus, the parties dispute

whether DOJ had a policy regarding Title VII notice prior to 2013 and whether it has a final, written

policy today.  The Court need not—and indeed, cannot, with the information currently before it—

resolve this dispute for purposes of deciding the present motion.

### c.  ACLU's FOIA Request and DOJ's Search

The ACLU's March 29, 2013 FOIA request sought three categories of records:

> (1) The case name, docket number, and court of all legal proceedings,
> including criminal prosecutions, current or past, in which the
> Department of Justice intends or intended to enter into evidence,
> or otherwise used or disclosed in any trial, hearing, or other
> proceeding, any information obtained or derived from electronic
> surveillance pursuant to the authority of the FAA;
>
> (2) Policies, procedures, and practices governing the provision of
> notice to "aggrieved persons," as set forth in 50 U.S.C. § 1881e(a)
> and § 1806(c), of the government's intent to enter into evidence or

> otherwise use or disclose in any trial, hearing, or other proceeding information obtained or derived from electronic surveillance pursuant to the authority of the FAA; and
>
> (3) Legal memoranda or opinions addressing or interpreting the FAA's notice provision or requirements, as set forth in 50 U.S.C. § 1881e(a) and § 1806(c).

Complaint, Dkt. No. 1, at ¶ 18.  Part 1 of the request is not at issue in the pending motions.

NSD began its search for responsive records on November 8, 2013, a process spearheaded by the Chief of Litigation in NSD's Office of Intelligence, who searched her own hard-copy and electronic files.  Government's Memorandum of Law ("Govt's Memo"), Dkt. No. 18, at 7.  At her direction, NSD's FOIA staff consulted with NSD's Office of Law and Policy, and NSD searched hard-copy and electronic files of attorneys in that office as well.  *Id.* at 8.  After reviewing all of the potentially responsive records, NSD identified five documents as responsive, and determined that all five could be withheld under Exemption 5.  *Id.* at 9.

By agreement of the parties, the Executive Office for U.S. Attorneys' ("EOUSA") search was limited to the U.S. Attorney's Offices for the Districts of Oregon and Colorado.  *Id.*  Each office identified attorneys who had worked on relevant cases and searched their hard-copy and electronic files for responsive records.  *Id.* at 9-11.  Searches of the attorneys' classified computer systems were conducted by EOUSA.  *Id.* at 11.  All potentially responsive records were sent to NSD for review; of those determined to be responsive, two had already been identified and withheld by NSD, one had been disclosed to the ACLU previously, and two were disclosed for the first time.  *Id.*

## III.   LEGAL FRAMEWORK

### a.  Summary Judgment Standard

A moving party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("'[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party," while a fact is material if it "might affect the outcome of the suit under

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

      To defeat a motion for summary judgment, the non-moving party "must come forward with

'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).  "[M]ere speculation or

conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010) (citations and internal quotations omitted).  A party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

      In determining whether there exists a genuine dispute as to a material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).  The Court's job is not to "weigh the

evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir.

2002).  Rather, the Court must decide whether a rational juror could find in favor of the non-moving

party.  *Id.*  In resolving cross-motions for summary judgment, "each party's motion must be

examined on its own merits, and in each case all reasonable inferences must be drawn against the

party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d

Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir. 1981)).

    **b.  FOIA**

      "Congress intended FOIA to permit access to official information long shielded

unnecessarily from public view." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1262 (2011) (internal quotation omitted).  Courts have long understood FOIA to be rooted in "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965) ("S. Rep. No. 813")).  To that end, FOIA provides that, except for records otherwise made available to the public or those falling under an enumerated exemption, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  "As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions."  *Sears*, 421 U.S. at 136.  "These exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S. Ct. at 1262; *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass.").

"It is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure."  *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 143 (2d Cir. 1994) (internal citations omitted).  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79 (1973)).

   c.  **Exemption 5**

   DOJ has invoked FOIA's Exemption 5, which exempts from disclosure "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure," including, as relevant here, the deliberative process privilege (sometimes referred to as the "executive privilege"), the attorney work product privilege, and the attorney-client privilege. *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("[I]t is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context."); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) ("Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5.")

### 1. *Deliberative Process Privilege*

The deliberative process privilege protects records that are: "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356 (quoting *Grand Cent. P'ship*, 166 F.3d at 482) (internal alterations and quotation marks omitted). Thus, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" fall under the deliberative process privilege, as do "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Grand Cent. P'ship*, 166 F.3d at 482.

"Crucial" to determining whether the privilege applies "is an understanding of the function of the documents in issue in the context of the administrative process which generated them." *Sears*, 421 U.S. at 138; *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858, 859-60 (D.C. Cir.

9

1980).  In determining whether a document is predecisional, courts look at factors such as "whether the agency can pinpoint the specific agency decision to which the document correlates and verify that the document precedes, in temporal sequence, the decision to which it relates," as well as "the identity and position of the authors and recipients of documents because those that are drafted for superiors or decision makers are more likely to be predecisional." *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162, 167 (S.D.N.Y. 2009) (quoting *Grand Cent. P'ship*, 166 F.3d at 482) (internal alterations and quotation marks omitted).  In determining whether a document is deliberative, courts look at whether the document "is actually related to the process by which policies are formulated," and assess such factors as "whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Grand Cent. P'ship*, 166 F.3d at 482 (internal citations and alterations omitted).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news . . . ." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).  This realization implicates two concerns:  governmental efficiency and the quality of agency decisions. Congress recognized that "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to operate in a fishbowl," *EPA v. Mink,* 410 U.S. 73, 87 (1973) (quoting S. Rep. No. 813, at 9), and that "the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result." *Sears*, 421 U.S. at 150 (quoting S. Rep. No. 813, at 9).

### A. Exceptions to the Deliberative Process Privilege

But even if a document is predecisional and deliberative when created, later use of or

reference to the document by agency personnel may require its disclosure.  A document the

government claims is exempt may fall outside Exemption 5 "if it closely resembles that which FOIA

affirmatively requires to be disclosed:  'final opinions . . . made in the adjudication of cases,'

'statements of policy and interpretations which have been adopted by the agency and are not

published in the Federal Register,' and 'administrative staff manuals and instructions to staff that

affect a member of the public.'"  *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d

Cir. 2012) (quoting 5 U.S.C. § 552(a)(2)(A)-(C)).  The two long-recognized exceptions to Exemption

5—discussed in more detail below—are:  (1) adoption, *i.e.*, "when the contents of the document

have been adopted, formally or informally, as the agency position on an issue or are used by the

agency in its dealings with the public"; and (2) working law, *i.e.,* "when the document is more

properly characterized as an opinion or interpretation which embodies the agency's effective law and

policy."  *Brennan Ctr.*, 697 F.3d at 195 (internal citations and alterations omitted); *see also Sears*, 421

U.S. at 153, 161; *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 185-87.

### 2.  Attorney Work Product Privilege

The attorney work-product privilege "shields materials prepared in anticipation of litigation

or for trial by or for a party or by or for that party's representative (including the party's attorney,

consultant, or agent)."  *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997) (internal alterations

omitted) (citing Fed. R .Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947)).  The privilege

protects not individual attorneys, but the adversarial system itself:  "It is believed that the integrity of

our system would suffer if adversaries were entitled to probe each other's thoughts and plans

concerning the case."  *Coastal States*, 617 F.2d at 864.  In the FOIA context, the privilege protects

"deliberative materials but it also protects factual materials prepared in anticipation of litigation. Any

part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions,

legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."

*Tax Analysts*, 117 F.3d at 620 (internal citations omitted); *see also A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994) ("Although factual materials falling within the scope of attorney work product may generally be discovered upon a showing of 'substantial need' under Fed. R. Civ. P. 26(b)(3), under exemption 5 the test is whether information would routinely be disclosed in private litigation.").

The Second Circuit has not determined whether the work-product privilege—like the deliberative process privilege, discussed *supra*, and the attorney-client privilege, discussed *infra*—can be defeated by adoption or use by an agency as working law. *See Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005).

### 3. Attorney-Client Privilege

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance," including "most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Brennan Ctr.*, 697 F.3d at 207 (internal citations and alteration omitted). Although the scope of this privilege as it relates to government lawyers is not exceptionally clear, "[w]hatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears*, 421 U.S. at 154. Because of this, and because the Court finds that all of the withheld documents fall under either the deliberative process privilege, attorney work-product privilege, or both, it need not determine the exact boundaries of the attorney-client privilege in this context.

### IV.    DISCUSSION

####    a.  Scope of Search

The ACLU argues that NSD improperly read the word "governing" into Part 3 of its request, which seeks: "Legal memoranda or opinions *addressing or interpreting* the FAA's notice provision or requirements, as set forth in 50 U.S.C. § 1881e (a) and § 1806(c)." *See* Complaint, Dkt. No. 1, at ¶ 18 (emphasis added). In contrast, Part 2 of the request seeks "[p]olicies, procedures, and practices *governing* the provision of notice to 'aggrieved persons,' . . . ." *Id.* (emphasis added). The Court finds that NSD appropriately construed Part 2 to seek final documents, as indicated by the term "governing." However, for reasons that remain unclear to the Court, NSD "read the two similar requests, 2 and 3, in tandem, and construed request 3 to also reach only final documents." Govt's Memo, Dkt. No. 18, at 15. Yet only one page earlier, the government's own brief explains why this was an erroneous reading of Part 3:

> While an agency must "construe a FOIA request liberally," *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995), the terms of the request, and what the request reasonably describes, still control: an "agency [is] bound to read it as drafted, not as either agency officials or [the requester] might wish it was drafted." *Miller v. CIA*, 730 F.2d 773, 776-77 (D.C. Cir. 1984).

Govt's Memo at 14. DOJ is bound to read the ACLU's request as drafted, and because Part 3 seeks records "addressing or interpreting," rather than "governing," NSD improperly limited its search under Part 3. DOJ is ordered to conduct a new search that comports with the actual terms of Part 3 of the ACLU's request and to release any responsive records that do not fall under a FOIA exemption.

The Court finds that the scope and conduct of the search as described in the parties' briefs was otherwise proper. As the Second Circuit has made clear, "an agency's search need not be perfect, but rather need only be reasonable." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). Except as described above, DOJ's search was reasonable. Thus, the ACLU's motion for summary judgment is granted in part as to the scope of the search conducted under Part 3, and denied in part as to the remainder of the search protocol.

### b. *Vaughn* Submissions

When an agency withholds records in a FOIA case, the district court must "determine the matter *de novo*, and may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ." 5 U.S.C. § 552(a)(4)(B). In such a case, "the burden is on the agency to sustain its action." *Id.*

In 1973, in *Vaughn v. Rosen*, the D.C. Circuit held that in order to assure "that allegations of exempt status are adequately justified . . . courts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments." 484 F.2d 820, 826 (D.C. Cir. 1973). Thus, when invoking a FOIA exemption, agencies submit a "*Vaughn* index"—a list of withheld documents and claimed exemptions—and a "*Vaughn* affidavit," describing the documents and the agency's rationale for withholding them. Requiring such submissions serves three goals:

> (1) it forces the government to analyze carefully any material withheld,
> (2) it enables the trial court to fulfill its duty of ruling on the
> applicability of the exemption, (3) and it enables the adversary system
> to operate by giving the requester as much information as possible, on
> the basis of which he can present his case to the trial court.

*Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999). *Vaughn* submissions are meant to "facilitate the task of asserting and adjudicating the requester's challenges to the Government's claims of exemption" by "giv[ing] the court and the challenging party a measure of access without exposing the withheld information." *New York Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 439 (2d Cir.) *supplemented,* 762 F.3d 233 (2d Cir. 2014).

"Summary judgment is warranted on the basis of [*Vaughn*] affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592

F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks and citations omitted)).  "[W]hat constitutes a 'reasonable' level of specificity [in a *Vaughn* affidavit] varies depending on the particular context," and specifically, which exemption is being invoked.  *Halpern*, 181 F.3d at 297 (finding level of specificity insufficient to invoke Exemption 1, but sufficient to invoke Exemption 7(C)).  *Vaughn* affidavits are insufficient where "the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  *Quinon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996).

Here, DOJ invoked three privileges under FOIA's Exemption 5:  the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege.  The key to determining whether an exemption has been properly invoked with regard to particular documents is "an understanding of the function the documents serve within the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)).  In its *Vaughn* submissions, DOJ provided very little information about the function of the withheld documents or the process of which they were a part.  The *Vaughn* index is vague and conclusory, and the accompanying affidavit does little to fill in the gaps.  *See* Bradley Decl., Dkt. No. 19, at ¶¶ 17-18, 20, 22, Exhibit 1.  The Court could not conclusively conclude, based on DOJ's *Vaughn* index and accompanying affidavits alone, that the documents in question were appropriately withheld under Exemption 5.  Thus, the Court ordered DOJ to produce the documents for *in camera* inspection before ruling on the applicability of the exemption.[2]

---

[2] The D.C. Circuit has outlined four situations where *in camera* review is appropriate:  (1)  "if the affidavits submitted by the parties are conclusory—if the documents and justifications for withholding are not described in sufficient detail to demonstrate that the claimed exemption applies—*in camera* review may be necessary to allow meaningful *de novo* review"; (2)  "if there is evidence of agency bad faith—for example, if information contained in agency affidavits is contradicted by other evidence in the record—then, *in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information"; (3)  "when the requested documents 'are few in number and of short length,' *in camera* review may save time and money"; and (4)  "[w]hen the dispute turns on the actual contents of the documents," as opposed to "when the dispute centers not on the information contained in the documents but on the parties' differing interpretations as to whether the exemption applies to such information."  *Carter v. U.S. Dep't of*

### c.  Applicability of Exemption 5 to Withheld Documents

After reviewing the five withheld documents *in camera*, the Court agrees with DOJ that they may be withheld under Exemption 5.

Document 1 is a memo from the Office of the Solicitor General and Document 2 is a memo from the National Security Division, each of which, according to the *Vaughn* index, "[a]ddresses questions regarding notice obligations under [FISA and the FAA]."  *See* Bradley Decl., Dkt. No. 19, Exhibit 1.  The memos' authors—which are not disclosed in the *Vaughn* index, nor in the documents themselves—make legal recommendations and discuss a broader, ongoing deliberative process regarding the government's FISA and FAA notice obligations.  As such, these memos are both predecisional and deliberative, and thus are exempt from disclosure under the deliberative process privilege.  Because each memo discusses particular cases, it also falls within the attorney work product privilege and may be withheld on that ground as well.

Document 3 is entitled "Summary of July 17, 2013 Meeting Concerning Interpretation of 'FISA-Derived' and Notice of Use of FISA Title VII Information in FISA Suppression Litigation."  *See Vaughn* Index, Dkt. No. 19, Exhibit 1.  This memo summarizes the discussions that took place during a predecisional, deliberative meeting.  As such, it goes to the core of what the deliberative process privilege is designed to protect, and its disclosure would lead to exactly the type of "fishbowl" scenario that Congress and the courts have warned against.  *See, e.g., EPA v. Mink,* 410 U.S. 73, 87 (1973) ("[E]fficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'") (quoting S. Rep. No. 813, at 9); *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) ("[T]he quality of administrative decision-making would be seriously undermined if agencies

---

*Commerce,* 830 F.2d 388, 392-93 (D.C. Cir. 1987).  Although the Court finds no evidence of bad faith, the three other situations are present here.

were forced to operate in a fishbowl."). Although the memo describes some conclusions, it also describes open questions and plans for further action and discussion; it does not describe final agency decisions made or implemented. The Court finds that Document 3 is both predecisional and deliberative, and thus it is exempt from disclosure under the deliberative process privilege. As with Documents 1 and 2, to the extent Document 3 discusses particular cases, it also falls within the attorney work product privilege and may be withheld on that ground.

Documents 4 and 5 are memos from the Terrorism and National Security Subcommittee of the Attorney General's Advisory Committee and the National Security Division, respectively. Neither is a policy document. Each consists of straightforward legal analysis of potential future actions that DOJ might—or might not—take, and is thus both predecisional and deliberative. Both documents may be withheld under the deliberative process privilege.

### d. Inapplicability of Exceptions to Exemption 5

The ACLU argues that these documents fall under one of the exceptions to Exemption 5 because they were either expressly adopted by DOJ or they constitute DOJ's "working law" on this issue.[3]

Adoption occurs when "the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public." *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012) (internal citations and alterations omitted). But although adoption may be informal, it must be express. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975) (document is excepted from Exemption 5 when "an agency chooses *expressly* to adopt or incorporate [it] by reference" (emphasis added)). In

---

[3] The government argues in its' opposition and reply papers that the ACLU abandoned the adoption argument by relying too heavily on the working law argument. *See* Government's Memorandum in Opposition, Dkt. No. 26, at 3 n.2. Because the Court finds that neither the adoption nor working law doctrines are applicable here, it need not address the government's contention.

*Nat'l Council of La Raza v. Dep't of Justice*, the Second Circuit found that "repeated references . . . by the Attorney General and his high-ranking advisors, the substance of their comments, and the way in which their comments were used—that is, to assure third parties as to the legality of the actions the third parties were being urged to take" amounted to express adoption of a memo that otherwise would have fallen under Exemption 5.  411 F.3d 350, 357 (2d Cir. 2005).  In that case, the Circuit found it "clear that the Attorney General and his high-level staff made a practice of using the [memo] to justify and explain the Department's policy and to assure the public . . . that the policy was legally sound." *Id.* at 358.  The Circuit distinguished that situation from cases "where an agency has only casually referred to a document, because a casual reference to a privileged document does not necessarily imply that an agency agrees with the reasoning contained in those documents." *Id.* at 359 (citing *Tigue v. Dep't of Justice*, 312 F.3d 70, 81 (2d Cir. 2005); *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1197 (D.C. Cir. 1991)).

     None of the documents at issue here have been expressly adopted by DOJ or incorporated by reference in any final policy statements.  As the ACLU points out, anonymous sources have provided information to reporters, including references to the views of the Solicitor General and the internal debates at DOJ.  *See* Toomey Decl., Dkt. No. 25, Exhibits A-G.  But this is a far cry from *La Raza*: there are no statements by the Attorney General or other high-level DOJ officials specifically referencing particular documents, and certainly none expressly relying on the reasoning put forth in a particular document.  "[T]here must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." *La Raza*, 411 F.3d at 359 (emphasis in original).  There is no such evidence here.

     A document may be classified as working law when it "is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy." *Brennan Ctr.*, 697 F.3d at 195 (internal citations and alterations omitted).  None of the documents at issue here

embody the agency's effective law and policy; in fact, each recommends possible steps to be taken before a final policy would be formulated and then, only later, possibly implemented.  Documents 1 and 4 were identified in the search of the United States Attorney's Office in Oregon,[4] but this one data point is insufficient to show that either document was relied upon within DOJ as working law.

The Court agrees with the ACLU that "the question is not about a given document's *label*, but whether its reasoning or conclusions have become the agency's operative view of its legal duties."  ACLU's Reply Memorandum, Dkt. No. 29, at 4 (emphasis in original).  But having viewed the documents *in camera*, there is no indication that any of the documents have become DOJ's effective law and policy.  It may be that there *is* no final, written policy document of the kind the ACLU seeks.  In fact, DOJ has said as much in its submissions:

> The Department has for some time considered producing a guidance document for Department prosecutors to address certain issues concerning what information could be considered to be 'derived from' electronic surveillance under FISA, such that notice to an aggrieved person of the use of such information in a proceeding may be required. That guidance has not been completed and finalized.  Drafts of such guidance exist, as well as documents commenting on the drafts, but the Department continues to deliberate as to the final form and content of the guidance document, in the event a decision is made to issue it.

Wiegmann Decl., Dkt. No. 28, at ¶ 6.  But FOIA does not require that agencies *create* documents, "[i]t only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create."  *Sears*, 421 U.S. at 162.  If DOJ decides *not* to create a document outlining its effective law and policy on this issue, that decision does not automatically convert an earlier, predecisional, deliberative document into "working law."

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt

---

[4] *See* Bradley Decl., Dkt. No. 19, at ¶ 26; Toomey Decl., Dkt. No. 25, at ¶ 14.

under this subsection." 5 U.S.C. § 552(b).  After *in camera* review of the documents, the Court finds there are no reasonably segregable portions of any of the withheld documents that either:  (a) do not qualify for withholding under Exemption 5; or (b) are subject to an exception because the material has been adopted or used as working law.  Thus, DOJ is not required to disclose redacted versions of any of the withheld documents.

## V.     CONCLUSION

The ACLU's motion for summary judgment based on the scope of DOJ's search is GRANTED IN PART as described above.  The Court orders DOJ to conduct a new search for the documents requested in Part 3, without limiting that search to "governing" documents, and to release any responsive records that do not fall under a FOIA exemption.  To the extent that the ACLU's motion challenges other aspects of DOJ's search, it is DENIED IN PART.  The government's motion for summary judgment based on the applicability of Exemption 5 to the documents listed in the government's *Vaughn* index is GRANTED.  The ACLU's cross-motion on that issue is DENIED.

The Clerk of Court is directed to terminate the motions pending at docket numbers 17 and 23 and to close this case.

SO ORDERED.

Dated:  March 3, 2015
        New York, New York

_____
GREGORY H. WOODS
United States District Judge

20