UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | **Oral Argument Requested**<br><br><br><br>13 Civ. 7347 (GHW) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Arthur N. Eisenberg
New York Civil Liberties Union
    Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Patrick Toomey
Jameel Jaffer
Alex Abdo
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

*Counsel for Plaintiffs*

**Table of Contents**

Table of Authorities ................................................................................................................... ii

Introduction ..................................................................................................................................1

I.      The government has committed its legal and policy determination to writing ....................1

II.     The documents contain the government's working law .......................................................3

III.    The documents are not privileged ........................................................................................7

IV.    The Court should permit Plaintiffs limited discovery and should then review the documents *in camera* .................................................................................................9

Conclusion ..................................................................................................................................10

# Table of Authorities

**Cases**

*ACLU v. DOJ*,
   90 F. Supp. 3d 201 (S.D.N.Y. 2015) ............................................................................... 5, 7

*Afshar v. Dep't of State*,
   702 F.2d 1125 (D.C. Cir. 1983) ......................................................................................... 4

*Brennan Ctr. for Justice v. DOJ*,
   697 F.3d 184 (2d Cir. 2012) ................................................................................... 1, 4, 5, 8

*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994) ................................................................................................. 9

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .............................................................................. 4, 5, 6, 8

*Fed. Open Mkt. Comm. v. Merrill*,
   443 U.S. 340 (1979) ........................................................................................................... 8

*Fox News Network v. Dep't of Treasury*,
   678 F. Supp. 2d 162 (S.D.N.Y. 2009) ................................................................................ 4

*N.Y. Times v. DOJ*,
   2015 WL 5729976 (S.D.N.Y. Sept. 30, 2015) .................................................................... 8

*Nat'l Council of La Raza v. DOJ*,
   411 F.3d 350 (2d Cir. 2005) ............................................................................................... 8

*Nat'l Day Laborer Org. Network v. ICE*,
   811 F. Supp. 2d 713 (S.D.N.Y. 2011) ........................................................................ 4, 5, 6

*Nat'l Immigration Project v. DHS*,
   868 F. Supp. 2d 284 (S.D.N.Y. 2012) ................................................................................ 6

*NLRB v. Sears, Roebuck, & Co.*,
   421 U.S. 132 (1975) ................................................................................................... 3, 5, 8

*Porter v. DOJ*,
   717 F.2d 787 (3d Cir. 1983) ............................................................................................... 9

*Pub. Citizen v. OMB*,
   598 F.3d 865 (D.C. Cir. 2010) ....................................................................................... 5, 6

*Ruotolo v. DOJ*,
  53 F.3d 4 (2d Cir. 1995) .................................................................................................... 9

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) .................................................................................. 4, 6, 7

*United States v. Adlman*,
  68 F.3d 1495 (2d Cir. 1995) .............................................................................................. 7

**Statutes**

5 U.S.C. § 552 ........................................................................................................................ 6

50 U.S.C. § 1806 .................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................... 9

Fed. R. Civ. P. 56 ................................................................................................................... 9

**Introduction**

The government distorts the working-law doctrine when it says it can reach a legal determination, write it down repeatedly, apply it in numerous cases, and then shield it behind a never-ending "deliberative" process or other overbroad assertions of privilege. The working-law doctrine exists to prevent agencies from engaging in exactly this type of gamesmanship. Plaintiffs have shown that some of the documents plainly reflect DOJ's "effective law and policy." Plaintiffs respectfully request that the Court permit limited discovery to establish how the documents have been relied upon by decision-makers and other agency attorneys; and that the Court, with the benefit of this information, conduct its own *in camera* review.

**I.     The government has committed its legal and policy determination to writing.**

DOJ has identified more than 80 legal memoranda addressing its obligation to give notice of FISA surveillance—documents that span nearly a decade. It asserts, however, that "none of them" reflect the working law DOJ actually applies when deciding whether it must give notice of surveillance to criminal defendants. Gov't Opp. 1. DOJ has not provided evidence that this claim is true, as is its burden under FOIA. *See Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 195 n.7 (2d Cir. 2012). Rather, it offers the Court only conclusory denials. It observes that the mere fact that high-level officials made a determination about the government's legal obligations does not mean the agency committed its legal interpretation to writing. Gov't Opp. 3. Though that proposition may be true in the abstract, it has no credibility here, when set against DOJ's own public statements, the record concerning its decision to implement a new notice policy, and the dozens of *written* documents DOJ created on the heels of that decision.

DOJ has acknowledged that it made a pivotal decision about its notice obligations in late 2013, after it emerged publicly that DOJ attorneys were not providing the notice required by law. In particular, the record establishes that:

1

- **Prior to July 2013, DOJ had a policy and practice of withholding notice from criminal defendants**. Beginning with the FAA's passage in 2008, DOJ failed to provide notice of FAA surveillance to any defendant for five years. During this time, NSD lawyers reportedly concluded that they had no duty to provide notice of evidence "derived from" FAA surveillance and took other steps to avoid giving notice.[1]

- **In the summer of 2013, DOJ reassessed its notice policy in response to public outcry**. Following the Solicitor General's representations to the Supreme Court in *Clapper v. Amnesty Int'l*, criminal defendants and news reports began to question DOJ's notice policy. On July 17, 2013, high-level officials met to address DOJ's notice obligations and they reached certain "conclusions." *See* Pl. Br. 9. Multiple outlets later reported that the Solicitor General had insisted notice was legally required and that his arguments "won out."[2]

- **After July 2013, DOJ implemented its decision—by conducting a review of criminal cases, providing notice to defendants, and describing its decision to courts and Congress**. On October 26, 2013, DOJ provided notice of FAA surveillance to a defendant for the first time. In November 2013, the Attorney General stated that DOJ was conducting a "review" of criminal cases to identify those in which DOJ attorneys should have given notice but did not.[3] And beginning in February 2014, DOJ publicly described its "determination" to multiple courts and Congress.

Based on these events, there is no question that DOJ has accepted a controlling view of its duty to give notice. Indeed, in its effort to reassure Congress and courts that it had remedied its prior failure to give notice, DOJ described its decision-making process: "DOJ *recently reviewed* the particular question . . . . The Department *has concluded* that. . . . The Department *has therefore determined* that . . . ."[4]

DOJ now claims that its controlling legal interpretation was never written down, or at least not written down in a form that must be disclosed under FOIA. Gov't Opp. 1. Both claims are wrong. It is obvious that DOJ committed its controlling legal interpretation to writing. At least 30 of the DOJ memoranda described on its Vaughn indices were created *after* DOJ made its "determination" and provided notice of FAA surveillance for the first time in October 2013. *See*

---

[1] *See* Savage Article I (Third Toomey Decl., Ex. B).

[2] Barnes & Nakashima Article (Third Toomey Decl., Ex. J); Liptak Article (Third Toomey Decl., Ex. A).

[3] Horwitz Article (Third Toomey Decl., Ex. E).

[4] *See, e.g.*, Additional Prehearing Questions for John Carlin Upon His Nomination to be Ass't Att'y Gen. for Nat'l Sec., DOJ at 9-10, bit.ly/1NtnUc8; *Mohamud* Disc. Br. 7 & n.3 (Third Toomey Decl., Ex. H).

Pl. Br. 10–11 (identifying documents); Third Toomey Decl., Ex. G. Unsurprisingly, many of the memoranda bear titles that closely track the determination that DOJ told Congress and the courts it had made.[5] Moreover, DOJ has applied its controlling legal interpretation in the comprehensive review of criminal cases announced by the Attorney General. *See* Horwitz Article. Nonetheless, DOJ seeks to avoid disclosure by insisting that virtually all of the documents are part of an ongoing deliberative process—one that stretches back nearly a decade, and (purportedly) has had no bearing on DOJ's decisions about whether to provide notice in hundreds of cases. *See* Third Bradley Decl. 4 n.2; NSD Index (documents dating to 2006).[6] This is simply implausible: there is no real question that the memos at issue reflect DOJ's working law. And, as explained further below, DOJ cannot withhold its operative rules and interpretations simply by labeling the memos "drafts" or "non-binding" in perpetuity.

## II.     The documents contain the government's working law.

The working-law doctrine is intended to address cases precisely like this: where an agency makes a legal and policy decision and applies it in actual cases, yet seeks to withhold from the public records reflecting the agency's reasoning and conclusions. Recognizing that agencies might skirt their affirmative obligations under FOIA by calling their rules something less than "final" or "binding," the doctrine requires "disclosure of *all* 'opinions and interpretations' which embody the agency's effective law and policy." *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 152–53 (1975) (emphasis added). To determine whether a document contains working law, a court must assess—based on the factual context—whether the

---

[5] For instance, one widely circulated memorandum is addressed to "All Federal Prosecutors" and titled "Determining Whether Evidence Is 'Derived From' Surveillance Under Title III or FISA." EOUSA Doc. 18 & 33; NSD Doc. 12. Another is from the Attorney General and titled, "Policy on the Use or Disclosure of FAA Information." EOUSA Doc. 27.

[6] This pattern has spread to other agencies. The Treasury Department also claims it has only "draft" legal interpretations of its duty to give notice. Smith Decl. ¶ 7; Savage Article III (Third Toomey Decl., Ex. K).

3

interpretation contained in the document is that of the agency or, by contrast, is solely that of its author. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

Courts look to many factors to determine whether a given document reflects an agency's "effective law and policy" or is instead deliberative. Among other things, they examine the agency's decision-making process in relation to the documents. *See id.*; *Nat'l Day Laborer Org. Network v. ICE*, 811 F. Supp. 2d 713, 741–43 (S.D.N.Y. 2011). They consider information about whether the agency accepted a controlling interpretation. *See Brennan*, 697 F.3d at 202–05. They consider whether a document is addressed from high-level decision-makers to lower-level personnel. *See Coastal States*, 617 F.2d at 868. And they examine who received the documents, what their roles were, and how those personnel used the materials when deciding individual cases. *See Tax Analysts v. IRS*, 117 F.3d 607, 617–18 (D.C. Cir. 1997). Critically, courts do not defer to blanket assertions by the agency that documents are "non-binding" or "drafts" and are thus exempt. *See, e.g.*, *id*. at 617 ("The legal conclusions the Office of Chief Counsel provides to field personnel constitute agency law, even if those conclusions are not formally binding."); *Fox News Network v. Dep't of Treasury*, 678 F. Supp. 2d 162, 168 (S.D.N.Y. 2009).

In its effort to avoid disclosure, DOJ misstates the requirements of working law. DOJ seems to believe that the working law doctrine applies to essentially one kind of document: those that an agency distributes as "binding" or "precedential" authority. Gov't Opp. 1. This formalistic test is wrong. It is not the *documents* themselves that must have operative effect; it is the *policies*, *rules*, or *interpretations* reflected in the documents that must be operative. *See, e.g.*, *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (working law consists of "those policies or rules, and the interpretations thereof, that 'either create or determine the extent of the substantive rights and liabilities of a person.'"); *Public Citizen v. OMB*, 598 F.3d 865, 875 (D.C.

4

Cir. 2010) ("Documents *reflecting* OMB's formal or informal policy" must be disclosed) (emphasis added). That is, the interpretation reflected in the document must be the agency's interpretation.[7] *See Sears*, 421 U.S. at 152–53; *Brennan*, 697 F.3d at 195–96, 201 (noting that the document need not reflect the agency's "final *programmatic* decisions"). As the Court has already held, "the question is not about a given document's label, but whether its reasoning or conclusions have become the agency's operative view of its legal duties." *ACLU v. DOJ*, 90 F. Supp. 3d 201, 218 (S.D.N.Y. 2015).[8]

This principle is grounded in the purposes of FOIA. The public's interest in disclosure derives from the fact that a rule has been accepted or is being applied by the agency; it does not depend on the form of the document. As the Supreme Court observed, "the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, *if expressed within the agency*, constitute the 'working law' of the agency." *Sears*, 421 U.S. at 152–53 (emphasis added). The doctrine thus ensures that agencies do not subvert FOIA's affirmative disclosure requirements by using labels or informality to hide their rules and reasoning from the public. *See Coastal States*, 617 F.2d at 867 ("[A]n agency will not be permitted to develop a body of 'secret law' . . . hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.' ").[9]

Indeed, contrary to DOJ's suggestion, the working-law doctrine is principally concerned

---

[7] Portions of documents that contain an agency's interpretations may be segregated from those portions that remain protected. *See, e.g.*, *Nat'l Day Laborer*, 811 F. Supp. 2d at 741–43, 748–62.

[8] DOJ acknowledges that the Attorney General Memorandum, NSD Doc. 10, contains "interpretations of law critical to the Department's legal analysis on how to determine when information is derived from FISA." Brinkmann Decl. ¶ 17. The government seeks to escape the conclusion that this document is plainly working law by arguing that DOJ's *own* interpretations of law are not binding on DOJ itself. Gov't Opp. 3–4. In so doing, the government misreads *Brennan*, which held that legal advice from OLC to *other* agencies was not automatically binding. *Brennan* makes clear that legal analysis an agency has accepted as its own—like the "critical" interpretations here—must be disclosed. 697 F.3d at 199–200.

[9] This concern is not hypothetical, given the efforts of agencies—including DOJ—to circumvent FOIA. *See* Pl. Br. 8 n.12.

with "draft," "informal," and "non-binding" documents—precisely because "final" agency opinions must already be released under FOIA's affirmative disclosure provisions. 5 U.S.C. § 552(a). The cases bear this out. *See Coastal States*, 617 F.2d at 867, *Tax Analysts*, 117 F.3d at 609; *Pub. Citizen*, 598 F.3d 874–75.[10] Moreover, DOJ's theory "would have the absurd effect of giving the agencies greater protection against FOIA disclosure when they expound their working laws haphazardly than when they follow written directives." *Nat'l Immigration Project v. DHS*, 868 F. Supp. 2d 284, 294 (S.D.N.Y. 2012).

In short, there is no formalistic limit on what kinds of documents may contain working law. As the cases emphasize, the analysis is always based on context and the surrounding facts. *See, e.g.*, *Tax Analysts*, 117 F.3d at 609, 617. In some ways, however, the Court's task is easier in this case than in others, because DOJ has already announced that it made a determination and has described the overall contours of that decision. *Cf. Pub. Citizen*, 598 F.3d at 875. The question is which documents have *become* working law because they express the reasoning or conclusions that DOJ accepted when it made its decision in 2013, and which of the documents created afterwards contain the working law DOJ has been applying since. Plaintiffs have identified documents especially likely to contain those interpretations. Pl. Br. 10–11.

The denials that DOJ has put forward are insufficient to overcome the considerable public record before the Court. It is plain that DOJ relied on extensive legal analysis in reaching its determination and that DOJ itself believed its attorneys needed written guidance.[11] The documents need not have been distributed to staff to qualify as working law, so long as they

---

[10] For instance, courts have held that emails must be disclosed when they describe existing policies, even though few agencies would call emails "binding." *See Nat'l Day Laborer*, 811 F. Supp. 2d at 741–43.

[11] Among other things, the July 17, 2013 Post-Meeting Memo—which this Court previously reviewed *in camera*—described DOJ's plan for "finalizing" its "FISA-Derived Guidance." NSD Index (First Bradley Decl. (ECF No. 19)). DOJ acknowledges that it has such guidance but, two and a half years later, claims that guidance exists only in "draft" form. *See, e.g.*, EOUSA Docs. 18, 33, 15; NSD Docs. 12, 21, 26.

6

contain the reasoning or conclusions accepted by agency decision-makers. But DOJ does not actually deny that the documents were distributed widely within the Department.[12] DOJ makes only the carefully calibrated statement that they were not distributed as "binding or precedential" guidance. Gov't Opp. 1. DOJ's conclusory denials are indistinguishable from those of any agency in any working-law case, and they are indistinguishable from those the Court rejected last time. *See, e.g.*, *Tax Analysts*, 117 F.3d at 609 (D.C. Cir. 1997) ("The IRS tells us that FSAs are not formally binding on IRS field personnel."); *ACLU*, 90 F. Supp. 3d at 215–16.

### III.     The documents are not privileged.

If the documents contain DOJ's working law, they must be disclosed regardless of any asserted privilege. *See* Pl. Br. 7–8. But even setting the working-law doctrine aside, the documents are not privileged. Despite multiple chances, DOJ has failed to provide the detailed, factual showing required to carry its burden under FOIA. *See id.* at 13–14.

The documents are not work product because they are not tied to a specific case or claim. *See id.* at 16–19. They are, as DOJ makes clear, documents that address an overarching question of DOJ law and policy—its duty to give notice in criminal cases. Third Bradley Decl. ¶ 19. Congress imposed that duty independent of any claim by a defendant. 50 U.S.C. § 1806(c). DOJ contends that all of the documents analyzing the notice requirement are work product simply because it applies in legal proceedings. Gov't Opp. 12; Third Bradley Decl. ¶ 13 (asserting work-product privilege over every document at issue). But none of DOJ's cases stand for such a broad proposition, and "straightforward legal analysis" of the government's obligations—divorced from the particulars of a given case—is not entitled to work-product protection. *ACLU*, 90 F. Supp. 3d at 217; *see United States v. Adlman*, 68 F.3d 1495, 1502 (2d Cir. 1995) (document must

---

[12] DOJ claims that it "may not be possible" for it to determine who received the documents, when it is clear that they were routinely distributed by email. Gov't Opp. 10; *see* Third Bradley Decl. ¶ 5.

7

address imminent, "actionable facts" to merit work-product protection); *Coastal States*, 617 F.2d at 865 ("[I]f an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.").[13]

DOJ's claim that working law does not overcome the work-product privilege misreads *Sears* and ignores the reasoning of the Second Circuit cases that have followed. Gov't Opp. 13–14. *Sears* itself held that documents containing the agency's working law—appeals and advice memoranda representing a "final" disposition—had to be disclosed over the government's invocation of the work-product privilege. 421 U.S. at 155; *see* Pet. Br. 22, *id*. By contrast, the Supreme Court did not view memoranda recommending litigation as sufficiently final, and thus the privilege applied. *Id.* at 160. Moreover, it is well settled in the Second Circuit that the adoption doctrine (closely tied to the working-law doctrine) overcomes the attorney-client privilege (which is similar to the work-product privilege). *See Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 360 (2d Cir. 2005); *see also N.Y. Times v. DOJ*, 2015 WL 5729976, at *8 (S.D.N.Y. Sept. 30, 2015) (holding that adoption overcomes work-product claim).[14]

NSD does not seriously seek to defend its assertion of attorney-client privilege, and EOUSA does not assert the privilege at all, even though it possesses many of the same documents. Gov't Opp. 15. The distinction NSD now offers the Court—that NSD's function placed it in a different role—does not support its blanket claim to privilege. NSD itself includes numerous attorneys who apply DOJ's notice obligation in individual cases, and who may have

---

[13] Notably, the Treasury Department does not assert work-product protection over the memorandum that it prepared on FISA's notice requirement, NSD Doc. 29, even though DOJ apparently does. *Compare* Smith Decl., *with* NSD Index. That is, Treasury does not claim that the memorandum was prepared in anticipation of litigation at all—almost certainly because, like many of the other documents, the memorandum contains only policy-level legal analysis.

[14] The Second Circuit in *Brennan*, 697 F.3d at 208, rejected an argument similar to the one DOJ makes here in reliance on dicta in *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360 n.23 (1979).

8

contributed to the documents or received and relied on them in the same way as prosecutors in the U.S. Attorney's Offices. Ultimately, NSD simply argues that the privilege extends to each and every document because its declarant says so. *See id.*

## IV. The Court should permit Plaintiffs limited discovery and should then review the documents *in camera*.

If the Court concludes that summary judgment is not warranted, Plaintiffs are entitled to discovery because they have put forward compelling evidence—and far more than a *prima facie* case—that the documents contain DOJ's working law. The Court should permit Plaintiffs the limited discovery they have requested and should, with the benefit of that information, review the documents *in camera*. *See* Pl. Br. 21–25.

Discovery is rare in FOIA cases, but this case represents the exception. The Second Circuit has been clear that discovery should be permitted in appropriate cases, *see Ruotolo v. DOJ*, 53 F.3d 4, 11 (2d Cir. 1995); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994), and it is especially appropriate when agency affidavits conflict with other information in the record. *See id.* (citing examples); *Porter v. DOJ*, 717 F.2d 787, 793 (3d Cir. 1983).

Plaintiffs have made that showing here. They have shown that DOJ discarded one controlling interpretation in favor of another, created numerous documents setting out its interpretation, and broadly applied its decision in numerous cases.[15] *See* Section I *supra*; Pl. Br. 2–3, 10-13. The government has responded with only conclusory denials that are either inconsistent with these facts or are carefully qualified by its own labels.

DOJ repeatedly criticizes Plaintiffs for not providing even more information, but it is DOJ that bears the burden of establishing that the documents are exempt and is, of course,

---

[15] The government says that Plaintiffs rely "entirely" on hearsay, Gov't Opp. 16, but Plaintiffs have pointed to DOJ's own statements to Congress, courts, and the public, in addition to numerous reports that provide a consistent description of DOJ's policy reversal. Moreover, DOJ is wrong that the hearsay rule limits the information a party may offer in support of a request for discovery. Fed. R. Civ. P. 26(b), 56(d).

9

uniquely positioned to provide the Court with the information it needs. DOJ could readily explain how its decision-making proceeded in late 2013, what documents officials relied on, who participated in DOJ's review of criminal cases, and what written guidance has been provided to those attorneys or others. It should be compelled to provide this information through discovery.

Discovery is particularly important here, because it will provide information that is not apparent on the face of the documents. With the benefit of this information, the Court can review the documents *in camera*. Among other things, it can examine the documents that were created *after* DOJ's policy reversal and, with DOJ's public statements as a guide, identify those that explain its determination.[16] *See* Pl. Br. 10–11 (identifying post-July 2013 documents).

Finally, DOJ's search was inadequate. DOJ provides no evidence that it searched the files of agency employees who conducted the review of criminal cases described by the Attorney General—that is, the employees who were charged with applying DOJ's new notice policy. Similarly, if DOJ excluded from its search written direction describing or applying its new legal determination, including correspondence that DOJ has unilaterally labeled "non-binding" or "informal," those documents are responsive to Plaintiffs' Request and must be disclosed.

## Conclusion

For these reasons, Plaintiffs' motion should be granted and DOJ's motion denied.

---

[16] DOJ described its determination to Congress in these terms:

> DOJ recently reviewed the particular question of whether and under what circumstances information obtained through surveillance under Title I of FISA or physical search under Title III of FISA could also be considered derived from surveillance under Title VII of FISA (the FISA Amendments Act). *The Department has concluded that the term "obtained or derived from" incorporates legal principles similar to those applied under the Fourth Amendment's "fruit of the poisonous tree" doctrine and Title III of the Wiretap Act*. The Department has therefore determined that, consistent with practice under the Wiretap Act, information obtained or derived from Title I FISA collection may, in particular cases, also be derived from prior Title VII FISA collection.

*See* note 4 *supra* (emphasis added).

Dated: January 29, 2016
      New York, New York

Respectfully submitted,

*/s/ Patrick Toomey*
Patrick Toomey (PT-1452)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

Arthur N. Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

*Counsel for Plaintiffs*