UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>AMERICAN CIVIL LIBERTIES UNION, <em>et uno</em>,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>1:13-cv-7347-GHW</td></tr>
<tr><td>Plaintiffs,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>MEMORANDUM OPINION</td></tr>
<tr><td>-against-</td><td>:</td><td>AND ORDER</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>UNITED STATES DEPARTMENT OF JUSTICE,</td><td>:</td><td></td></tr>
<tr><td>Defendant.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
</table>

--------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Before the Court is the second round of cross-motions for summary judgment in this Freedom of Information Act ("FOIA") dispute between the American Civil Liberties Union ("ACLU") and the United States Department of Justice ("DOJ") that began with a March 29, 2013 request for records from DOJ pertaining to DOJ's policy on giving notice to criminal defendants and others against whom it intends to use evidence derived from warrantless surveillance. *See* Complaint, Dkt. No. 1, ¶ 18. The Court must now rule on the adequacy of certain searches performed by DOJ for responsive records, as well as the applicability of FOIA's Exemption 5 to approximately 80 responsive documents withheld by DOJ. For the reasons that follow, the Court concludes that DOJ is entitled to summary judgment on the adequacy of its searches. The Court also concludes that with one exception, documents withheld by the DOJ National Security Division ("NSD") have been properly withheld pursuant to the work product privilege, and that the Executive Office for U.S. Attorneys ("EOUSA") should be granted a further opportunity to

substantiate its claims of work product protection over the documents it has withheld.  The parties'

cross-motions for summary judgment are therefore each GRANTED IN PART and DENIED IN

PART.

## II.    BACKGROUND

The ACLU's FOIA request seeks:

(1) The case name, docket number, and court of all legal proceedings, including criminal prosecutions, current or past, in which the Department of Justice intends or intended to enter into evidence, or otherwise used or disclosed in any trial, hearing, or other proceeding, any information obtained or derived from electronic surveillance pursuant to the authority of the FAA;

(2) Policies, procedures, and practices governing the provision of notice to "aggrieved persons," as set forth in 50 U.S.C. § 1881e(a) and § 1806(c), of the government's intent to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding information obtained or derived from electronic surveillance pursuant to the authority of the FAA; and

(3) Legal memoranda or opinions addressing or interpreting the FAA's notice provision or requirements, as set forth in 50 U.S.C. § 1881e(a) and § 1806(c).

*Id.*

The ACLU filed this lawsuit on October 17, 2013, seeking an injunction requiring DOJ to

process its request, after DOJ failed to respond timely.  After the ACLU filed suit, NSD identified

five responsive documents, all of which of which it withheld under FOIA's Exemption 5.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C.

§ 552(b)(5).  The ACLU challenged both the adequacy of DOJ's search and the applicability of

Exemption 5 to the withheld documents, and the parties filed cross-motions for summary judgment

on these two issues.  *See* Dkt. Nos. 17, 23, 26, 29.

On March 3, 2015, the Court granted the ACLU's motion in part, finding that DOJ had

improperly limited its search under part 3 of the ACLU's request by reading the word "governing"

into the request where it had not been written, and ordered DOJ to conduct a new search without

the improperly-added limiting term and to release any responsive records not entitled to be withheld under a FOIA exemption. *See* Memorandum Opinion and Order, dated March 3, 2015, Dkt. No. 35, at 2 ("March 3 Order"). The Court denied the ACLU's motion in part to the extent that it sought summary judgment on the adequacy of the remaining aspects of the scope and conduct of DOJ's search. On the issue of whether Exemption 5 applied to the withheld documents, the Court, after reviewing the documents *in camera*, granted DOJ's motion for summary judgment. *Id.*

In compliance with the March 3 Order, NSD broadened its search for documents responsive to part 3 of the ACLU's request by "conduct[ing] another search for materials that were non-governing." Declaration of Mark A. Bradley, Dkt. No. 49, ¶ 4 ("Bradley Decl."). Before the previous round of motions for summary judgment, the parties had also agreed that EOUSA's search would be limited to the U.S. Attorneys' Offices ("USAOs") for the Districts of Oregon and Colorado. March 3 Order at 6. Following the March 3 Order, EOUSA searched for all records requested in parts 2 and 3 of the ACLU's request in the Southern District of California, the Southern District of Florida, the Northern District of Illinois, and the Eastern District of New York. Declaration of John Kornmeier, Dkt. No. 50, ¶ 8 ("Kornmeier Decl."); *see also* Declaration of Patrick Toomey, Dkt. No. 54, ¶ 5 (following the March 3 Order, "DOJ then conducted an expanded search, both within NSD and within EOUSA, including in the districts where the parties had previously agreed to defer searches."). For the remaining 88 USAOs, EOUSA limited its search to "any version of the 'FISA-derived guidance' and documents addressing that guidance." *Id.* ¶ 9. This round of cross-motions for summary judgment concerns the responses of NSD to part 3 of the ACLU's request and of EOUSA to parts 2 and 3.

On August 27, 2015, DOJ informed the Court by letter that "the government has provided plaintiffs with indexes of documents responsive to the FOIA request at issue in this action and withheld under FOIA's exemptions. No non-exempt documents were produced." Dkt. No. 43.

NSD has submitted an index of withheld documents containing 37 entries.  *See* NSD Index, Dkt. No. 49-1.  EOUSA has submitted an index of withheld documents containing 45 entries.  *See* EOUSA Index, Dkt. No. 50.  After the ACLU identified the withheld documents it intended to challenge, on November 23, 2015, DOJ filed a motion for summary judgment as to the adequacy of DOJ's searches and the applicability of FOIA exemptions to the withheld documents.  Dkt. No. 47.  On December 22, 2015, the ACLU filed a cross-motion for summary judgment and opposition to DOJ's motion.  Dkt. No. 53.  The ACLU is not challenging the withholding of NSD Doc. Nos. 8, 16, 17, 18, 20, and 25, nor the withholding of EOUSA Doc. Nos 11, 16, and 39.  ACLU Memo, Dkt. No. 53, at 5.

The ACLU asks the Court to order DOJ to release the documents that have served as DOJ's "working law" or, in the alternative, to permit the ACLU to conduct limited discovery to establish the extent to which the documents constitute working law which would need to be disclosed notwithstanding Exemption 5.  ACLU Memo at 2.  The ACLU requests that, if the Court declines to grant discovery, it direct DOJ "at a minimum, to supplement its inadequate declarations and Vaughn indices" with information that would enable to the ACLU to determine if any of the withheld documents constitute working law.  *Id.* at 24.  The ACLU also asks the Court to "[f]ind DOJ's search inadequate because it failed to identify the document that have provided operative guidance to personnel implementing DOJ's decision to give notice."  *Id.* at 25.

The primary point of contention between the parties, as presented in their cross-motions for summary judgment, concerns the applicability of FOIA Exemption 5 and the working law exception thereto.  As explained below, the Court holds—as it must under controlling Supreme Court precedent—that the working law doctrine cannot abrogate work product protection.  The Court further holds that DOJ has sufficiently demonstrated that the documents withheld by NSD constitute work product, with the exception of NSD Doc. No. 7, and that DOJ should be granted

an opportunity to provide additional support for its claims of work product for documents withheld by EOUSA and for NSD Doc. No 7.

### III.   LEGAL FRAMEWORK

In the March 3 Order, the Court discussed in detail the statutes relevant to this dispute, including the relevant provisions of FOIA, the Foreign Intelligence Surveillance Act and the FISA Amendments Act ("FAA"). The Court assumes familiarity with the March 3 Order.

#### a.   Summary Judgment Standard

A moving party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted). A party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of the non-moving party. *Id.* In resolving cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citations omitted).

### b. FOIA

"Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and internal quotation marks omitted). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Id.* FOIA also contains affirmative disclosure and indexing requirements, which provide that "[e]ach agency . . . shall make available for public inspection in an electronic format . . . final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . . those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register . . . [and] administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(A)-(C). "As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "These exemptions

are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S. Ct. at 1262; *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass.").

"It is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure.  The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 143 (2d Cir. 1994) (internal citation omitted).

### c.  *Vaughn* Submissions

When an agency withholds records in a FOIA case and a complaint challenges such withholding, the district court must "determine the matter *de novo*, and may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . ."  5 U.S.C. § 552(a)(4)(B).  In such a case, "the burden is on the agency to sustain its action."  *Id.*

In 1973, in *Vaughn v. Rosen*, the Court of Appeals for the D.C. Circuit held that in order to assure "that allegations of exempt status are adequately justified . . . courts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments."  484 F.2d 820, 826 (D.C. Cir. 1973).  Thus, when invoking a FOIA exemption, agencies submit a "*Vaughn* index"—a list of withheld documents and claimed exemptions—and a "*Vaughn* affidavit," describing the documents and the agency's rationale for withholding them.  Requiring such submissions serves three goals:

> (1) it forces the government to analyze carefully any material withheld,
> (2) it enables the trial court to fulfill its duty of ruling on the
> applicability of the exemption, (3) and it enables the adversary system
> to operate by giving the requester as much information as possible, on
> the basis of which he can present his case to the trial court.

*Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999) (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).  "The titles and descriptions of documents listed in a *Vaughn* index usually facilitate the task of asserting and adjudicating the requester's challenges to the Government's claims of exemption" by "giv[ing] the court and the challenging party a measure of access without exposing the withheld information."  *New York Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 439 (2d Cir.) *supplemented,* 762 F.3d 233 (2d Cir. 2014).

"Summary judgment is warranted on the basis of [*Vaughn*] affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks and citations omitted)).  "[W]hat constitutes a 'reasonable' level of specificity [in a *Vaughn* affidavit] varies depending on the particular context," and specifically, which exemption is being invoked.  *Halpern*, 181 F.3d at 297 (finding level of specificity insufficient to invoke Exemption 1, but sufficient to invoke Exemption 7(C)).  Affidavits submitted by an agency "'are accorded a presumption of good faith.'"  *Florez v. Central Intelligence Agency*, --- F.3d ---, 2016 WL 3769948, at *2 (2d Cir. July 14, 2016) (quoting *Center for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014)).  *Vaughn* submissions are insufficient where "the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  *Quinon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

### d.  Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the

agency . . . ."  5 U.S.C. § 552(b)(5); *see also Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979) ("Exemption 5 of the FOIA . . . provides that the affirmative disclosure provisions do not apply to 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.") (citing 5 U.S.C. § 552(b)(5)). "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine and . . . deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); *see also Sears*, 421 U.S. at 149 ("[I]t is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context."); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) ("Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5.") (citations and internal quotation marks omitted).

The attorney work-product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (citation omitted).  Documents "should be deemed prepared 'in anticipation of litigation' . . . if, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (citation omitted).  In adopting this formulation of the privilege, the Second Circuit expressly rejected a more limited formulation, which would protect only those documents prepared "primarily or exclusively to assist in litigation." *Id.* at 1199.

Of course not every document prepared by a government attorney constitutes work product. Indeed, "if an agency were entitled to withhold any document prepared by any person in the

Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980). The Court does not assume that any document generated within DOJ's various agencies is necessarily work product and therefore protected from disclosure under FOIA. However, "[w]hatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears*, 421 U.S. at 154.

The deliberative process privilege protects records that are: "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356 (quoting *Grand Cent. P'ship*, 166 F.3d at 482) (internal quotation marks omitted). Thus, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" fall under the deliberative process privilege, as do "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Grand Cent. P'ship*, 166 F.3d at 482.

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance," including "most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) (internal citations and alteration omitted) (quoting *In re Cnty. Of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).

### e.  Exceptions to Exemption 5

A document that may fit the criteria for withholding under Exemption 5 may nevertheless fall outside of Exemption 5 "if it closely resembles that which FOIA affirmatively requires to be

disclosed: 'final opinions . . . made in the adjudication of cases,' 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,' and 'administrative staff manuals and instructions to staff that affect a member of the public.'" *Brennan Ctr.*, 697 F.3d at 195 (quoting 5 U.S.C. § 552(a)(2)(A)-(C)).  The two long-recognized exceptions to Exemption 5 are:  (1) adoption, *i.e.*, "when the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public"; and (2) working law, *i.e.*, "when the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy."  *Id.* (internal citations and alterations omitted); *see also Sears*, 421 U.S. at 153 ("The affirmative portion of the Act, expressly requiring indexing of 'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public,' 5 U.S.C. § 552(a)(2), represents a strong congressional aversion to secret (agency) law and represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law.") (internal citation and quotation marks omitted).

## IV.    DISCUSSION

### a.  Adequacy of Search

DOJ has moved for summary judgment "regarding any issue relating to the searches." Gov't Memo, Dkt. No. 45, at 13.  Even though the ACLU requests summary judgment "[f]ind[ing] DOJ's search inadequate," ACLU Memo at 25, the Court notes that the ACLU has not presented substantive briefing on this point.  "[T]o establish the adequacy of a search, agency affidavits must be relatively detailed and nonconclusory, and submitted in good faith."  *Grand Cent. P'ship*, 166 F.3d at 489 (citation and internal quotation marks omitted).  "[A]n agency's search need not be perfect, but rather need only be reasonable" and the question is "whether the search was reasonably calculated to discover the requested documents."  *Id.*  Moreover, as noted above, affidavits

submitted by an agency are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812.

In broadening its search for records responsive to part 3 of the ACLU's request, NSD's FOIA staff met with NSD's Deputy Assistant Attorney General for Law and Policy and the Chief of the Office of Intelligence's Litigation Section, who then identified attorneys in their sections "responsible for drafting, editing, and maintaining records of the effort to draft the NSD policy on FISA use." Bradley Decl., Dkt. No. 49, ¶¶ 4-5.  DOJ attests that the Deputy Assistant Attorney General for Law and Policy and the Chief of the Office of Intelligence's Litigation Section are the "heads of the NSD components likely to possess responsive records" because the "Office of Law and Policy develops and implements Department of Justice policies with regard to intelligence, counterterrorism, and other national security matters and provides legal assistance and advice on matters of national security law" and that office "had worked on FISA litigation projects that may have addressed the subject of the request."  Gov't Memo at 5; Bradley Decl. ¶ 4.  Similarly, the "Litigation Section reviews and prepares requests for Attorney General authorization to use FISA information in criminal and non-criminal proceedings."  Bradley Decl. ¶ 4.  DOJ's affidavit states that NSD's FOIA staff "searched the electronic mail accounts" of the six attorneys involved in the effort to draft the NSD policy on FISA use after having learned that the "governing draft materials were preserved in their electronic mail accounts and were not located in any of their other files."  *Id.* ¶ 5.  The search covered the period from the passage of the FAA (July 10, 2008) to the date of the March 3 Order.  *Id.*

With respect to EOUSA's "full" searches in the four agreed-upon USAOs, each office's Anti-Terrorism Advisory Council Coordinator oversaw searches that applied the search terms "aggrieved," "1881(e)(a)," "FAA," and "702" to non-classified and classified electronic files. Kornmeier Decl. ¶¶ 14-16.  For the searches of the remaining 88 USAOs, those districts' Anti-Terrorism Advisory Council Coordinators "identified AUSAs involved in terrorism and national

security matters" and used various search terms to search their email files, relying upon the

"knowledge and experience" of the Coordinators as to "how best to implement the searches." *Id.*

¶¶ 17-22.

The Court finds that the scope and conduct of DOJ's searches, as described in DOJ's briefs

and accompanying affidavits, were adequate as to both NSD and EOUSA.  The affidavits submitted

by DOJ on behalf of NSD and EOUSA describe efforts which the Court finds were "reasonably

calculated to discover the requested documents." *Grand Cent. P'ship*, 166 F.3d at 489.  Accordingly,

DOJ's motion for summary judgment as to the adequacy of its searches is GRANTED.  The

ACLU's cross-motion on this issue is DENIED.

### b.  Applicability of Exemption 5 to Withheld Documents

In addition to other claims of privilege under Exemption 5, DOJ has claimed work product

protection over each of the documents withheld by NSD and EOUSA.  Gov't Memo at 17.  The

ACLU argues that the documents are not entitled to work product protection, and that even if they

are, they constitute agency working law which must be disclosed notwithstanding Exemption 5.

ACLU Memo at 6-20.

### i.  Relationship Between the Work Product Privilege and the Working Law Doctrine

It has been clearly established for nearly forty years that documents disclosable under FOIA

as agency working law may nevertheless be withheld if they are protected by the attorney work

product privilege.  This concept was first formulated by the Supreme Court in *Sears*.  In *Sears*, the

Supreme Court explained that the "reasons which did supply the basis for an agency policy actually

adopted" and "expressed within the agency" constitute the "working law" of the agency and thus

fall outside the protection of Exemption 5.  421 U.S. at 152-53.  The Court likened such documents

to those which must be affirmatively disclosed under FOIA—*i.e.*, "final opinions,' 'statements of

policy and interpretations which have been adopted by the agency,' and 'instructions to staff that

affect a member of the public'"—and held that such documents must be disclosed under FOIA in light of "an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *Id.* at 153 (citation and internal quotation marks omitted). The Court remarked that it would "be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U.S.C. § 552(a)(2)," which is FOIA's affirmative disclosure provision. The Court continued on to state, however, that "[i]t is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5." *Id.* at 154. The Court ultimately found that memoranda which had "real operative effect" and were therefore subject to FOIA's affirmative disclosure requirements were nevertheless exempt from disclosure because they contained attorney work product. *Id.* at 160.

Several years later, in *Merrill*, the Supreme Court resolved any questions as to whether the *Sears* Court had held that the work product privilege could shield from disclosure documents otherwise subject to FOIA's affirmative disclosure mandate. The *Merrill* Court stated that in *Sears*, the Supreme Court had held that "with respect to final opinions, Exemption 5 can never apply; with respect to other documents covered by 5 U.S.C. § 552(a)(2), [the Court] would be 'reluctant to hold that the Exemption 5 privilege would ever apply." 443 U.S. 340, 360 n.23. The Court explained, however, that "these observations were made in the course of a discussion of the privilege for predecisional communications. It should be obvious that the kind of mutually exclusive relationship between final opinions and statements of policy, on one hand, and predecisional communications, on the other, does not necessarily exist between final statements of policy and other Exemption 5 privileges" and noted that "[i]n this respect . . . *Sears* itself held that a memorandum subject to the affirmative disclosure requirement of § 552(a)(2) was nevertheless shielded from disclosure under Exemption 5 because it contained a privileged attorney's work product." *Id.*

While dated, the opinion of the district court in *Exxon Corp. v. F.T.C.*, 476 F. Supp. 713

(D.D.C. 1979), remains a helpful and concise synthesis of the relevant passages from *Sears* and

*Merrill*:

> The logic of the Supreme Court's opinion in *Sears* and its comment in
> [*Merrill*] indicate that information held to be attorney "work product"
> is to be judged quite differently with respect to the operation of
> § 552(a)(2) than information held to be deliberative and
> predecisional, although both the attorney "work product" privilege
> and the governmental deliberative process privilege are incorporated
> into the same (b)(5) exemption of FOIA.  In *Sears* the Supreme Court
> held that if a document is a "final opinion" within the meaning of
> § 552(a)(2)(A), that document cannot qualify for the deliberative
> process privilege under exemption (b)(5) because final opinions and
> predecisional communications are mutually exclusive categories; final
> opinions and attorney "work product", however, are not mutually
> exclusive.  Thus, a document may be exempt as attorney "work
> product" under exemption (b)(5) notwithstanding that it is also a
> "final opinion"[] or has been incorporated by reference into a "final
> opinion," within the meaning of § 552(a)(2)(A).

476 F. Supp. at 726.

In the years since *Sears* and *Merrill*, courts have read the Court's statements in those cases to

stand for the proposition that the working law doctrine cannot defeat a valid claim of work product

protection.  *See Nat'l Assoc. of Criminal Defense Lawyers v. EOUSA*, 75 F. Supp. 3d 552, 561 (D.D.C.

2014) ("[A]s long as the [document] is considered attorney work-product . . . FOIA Exemption 5

still protects the book from disclosure.") (citing *Merrill*), *aff'd*, --- F.3d ---, 2016 WL 3902666 (D.C.

Cir. July 19, 2016); *Tax Analysts v. I.R.S.*, 152 F. Supp. 2d 1, 29 (D.D.C. 2001) (noting that in a prior

ruling, the "Court simply followed the Supreme Court's express direction that agency working law is

exempt under Exemption 5 attorney work product privilege" and stating that "[i]n other words,

agency working law contained in a privileged attorney work product is exempt material in and of

itself . . . .") (citing *Merrill*), *rev'd in part on other grounds*, 294 F.3d 71 (D.C. Cir. 2002); *Iglesias v. Central

Intelligence Agency*, 525 F. Supp. 547, 559 (D.D.C. 1981) ("It is settled that even if a document is a

final opinion or is a recommendation which is eventually adopted as the basis for agency action, it

retains its exempt status if it falls properly within the work-product privilege.") (citing *Merrill*); *see also*

1 James. T. O'Reilly, *Federal Information Disclosure* 1750 (Summer 2015) ("The Supreme Court's discussion in Sears of work product in 1975 clearly signaled an intention to exempt work product 'categorically' under Exemption 5 of FOIA."); Harry A. Hammitt, et al., *Litigation Under the Federal Open Government Laws* 165 (2010) ("Even though a document may be a final opinion, an instruction to staff, or a recommendation which has been adopted as the basis of an agency decision and subject to affirmative disclosure requirements of § 552(a)(2), it may be exempt if it falls within the work-product privilege.") (citing *Sears, Merrill,* and *Exxon*).   Following this long line of precedent, beginning with the Supreme Court's decision in *Sears,* the Court must conclude that the working law doctrine cannot overcome the work product privilege.   Accordingly, even if documents constitute agency working law, they need not be disclosed under FOIA if they constitute attorney work product.

The ACLU points to the decision in *New York Times Co. v. U.S. Dep't of Justice*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015) in support of the notion that the working law doctrine "overcome[s] the work-product privilege."   ACLU Reply, Dkt. No. 56, at 8.   This case is distinguishable because it involved the adoption exception to Exemption 5, not the working law exception.   In *New York Times Co.*, the court concluded that work product protection can be defeated by the adoption doctrine, such that a document otherwise protected as work product still must be disclosed under FOIA if "the agency has chosen to expressly adopt it or incorporate it by reference."   *Id.* at 472.   That holding, however, does not affect this Court's conclusion that the working law doctrine does not defeat work product protection.

The *New York Times* court relied on *Brennan Center* in likening the express adoption doctrine to the doctrine of privilege waiver.   In *Brennan Center*, the Second Circuit found that the attorney-client privilege under Exemption 5 was waived where an agency "referenc[ed] a document as authoritative."   697 F.3d at 205.   The court in *Brennan Center* explained that "it is vital to . . . a claim

[of attorney-client privilege] that the communications between the client and attorney were made in confidence and have been maintained in confidence," *id.* at 207 (quoting *United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011)), and referred to its prior holding in *La Raza* that "the attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy," 411 F.3d at 360.  The court in *Brennan Center* further explained the close link between the waiver and adoption doctrines, reasoning that "[a] party's reliance on an otherwise privileged communication to assert a claim or defense is similar to the type of express adoption or incorporation by reference that vitiates Exemption 5 protection—in either case the party cannot invoke that relied-upon authority and then shield it from public view."  697 F.3d at 208.  The *New York Times* court extended that reasoning to the context of the work product privilege, concluding that an agency waives work product protection otherwise available by way of Exemption 5 by "publicly adopting" a document or "justifying agency action on the basis of a document."  138 F. Supp. 3d at 474.  That decision was a logical extension of the Second Circuit's decisions in *La Raza* and *Brennan Center* given that, similarly to the attorney-client privilege, "[t]he waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties."  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993).

Here, the ACLU argues that the court's decision in *New York Times Co.* should be extended to abrogate work product privilege asserted as to documents constituting agency working law.  The ACLU's argument ignores the substantive differences between the working law and adoption doctrines.  Yes, the doctrines are similar, in that they are both exceptions to Exemption 5's deliberative process privilege.  However, the similarity ends there.  As explained by the court of appeals in *La Raza* and *Brennan Center*, the public adoption of documents by an agency is akin to the waiver of a privilege.  Documents that constitute an agency's working law, however, unlike those adopted by the agency, are not pointed to publicly, or relied upon by the agency to assert a claim or

defense.  The working law doctrine, unlike adoption, simply does not present a cognate to the

waiver of the attorney-client or work product privileges.  The ACLU has *not* argued that DOJ

expressly adopted any of the documents at issue and thereby waived any privilege applicable to

them.  As a result, there is no basis on which to extend the conclusions of *Brennan Center*, *La Raza*,

or *New York Times Co.* to the working law doctrine or to this case.

> ### ii.  Applicability of the Work Product Privilege to Withheld Documents

As discussed above, in order to qualify as work product, a document must be "prepared in

anticipation of litigation"; that is, a document is protected as work product if "in light of the nature

of the document and the factual situation in the particular case, the document can fairly be said to

have been prepared or obtained *because of* the prospect of litigation."  *Adlman*, 134 F.3d at 1202

(emphasis in original); *accord id.* at 1195 ("Where a document was created because of anticipated

litigation, and would not have been prepared in substantially similar form but for the prospect of

that litigation," it is protected as work product).  "Conversely, protection will be withheld from

'documents that are prepared in the ordinary course of business or that would have been created in

essentially similar form irrespective of litigation.'"  *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir.

2015) (quoting *Adlman*, 134 F.3d at 1202).  The Second Circuit has noted that "courts have taken a

flexible approach in determining whether the work product doctrine is applicable, asking not

whether litigation was a certainty, but whether the document was created 'with an eye toward

litigation.'"  *A. Michael's Piano*, 18 F.3d at 146 (citation omitted).  The work product privilege applies

in both civil and criminal cases.  *See United States v. Nobles*, 422 U.S. 225, 236-38 (1975).

In this case, the parties dispute whether documents must have been created in view of a

"specific case" or "specific claim" in order for work product protection to apply.  DOJ argues that

"[t]here is no requirement that litigation exist at the time a protected document is created;

documents may be considered work product when created with the reasonable belief of future

litigation" and that "invocation of the privilege does not depend on the existence of a specific case or claim." Gov't Memo at 17.  In opposition, the ACLU argues that work product protection does not extend to "[p]olicy-level analysis of the government's notice obligations." ACLU Memo at 17. The ACLU argues that only documents "directed at a specific case" are eligible for work product protection.  *Id.* at 18.  Some cases in this district have appeared to impose such a requirement.  *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 553 (S.D.N.Y. 2013) ("A party must show that there existed an identifiable specific claim or impending litigation when the materials were prepared.") (citation omitted); *Fustok v. Conticommodity Servs., Inc.*, 106 F.R.D. 590, 592 (S.D.N.Y. 1985) (denying work-product protection because "at the time the report was commissioned or prepared the prospect of litigation was not 'identifiable' because 'specific claims [had not] already arisen.").  However, the Court does not read a "specific case" requirement in Second Circuit case law.  In *Schaeffler*, the Second Circuit's most recent reported decision addressing the work product doctrine, that court reaffirmed that "*Adlman* is the governing precedent" in that it "established a test to determine whether documents should be deemed prepared 'in anticipation of litigation' and therefore subject to work-product protection."  *Id.*  As discussed above, that test asks whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  *Schaeffler*, 806 F.3d at 43 (citing *Adlman*, 134 F.3d at 1202) (emphasis in original).  And in *Schaeffler*, rather than asking whether a "specific claim" was contemplated, the Court applied the test articulated in *Adlman* and extended work product protection to a document that was "necessarily geared to . . . subsequent litigation, which on [the] record [was] highly likely."  *Id.* at 44 (emphasis added).  As a result, the Court looks to the test articulated in *Adlman* and reaffirmed in *Schaeffler* to determine whether documents were "prepared in anticipation of litigation."  This test does not ask whether a "specific case" or "specific claim" has arisen.  Rather, it asks whether "in light of the nature of the document

and the factual situation in the particular case, the document can fairly be said to have been prepared

or obtained because of the prospect of litigation"; in other words, it asks whether the document was

"necessarily geared" to subsequent litigation.

In this case, NSD's affidavit states that all of the documents listed in the NSD Index, with

the exception of Doc. Nos. 7 and 10[1] are:

> memoranda that were prepared by Government attorneys in
> reasonable anticipation of litigation. These materials were all
> prepared in anticipation of possible criminal prosecutions or other
> adjudications. The memoranda all address how to determine if
> information has been derived from FISA for use in criminal
> prosecutions or other adjudications and the application of FISA's
> notice provisions in those proceedings, and set out the conclusions,
> opinions, and legal theories of their authors in anticipation of
> positions to be taken in [ ] criminal prosecutions or other
> adjudications.

Bradley Decl. ¶ 13. With respect to NSD Doc. No. 10, DOJ has submitted an affidavit which states

that this entry on the NSD Index corresponds to:

> documents withheld pursuant to the attorney-work product privilege
> [that] were created by, or at the direction of, Department attorneys.
> The drafts identified by NSD as 'Document Number 10' are drafts of
> a legal memorandum which discusses how to determine if
> information has been derived from FISA for use in criminal
> prosecutions or application of FISA's notice provision in those same
> proceedings. The drafts . . . discuss[] issues for prosecutors'
> consideration prior to using or disclosing FISA information in the
> context of criminal prosecutions of those accused of committing
> terrorism and/or espionage related offenses . . . [The documents]
> include[] statements on potential issues for prosecutors'
> consideration in anticipation of litigation that Department attorneys
> would ultimately defend on behalf of the Department.

Declaration of Vanessa Brinkmann, Dkt. No. 51, ¶¶ 16-17 ("Brinkmann Decl."). As for documents

withheld as work product by EOUSA, DOJ's affidavit states that each of the document is "part of a

decision-making process among various components of the Department of Justice in preparation

---

[1] NSD Doc. No. 7 is addressed in the declaration of John Kornmeier and NSD Doc. No. 10 is addressed in the declaration of Vanessa Brinkmann. *See* Bradley Decl. ¶ 13, n.3.

and anticipation of litigation involving the notice provisions of the FISA." Kornmeier Decl. ¶ 26.
As noted above, the affidavit submitted by DOJ on behalf of EOUSA also applies to NSD Doc.
No. 7.

The Court finds that NSD has carried its burden of demonstrating the applicability of work
product protection to the documents it has withheld, with the exception of NSD Doc. No. 7. The
*Vaughn* submissions submitted on behalf of NSD, which are accorded a presumption of good faith,
demonstrate that the documents at issue are necessarily geared to litigation in which DOJ's notice
obligations under the FAA will be at issue, and that these documents "would not have been
prepared in substantially similar form but for the prospect of that litigation." *Adlman*, 134 F.3d at
1195. The submissions on behalf of EOUSA, which also applies to NSD Doc. No. 7, however, do
not provide the Court with sufficient information to determine whether work product protection
applies. The assertion contained in the declaration of John Kornmeier is simply too conclusory to
make that assessment. As explained below, the Court will grant DOJ an opportunity to enhance its
submissions to provide further support for these claims of work product protection.

In reaching this conclusion with respect to NSD, the Court is also guided by the recent
decision of the Court of Appeals for the D.C. Circuit in *NACDL v. United States Dep't of Justice*, a
FOIA case which concerned a document similar in function to the documents at issue in this case,
had they been finalized and provided to prosecutors as formal guidance. *See* 2016 WL 3902666. In
*NACDL*, the National Association of Criminal Defense lawyers requested an internal DOJ
publication known as the Federal Criminal Discovery Bluebook, which is a "manual created by
[DOJ] to guide federal prosecutors in the practice of discovery in criminal prosecutions," and which
DOJ withheld as work product under Exemption 5. 2016 WL 3902666, at *1. The Bluebook "was
designed to provide advice regarding the law and practice of federal prosecutors' discovery
disclosure obligations and to serve as a litigation manual to be used by all DOJ prosecutors and

paralegals in their cases." *Id.* at *3 (citation and internal quotation marks omitted).  The Blue Book, moreover, "describes the nature and scope of federal prosecutors' discovery obligations under applicable constitutional provisions, caselaw, and the Federal Rules of Criminal Procedure," and is an "internal manual containing litigation strategies" that gives advice to prosecutors on "the types of challenges [they] may encounter in the course of prosecutions and potential responses and approaches." *Id.* (brackets omitted).

The D.C. Circuit held that the book was protected as work product, concluding that "[t]aking into account the nature, content, and function of the Bluebook as described in DOJ's affidavits," it could "fairly be said to have been prepared . . . because of the prospect of litigation." *Id.* at *4 (citation omitted and internal quotation marks omitted).  The court rejected plaintiff's argument that work product protection was unavailable because the book "was not prepared in anticipation of litigating a specific claim or case." *Id.* at *5.  On this account, the court reasoned that the "Bluebook is *entirely* about the conduct of litigation" and is "aimed directly for use in (and will inevitably be used in) litigating cases." *Id.* at *5 (emphasis in original).  Thus, like the NSD documents at issue here, "the Bluebook undoubtedly was created in anticipation of—and for use in—foreseeable litigation, i.e., federal criminal prosecutions." *Id.*  In addition, the court rejected the argument that the Bluebook did not constitute work product because it "aims to advance a non-adversarial function—namely, education and training of prosecutors." *Id.* at *6.  On this point, the court agreed with the plaintiff that "materials serving no cognizable adversarial function, such as policy manuals, generally would not constitute work product," but it concluded that the "Book does not merely pertain to the subject of litigation in the abstract.  Instead it addresses how attorneys on one side of an adversarial dispute—federal prosecutors—should conduct litigation." *Id.*  The NSD documents at issue here are similar to the Bluebook in this regard as well—rather than constituting "policy-level documents" as the ACLU argues, ACLU Memo at 17, DOJ's affidavits make clear that

the documents concern "positions to be taken in [ ] criminal prosecutions or other adjudications" and "potential issues for prosecutors' consideration in anticipation of litigation that Department attorneys would ultimately defend on behalf of the Department."  Bradley Decl. ¶ 13; Brinkmann Decl. ¶¶ 16-17.

The decision in *NACDL* is also significant in demonstrating the strength of the work product privilege as it applies to guidance documents designed for use by federal prosecutors.  As is evident from the *NACDL* court's opinion, the Bluebook is a final, concrete document binding on "all DOJ prosecutors and paralegals," 2016 WL 3902666, at *3, and was still found to constitute protected attorney work product.  Here, by contrast, DOJ's affidavits attest that the documents withheld by NSD, with the exception of NSD Doc. Nos. 35, 36, and 37, are non-final draft documents which were discovered through a search for non-governing records.  *See generally* Bradley Decl. ¶ 4 ("By order of this Court, NSD FOIA conducted another search for materials that were non-governing."); Brinkmann Decl. ¶¶ 9, 14 (NSD Doc. No. 10 "consists of multiple drafts of an unsigned, non-final Department [of Justice] legal memorandum" and these drafts "reflect proposed policy on the use of FISA information that was never finalized").  The work product privilege is certainly no less applicable to the non-governing NSD documents at issue in this case than it was applicable to the final manual made available to prosecutors nationwide, as was at issue in *NACDL*.

### iii.  Segregability

FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 552 U.S.C. §552(b).  "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes."  *F.B.I. v. Abramson*, 456 U.S. 615, 626 (1982); *accord Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a FOIA exemption, the district court must make specific

findings of segregability regarding the documents to be withheld."). "Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997) (internal quotation marks omitted); *see also Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 371 (E.D.N.Y. 2009) ("With respect to the work product doctrine, because the protection applies to both factual and opinion-related material, no segregability issues arise."). In *NACDL*, however, the D.C. Circuit observed that "[i]n cases involving voluminous or lengthy work-product records . . . it [is] generally preferable for courts to make at least a preliminary assessment of the feasibility of segregating nonexempt material." 2016 WL 3902666, at *7. With respect to NSD Doc. No. 10, DOJ has attested that it "carefully reviewed each page to determine whether any non-exempt information could be segregated for release" and that "no segregable, nonexempt information could be disclosed to plaintiff." Brinkmann Decl. ¶ 19. As for the bulk of the NSD documents (*i.e.*, those addressed in the Bradley Declaration) however, DOJ's affidavit is silent with respect to segregability. DOJ instead relies on the argument that "where a document is withheld pursuant to the work-product doctrine, there simply are no reasonably segregable portions that FOIA requires to be released." Gov't Memo at 22. The Court finds that summary judgment in DOJ's favor on the issue of segregability is appropriate with respect to NSD Doc. No. 10, but the Court will require DOJ to conduct a segregability analysis with respect to the remaining documents withheld by NSD which the Court has found to be within the scope of Exemption 5. *Cf. Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09-cv-5878 (RJS), 2011 WL 1345168, at *11 (S.D.N.Y. Mar. 29, 2011) (finding FOIA exemption applicable and granting summary judgment for government "on all issues except segregability").

   As explained below, the Court will also grant DOJ an opportunity to substantiate its claims of work product privilege over the documents withheld by EOUSA and NSD Doc. No. 7, and is

not yet in a position to reach the question of segregability with respect to any documents properly withheld by EOUSA.

### iv.  Revised *Vaughn* Submissions

"[A] district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*." *Spirko v. U.S. Postal Service*, 147 F.3d 992, 997 (D.C. Cir. 1998).  Rather, "[t]he district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions." *Id.* (citation and internal quotation marks omitted).  "If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery." *Id.*  DOJ's affidavit submitted in connection with its withholding of documents by EOUSA and NSD Doc. No. 7 indicates that DOJ is asserting the deliberative process privilege and the attorney work product privilege over these documents.  *See* Kornmeier Decl. ¶ 25.  The Court finds it appropriate, at this juncture, to provide DOJ with the opportunity to provide further substantiation of its work product claims with respect to these documents.  *Cf. Electronic Frontier Foundation v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 174-75 (D.D.C. 2011) ("Having found the DOJ's *Vaughn* submissions inadequate, the Court has several options regarding how to proceed in this case . . . [T]he Court finds that the best approach is to direct the agency to revise their *Vaughn* submissions, taking into account the deficiencies identified by the Court.").  The Court will defer ruling on the applicability of the deliberative process privilege to these documents in order to allow DOJ the opportunity to provide additional support for its work product claims.  The Court will, of course, rule on the applicability of the deliberative process privilege in the event that DOJ is ultimately unsuccessful in

carrying its burden of demonstrating the applicability of the work product privilege that it has asserted.  The ACLU is free to renew its arguments that these documents are not protected by the work product or deliberative process privileges, in accordance with the schedule set forth below.

Accordingly, DOJ's motion for summary judgment as to the applicability of Exemption 5 to the withheld documents is GRANTED as to documents withheld by NSD, with the exception of NSD Doc. No. 7, on all issues except segregability, and DENIED WITHOUT PREJUDICE as to documents withheld by EOUSA and NSD Doc. No. 7.  The Court underscores that no ruling is being made on the applicability of the deliberative process privilege to the EOUSA documents and NSD Doc. No. 7.

## V.    CONCLUSION

For the reasons stated above, DOJ's motion for summary judgment is GRANTED IN PART and DENIED IN PART without prejudice.  The ACLU's cross-motion is GRANTED insofar as it challenges the adequacy of DOJ's *Vaughn* submissions on behalf of EOUSA and with respect to NSD Doc. No. 7, and is otherwise DENIED.  The denial of the ACLU's motion is without prejudice to the extent that the motion challenges the withholding of documents by EOUSA and NSD Doc. No. 7.  DOJ is directed to submit revised *Vaughn* submissions addressing the documents withheld by EOUSA and NSD Doc. No. 7 and a segregability analysis addressing the NSD documents the Court has found to be within the scope of Exemption 5, along with a renewed motion for partial summary judgment no later than November 14, 2016.  The ACLU may file a renewed cross-motion for summary judgment with respect to the documents withheld by EOUSA

and NSD Doc. No. 7 no later than 30 days from the date of service of DOJ's renewed motion.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 47 and 52.

SO ORDERED.

Dated: September 27, 2016
       New York, New York

_____
GREGORY H. WOODS
United States District Judge